# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CASE NO. 08-10630

Lower Case No. 4:05-cv-470

RICHARD FRAME, WENDELL DECKER,
SCOTT UPDIKE, J.N., a minor, by his next friend
and mother, GABRIELA CASTRO, MARK HAMMAN
and JOEY SALAS,

Appellants,

vs.

THE CITY OF ARLINGTON,
a Municipal Corporation,

Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

## INITIAL BRIEF OF APPELLANTS

---

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Appellants
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555

**Miguel M. de la O**
Florida Bar No. 0822700
delao@dmmllaw.com

## CERTIFICATE OF INTERESTED PERSONS

I HEREBY CERTIFY that the following persons may have an interest in the outcome of the appeal in this cause:

| NAME | INTEREST |
| --- | --- |
| Richard Frame | Appellant |
| Wendell Decker | Appellant |
| Scott Updike | Appellant |
| J.N., a minor | Appellant |
| Gabriela Castro | Mother and Next of Kin of J.N., Appellant |
| City of Arlington, Texas | Appellee |
| Miguel M. de la O | Counsel for Appellants |
| Charles D. Ferguson | Counsel for Appellants |
| John L. Freeman | Local Counsel for Plaintiffs/Appellants |
| John M. Nevin | Local Counsel for Plaintiffs/Appellant |
| Edwin P. Voss, Jr. | Counsel for Appellee |
| Denise V. Wilkerson | Counsel for Appellee |
| Terry R. Means | U.S. District Court Judge |

_____
Miguel M. de la O

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs believe the issues raised in this appeal require oral argument for resolution, because they are novel and of first impression in this Circuit.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................i

STATEMENT REGARDING ORAL ARGUMENT ................................................ ii

TABLE OF CITATIONS ...............................................................................v

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF THE ISSUE......................................................................1

STATEMENT OF THE CASE........................................................................2

STATEMENT OF THE FACTS ....................................................................4

STANDARD OF REVIEW ............................................................................9

SUMMARY OF ARGUMENT ......................................................................9

ARGUMENT

    I.    THE TRIAL COURT ERRED IN DETERMINING THAT THE
        PLAINTIFF'S CAUSE OF ACTION ACCRUED WHEN
        ARLINGTON CONSTRUCTED THE BARRIERS, RATHER
        THAN APPLYING THE DISCOVERY RULE..................................11

        A.  A Cause of Action Under the ADA Accrues When
        Plaintiffs Encounter Barriers, Not When the Barrier is
        First Erected. ........................................................................11

        B.  Plaintiff Encountered the Barriers to Accessibility
        Within the Limitations Period.................................................16

        C.  ADA Should be Broadly Construed to Satisfy its
        Remedial Nature.................................................................18

    II.    EVEN IF PLAINTIFF'S CLAIMS WERE BARRED BY THE
        STATUTE OF LIMITATIONS, THE DEFENDANT'S
        ACTIONS ARE A CONTINUING VIOLATION OF THE ADA
        WHICH OCCURRED DURING THE LIMITATIONS PERIOD.......20

III.    THE STATUTE OF LIMITATIONS IN INAPPLICABLE TO CLAIMS FOR INJUNCTIVE RELIEF. ................................................23

IV.    THE TRIAL COURT ERRED IN GRANTING A MOTION TO DISMISS BASED ON DEFENDANT'S AFFIRMATIVE DEFENSE ASSERTING THE STATUTE OF LIMITATIONS. ........26

V.    THE TRIAL COURT'S WEARINESS WITH PLAINTIFF FRAME WAS UNJUSTIFIED. ........................................................27

CONCLUSION ...............................................................................29

CERTIFICATE OF COMPLIANCE ........................................................29

CERTIFICATE OF SERVICE .................................................................29

**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE  305/285-2000          3001 S.W. 3RD AVENUE, MIAMI, FLORIDA  33129          FACSIMILE  305/285-5555

## TABLE OF CITATIONS

**CASES**                                                                    **PAGES**

*Access 4 All, Inc. v. Trump International Hotel & Tower Condominium,*
458 F.Supp. 2d 160 (S.D.N.Y. 2006) .................................................................24

*Barden v. City of Sacramento,*
292 F.3d 1073 (9th Cir. 2002), *cert denied,* 539 U.S. 958 (2003) ...........................6

*Bazemore v. Friday,*
478 U.S. 385 (1986)..................................................................................18

*Berry v. Board of Supervisors,*
715 F.2d 971 (5th Cir. 1983) ........................................................................20

*Copeland v. Wasserstein, Perella & Co., Inc.,*
278 F.3d 472, 477 (5th Cir. 2002) ...................................................................9

*Deck v. City of Toledo,*
56 F.Supp. 2d 886 (N.D. Ohio 1999)...........................................................20,21

*Doe v. Judicial Nominating Commission,*
906 F.Supp. 1534 (S.D. Fla. 1995) ................................................................29

*Ebbert v. DaimlerChrysler Corp.,*
319 F.3d 103 (3d Cir. 2003)..........................................................................27

*Fair Housing Council, Inc. v. Village of Olde Saint Andrews, Inc.,*
2006 WL 3724128 (6th Cir. 2006) .................................................................19

*Foster v. Morris,*
2006 WL 3712949 (3d Cir. 2006).................................................................24

*Havens Realty Corp. v. Coleman,*
455 U.S. 363, 102 S.Ct. 1114 (1982).............................................................21

*HIP, Inc. v. Port Auth. N.Y. & N.J.,*
2008 WL 8524445 (D.N.J. March 28, 2008)..................................................12,27

*Holder v. Abbott Laboratories, Inc.*
444 F.3d 383, 386 (5th Cir. 2006) .................................................................9

*Holmberg v. Armbrecht,*
327 U.S. 392 (1946).......................................................................................25

*Huckabay v. Moore,*
142 F.3d 233 (5th Cir. 1998) ........................................................................20

*Jensen v. Snellings*,
841 F.2d 600 (5th Cir. 1988) ........................................................................26

*King v. Township of East Lampeter*,
17 F.Supp. 2d 394 (E.D. Pa. 1998) ..............................................................25

*Kinney v. Yerusalim,*
9 F.3d 1067 (3d Cir. 1993), *cert. denied*, 511 U.S. 103 (1994)..............5,7

*Lowrey v. Texas A & M University System,*
117 F.2d 242 (5th Cir. 1997) ........................................................................17

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)........................................................................................15

*Marchionni v. SEPTA,*
2000 WL 124564 (E.D. Pa. 2000) ................................................................25

*PGA Tour, Inc. v. Martin,*
532 U.S. 661 (2001)........................................................................................18

*Pickern v. Holiday Quality Foods, Inc.,*
293 F.3d 1133 (9th Cir. 2002), *cert. denied*, 537 U.S. 1030 (2002) .............13,20,23

*Rose v. Tennessee Gas Pipeline Co*.
508 F.3d 773, 775 (5th Cir. 2007) ..................................................................9

*Russell v. Board of Trustees of Firemen, Policemen and Fire Alarm*
    *Operators' pension Fund of Dallas, Tex.,*
968 F.2d 489 (5th Cir. 1992) ........................................................................13

*Schonfeld v. City of Carlsbad,*
978 F. Supp. 1329 (S.D. Cal. 1997)...............................................................6,22

*The Ability Center of Greater Toledo v. City of Sandusky,*
133 F.Supp. 2d 589 (N.D. Ohio 2001)...............................................................6

*U.S. v. American Electric Power Service Corp.,*
137 F.Supp. 2d 1060 (S.D. Ohio 2001)...............................................................25

*U.S. v. Retirement Services Group,*
302 F.3d 425 (5th Cir. 2002) .............................................................................26

*Voices for Independence v. Pennsylvania Department of Transportation,*
2007 WL 2905887, 35 NDLR P 199 (W.D. Pa. Sept. 28, 2007) ........13,14,15,16,26

*Watts v. Graves,*
720 F.2d 1416 (5th Cir. 1983) ...................................................................11,27

*Wilson v. Pier 1 Imports (US), Inc.,*
413 F.Supp. 2d 1130 (E.D. Cal. 2006) .............................................................23

## OTHER AUTHORITIES

28 U.S.C. §1291 ...............................................................................................1
28 U.S.C. § 1331 ..............................................................................................1
28 U.S.C. § 1334 ..............................................................................................1
29 U.S.C. § 701 ................................................................................................1
29 U.S.C. § 794(a) ...........................................................................................5
42 U.S.C. § 12131 .........................................................................................1,7
42 U.S.C. § 12132 .........................................................................................1,5
42 U.S.C. § 12133 ............................................................................................1
42 U.S.C. § 12134 ............................................................................................1
28 C.F.R. § 35.150(d)(2) ..................................................................................6
28 C.F.R. § 35.151 ...........................................................................................6
41 C.F.R. § 10I-19.6, Appendix A....................................................................6
Federal Rule of Civil Procedure 59(e) ............................................................1

## STATEMENT OF JURISDICTION

This is an appeal of a Final Judgment entered by the U.S. District Court for the Northern District of Texas on March 31, 2008, dismissing with prejudice all of the claims in Plaintiffs' Fourth Amended Complaint. On April 14, 2008, pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs filed a Motion to Alter and/or Amend Judgment. Defendant filed a Response to the Motion on April 29, 2008, and Plaintiffs filed a Reply on May 2, 2008. On May 12, 2008, the District Court entered its Order Denying the Motion to Alter and/or Amend Judgment. On June 7, 2008, Plaintiffs timely filed their Notice of Appeal and, on June 8, 2008, Plaintiffs timely filed a Corrected Notice of Appeal.

The trial court was vested with original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 for the claims brought by Plaintiffs under Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. part 35, as well as § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq*. ("the Rehabilitation Act").

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 because it is an appeal of a final judgment of a district court of the United States.

## STATEMENT OF THE ISSUE

Whether the trial court erred in ruling that a cause of action for inaccessible sidewalks and streets, pursuant to Title II of the ADA, accrues when the original construction or alteration is completed, rather than when a plaintiff first discovers the inaccessible element.

## STATEMENT OF THE CASE

On July 22, 2005, the initial Complaint was filed by two disabled individuals ("Plaintiffs") who had suffered – and continue to suffer – injury under the Americans with Disabilities Act of 1990 (the "ADA") due to the City of Arlington's ("Defendant"), creation of, and refusal to remove, architectural barriers.  (Doc. 1, USCA5 18).[1]  On August 22, 2005, Defendant filed its first Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims.  (Doc. 13, USCA5 123).  On September 12, 2005, Plaintiffs filed their First Amended Complaint and added recent dates upon which Plaintiffs were met with architectural barriers in the City of Arlington.  (Doc. 16, USCA5 160).  On September 19, 2005, Plaintiffs responded to Defendant's Motion to Dismiss, stating that, in light of the filing of the First Amended Complaint, the Motion to Dismiss was moot .  (Doc. 17, USCA5 184).  On September 15, 2005, the trial court issued an Order Mooting Defendant's Motion to Dismiss.  (Doc. 19, USCA5 189).

The parties filed a Stipulation on Initial Pleadings on September 23, 2005 (Doc. 21, USCA5 193), allowing Plaintiffs to add a third plaintiff without leave of court.  On October 20, 2005, Plaintiffs filed their Second Amended Complaint. (Doc. 23, USCA5 212).  Defendant filed its Renewed Rule 12(b)(6) Motion to

---

[1] References to the Record on Appeal will be "Doc. ____, USCA5 ____," which reflects the Docket No. and Record on Appeal page number for each cite.  The Docket Sheet, Fourth Amended Complaint, Order Granting Third Renewed Motion to Dismiss and Notice of Appeal have been are compiled in the Record Excerpts.

Dismiss on November 4, 2005. (Doc. 26, USCA5 257). Plaintiffs' Response to Defendant's Renewed Motion to Dismiss was filed on December 15, 2005 and a corrected Response on December 16, 2005. (Doc. 36, 37, USCA5 311, 362). Defendant's Reply to Plaintiff's Response to the Renewed Motion to Dismiss was filed on January 6, 2006. (Doc. 38, USCA5 422). On July 31, 2006, the trial court denied Defendant's pending Motion to Dismiss as moot, directing Plaintiffs to amend their complaint a third time. (Doc. 55, USCA5 509). In compliance with the trial court's Order, Plaintiffs filed their Third Amended Complaint on October 17, 2006, specifying in the allegations whether an alteration or new construction had taken place before or after the effective date of the ADA. (Doc. 69, USCA5 557). Defendant filed a Second Renewed Rule 12(b)(6) Motion on October 30, 2006. (Doc. 71, USCA5 604).

Thereafter, the parties diligently pursued mediation. On November 6, 2006, the parties submitted a Joint Motion to Temporarily Abate Case, and Brief, which the trial court granted on November 13, 2006. (Doc. 73, 75, USCA5 642, 648). On February 13, 2007, the parties filed a Joint Motion to Extend Temporary Stay, which was granted by the District Court on February 15, 2007. (Doc. 77, 78, USCA5 652, 657). The parties filed a Second Joint Motion to Extend Temporary Stay and Brief on March 20, 2007, which was granted by the District Court on March 21, 2007. (Doc. 81, 82, USCA5 661, 667). On April 11, 2007, the parties filed a Joint Report on Settlement Negotiations, advising the trial court of an

impasse in settlement talks. (Doc. 83, USCA5 669). The parties agreed to continue settlement discussions, but no settlement was ever reached by the parties.

On May 31, 2007, Plaintiffs filed an Opposed Motion for Leave to File Fourth Amended Complaint. (Doc. 90, USCA5 724). On June 4, 2007, Defendant filed its Response. (Doc. 91, USCA5 782). On June 1, 2007, Plaintiffs filed their Reply to Defendant's Response. (Doc. 92, USCA5 792). On August 9, 2007, the trial court granted Plaintiffs' leave to file their Fourth Amended Complaint, which was filed on August 9, 2007. (Doc. 93, 94, USCA5 799, 801).[2]

Defendant filed its Third Motion to Dismiss Plaintiffs' Claims on April 30, 2007. (Doc. 86, USCA5 679). Plaintiffs filed a Brief in Response to Defendant's Third Renewed Motion to Dismiss on September 4, 2007, and Defendant submitted its Reply on September 9, 2007. (Doc. 97, 98, USCA5 858, 925). On March 31, 2008, the trial court granted Defendant's Third Renewed Motion to Dismiss and entered a Final Judgment dismissing Plaintiffs' claims with Prejudice. (Doc. 105, 106, USCA5 961, 970).

## STATEMENT OF THE FACTS

The Third Circuit has emphasized the critical importance of municipalities installing curb cuts.

---

[2] The trial court did not moot the then pending motion to dismiss because no new claims were added in the Fourth Amended Complaint; and instead construed the motion to dismiss "as addressing Plaintiffs' fourth amended complaint." (Doc. 105, USCA5 962).

> The lack of curb cuts is a primary obstacle to the smooth integration of those with disabilities into the commerce of daily life. Without curb cuts, people with ambulatory disabilities simply cannot navigate the city; activities that are commonplace of those who are fully ambulatory become frustrating and dangerous endeavors. At present time, people using wheelchairs must often make the Hobson's choice between traveling in the streets – with cars and buses and trucks and bicycles – and traveling over uncut curbs which, even when possible, may result in the wheelchair becoming stuck or overturning, with injury to both passenger and chair.

*Kinney v. Yerusalim*, 9 F.3d 1067, 1069 (3d Cir. 1993), *cert. denied*, 511 U.S. 1033 (1994). In 1992, Congress passed the ADA to address a host of obstacles to the integration of persons with disabilities into daily life.

Title II of the ADA prohibits public entities from discriminating in the provision of public services on the basis of disability. "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *See Kinney*, at 1070. Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The ADA and its implementing regulations require that, after January 26, 1992, all public entities must install curb ramps at all intersections where road construction or road alterations are performed so as to make public sidewalks and streets accessible to persons with disabilities. 28 C.F.R. § 35.150(d)(2), § 35.151. *See Kinney*, at 1073-74; *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1341 (S.D. Cal. 1997) ("Alteration and construction is to be in conformance with the Uniform Federal Accessibility Standards (41 C.F.R. § 10I-19.6, Appendix A) or with the ADAAG. 28 C.F.R. § 35.151(c)). ADA Regulations also require the installation of curb ramps at intersections for newly constructed or altered streets, roads, highways, or pedestrian walkways. 28 C.F.R. § 35.151(e)(1)."). *See also Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) (public sidewalks qualify as a service, program or activity of government; ADA's "prohibition of discrimination applies to the maintenance of public sidewalks" so as to require curb ramp installation), *cert. denied*, 539 U.S. 958 (2003); *The Ability Center of Greater Toledo v. City of Sandusky*, 133 F. Supp. 2d 589, 591-92 (N.D. Ohio 2001) ("after January 26, 1992, the City must install curb cuts in sidewalks and pedestrian walkways to the maximum extent feasible when repairing or altering sidewalks and pedestrian walkways").

Defendant is a Texas municipal corporation which has been given the authority to install, repair, and maintain streets and sidewalks within Arlington, including the installation, repair and maintenance of curb ramps. Arlington is a

public entity within the meaning of Title II of the ADA, which is defined as any state or local government or any department or agency of a state or local government.  42 U.S.C. § 12131(1)(a)-(b).  (Doc. 94, USCA5 805).

Plaintiffs are residents of Arlington and individuals with disabilities who travel within Arlington to conduct business and/or other daily activities.  (Doc. 94, USCA5 805-806).  Within the two years preceding the filing of the instant action, Plaintiffs have been unable to travel safely on Arlington's sidewalks and streets in their wheelchairs because of the City's extensive lack of curb ramps or properly installed curb ramps.  Additionally, within the two years preceding the filing of the instant action, Plaintiffs have been unable to travel safely on Arlington's pedestrian rights-of-way because many sidewalks are not properly maintained, contain abrupt vertical changes in level violation, excessive cross slopes, and/or contain obstructions from protruding objects.  (Doc. 94, USCA5 807).

Curbs, and poorly maintained sidewalks, are major obstacles to persons who use wheelchairs.  The front wheels are sensitive to obstacles, and any non-compliant change in level, crack or slope can impede the progress of a wheelchair, damage a wheelchair, or increase the possibility of overturning a wheelchair and seriously injuring its passenger.  *Id.  See Kinney,* at 1069.

Plaintiffs have traveled on, and will continue to travel on, the pedestrian rights-of-way within Arlington which either lack curb ramps or have unsafe curb ramps due to improper design, installation, construction, and/or maintenance and

sidewalks which contain abrupt vertical changes in level violations, excessive cross slopes, and/or protruding objects which make travel dangerous if not impossible for the mobility impaired.  (Doc. 94, USCA5 807).

Plaintiffs are frequently denied the full and equal use and enjoyment of Arlington's pedestrian rights-of-way while conducting daily activities.  Their ability to live within their home community is negatively impacted by the inaccessible sidewalks, lack of curb ramps and/or non-compliant curb ramps, which include streets and sidewalks primarily in close proximity to their home and beyond.  As a result, they are forced to engage in difficult and/or risky, dangerous travel in order to reach certain destinations.  The difficulty lies in the fact that they often must take longer routes to avoid access barriers that non-disabled persons can easily overcome.  The danger lies in the fact that they are often forced from sidewalks onto busy streets where they must negotiate through vehicular traffic. Once in the street, they are often inhibited from regaining access to sidewalks due to intersections with no curb ramps and/or non-compliant curb ramps that are either too steep and/or contain excessive vertical changes in level violations at their transition base. (Doc. 94, USCA5 807).

Arlington has discriminated against Plaintiffs because of their disabilities by denying them the navigable use and benefit of its sidewalks, streets, and intersections.  Without accessible curb ramps and sidewalks, the Plaintiffs will be prevented from undertaking commonplace activities available to those who are

fully ambulatory.  Arlington has also discriminated against the Plaintiffs by failing to provide sufficient handicap parking spaces at certain public facilities.  (Doc. 94, USCA5 842).

## STANDARD OF REVIEW

This Court reviews the dismissal of Plaintiffs' claims *de novo*, applying the same standard as the district court.  *Rose v. Tennessee Gas Pipeline Co.*, 508 F.3d 773, 775 (5th Cir. 2007); *Holder v. Abbott Laboratories, Inc.*, 444 F.3d 383, 386 (5th Cir. 2006); *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).

## SUMMARY OF THE ARGUMENT

The trial court dismissed Plaintiffs' Fourth Amended Complaint because their "discrimination claim solely focuses on alterations to roadways and sidewalks that occurred at least three years before Plaintiffs filed suit," and the claim is thus barred by the statute of limitations.  (Doc 105, USCA5 969).  However, the trial court incorrectly defined when a cause of action accrues.  The trial court wrongly focused exclusively on the date of construction/alteration.

A cause of action accrues when, as even the trial court noted, "the Plaintiff knows or has reason to know of the injury."  (Doc. 105, USCA5 967).  In fact, to have Article III standing to file suit the plaintiff must encounter the barrier.  Thus, an ADA plaintiff suffers the injury when s/he learns of the barrier.

Plaintiffs pled that they encountered the barriers at issue within two years of the filing of the initial Complaint. The trial court should have resolved any doubt as to when Plaintiffs first encountered the violations set forth in the Fourth Amended Complaint in favor of the Plaintiffs. It was premature for the trial court to assume that no discriminatory acts accrued within the limitations period. For example, one Plaintiff did not even become disabled until September 8, 2003.

The trial court recognized that the continuing violation theory would "save [Plaintiffs] from the effects of limitation." (Doc 105, USCA5 967). However, the trial court again wrongly relied on the dates of construction/alteration and dismissed Plaintiffs' claims because they did not plead a specific alteration that occurred within two years of the initial Complaint's filing. The Ninth Circuit has noted that even where the plaintiff waits until after the one year limitations period expired to bring suit, the suit is timely because the barrier continues to exist even after the expiration of the limitations period. Moreover, where a city continuously constructs inaccessible curb ramps, a court can find a policy of discriminatory action.

Finally, the trial court also erred in dismissing Plaintiffs' equitable claims on the basis of a statute of limitations defense. Injunctive relief is not time barred because – by definition – the injury must still be occurring in order for injunctive relief to be available to Plaintiffs.

## ARGUMENT

### I.    THE TRIAL COURT ERRED IN DETERMINING THAT THE PLAINTIFFS' CAUSE OF ACTION ACCRUED WHEN ARLINGTON CONSTRUCTED THE BARRIERS, RATHER THAN APPLYING THE DISCOVERY RULE.

The trial court dismissed Plaintiffs' claims because their "discrimination claim solely focuses on alterations to roadways and sidewalks that occurred at least three years before Plaintiffs filed suit, [and are thus] barred by the statute of limitations." (Doc 105, USCA5 969).  The trial court's holding should be reversed because it is both factually and legally wrong.

### A.    A Cause of Action Under the ADA Accrues When Plaintiffs Encounter Barriers, Not When the Barrier is First Erected.

The trial court incorrectly applied the standard for determining when a cause of action accrues under the facts of this case.  The trial court initially correctly noted that "a cause of action accrues when 'the Plaintiff knows or has reason to know of the injury . . . and who has inflicted the injury.'  [*Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983)]."  (Doc 105, USCA5 967-968).  Inexplicably, the trial court then pivoted away from the discovery rule and found that "although Plaintiffs allege that they have attempted to use these roadways and sidewalks during the limitations period, *their discrimination cause of action accrued when the improvements took place*."  *Id.* at USCA5 967 (emphasis added).

The trial court's conclusion was clearly erroneous.  The trial court's initial holding – that the cause of action accrues when the plaintiff learns of the injury – is

correct.  A cause of action under Title II does not accrue when the defendant erects a barrier; it accrues when the plaintiff discovers the barrier.  *See HIP, Inc. v. Port Auth. N.Y. & N.J.*, 2008 WL 852445, *4 (D.N.J., March 28, 2008) ("The re-opening of the Grove Street PATH Station, alone, did not injure Plaintiffs.  Only after Plaintiffs' members attempted to use the Grove Street PATH Station, and realized that it was not accessible to disabled persons, was an injury sustained.").

The trial court incorrectly, however, focused exclusively on the date of construction/alteration, rather than Plaintiffs' date of discovery.  *See* Doc 105, USCA5 967.  *When* the Defendant created the barrier (or failed to eliminate an existing barrier) is not dispositive.  *See HIP, Inc.*, at *4 ("to establish a claim under Title II of the ADA, Plaintiffs must prove that they, or their members, were denied access to the Grove Street PATH Station, irrespective of the date on which the entrance was defectively constructed.").  A cause of action accrues when, as the trial court initially noted, "the Plaintiff knows or has reason to know of the injury." (Doc. 105, USCA5 967).

> Although Texas law mandates the limitation period and tolling rules, federal law will dictate when a cause of action arises.  *Jackson [v. Johnson],* 950 F.2d [263,] 265 [(5th Cir. 1992)].  Under federal law, the period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Rodriguez v. Holmes,* 963 F.2d 799, 803 (5th Cir. 1992) (quoting *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987)).

*Russell v. Board of Trustees of Firemen, Policemen and Fire Alarm Operators' Pension Fund of Dallas, Tex.*, 968 F.2d 489, 493 (5th Cir. 1992).  To hold otherwise would mean that veterans disabled during the Iraq or Afghanistan War will be unable to challenge barriers to access in Arlington; even as yet unborn disabled persons will be left without remedy for Arlington's willful violation of the ADA.  Such a result is contrary to the law.  An ADA plaintiff suffers the injury when s/he learns of the barrier.  *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002), *cert. denied*, 537 U.S. 1030 (2002) ("Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.  So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues.").

In *Voices for Independence v. Pennsylvania Department of Transportation*,[3] the trial court analyzed this very issue, and noted that:

---

[3] In *Voices for Independence,* 2007 WL 2905887, 35 NDLR P 199 (W.D. Pa., Sept. 28, 2007), the facts were identical to the case at bar.

> Plaintiffs, an entity known as Voices for Independence ("VFI") and several disabled persons, filed a class action complaint in the above-captioned case against the Commonwealth of Pennsylvania Department of Transportation ("PennDOT") and Allen D. Biehler, the Commonwealth's Secretary of Transportation (collectively, the "Commonwealth Defendants").  The complaint alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§

> While we agree with Defendants that it is acts of "new construction" and/or "alterations" which trigger a public entity's *duty* to install the requisite curb cuts and, while we further agree that the failure to install the required curb cuts constitutes *an act of discrimination* under Title II of the ADA, we conclude that Defendants' statute of limitations argument misses the mark. The issue of when a defendant's duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiff's injury arises or when his cause of action begins to accrue.

*Id*. at \*13. (emphasis in original). Consequently, the cause of action does not

accrue merely by the construction of an inaccessible intersection by the Defendant.

> [A] completed tort under Title II of the ADA requires more than merely an act of discrimination. . . . To state a claim under Title II, a plaintiff must establish the following elements: (i) that he or she is a qualified individual with a disability; (ii) that he or she suffered some act of discrimination by the public entity (*i.e.*, was either excluded from participation in some service, program or activity or was denied the benefits thereof); and (iii) that such discrimination was by reason of his or her disability. Thus, a cause of action is not complete for

---

> 701, *et seq*. ("Rehabilitation Act"), arising from PennDOT's failure to install federally mandated curb ramps along PennDOT highways located in the cities of Erie and Meadville, Pennsylvania. On September 7, 2006, Plaintiffs filed an amended complaint joining the cities of Erie and Meadville as Defendants in the case.

*Id.* at \*1. All parties filed motions for summary judgment on the following issue:

> [W]hether claims relating solely to noncompliant curb ramps which were altered, installed, replaced or repaired after January 26, 1992 (the effective date of the ADA) but more than two years prior to the commencement of litigation are barred by any statute of limitations.

*Id*.

> purposes of Title II until a plaintiff – a qualified individual with a disability – is denied access by virtue of a defective curb cut, irrespective of the date on which the curb was defectively installed.

*Id*. (citations omitted).

Moreover, an ADA plaintiff must have Article III standing to file suit. A plaintiff cannot obtain standing unless they have suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> As to any particular non-compliant curb site, however, it is conceivable that a particular qualified individual with a disability might not be able to demonstrate the requisite injury until some point in time, well beyond the two-year post-installation period, when previously unforeseen circumstances bring him or her into contact with that non-compliant site. It is not far-fetched to imagine, for example, that a disabled individual's change in employment or residence might bring him into contact with non-compliant curb sites with which he previously had no contact nor any sincere need or desire to traverse. Under the Defendants' theory, such a plaintiff, having only recently acquired standing to challenge the violation, would be forever barred from doing so if the curb site had been constructed or altered more than two years previously. Similarly, a disabled person who had only just recently relocated to Erie or Meadville from another state would be forever barred-through no fault of his own-from challenging non-compliant curb sites that had been defectively constructed or altered more than two years prior.

*Voices for Independence,* at *14.

The court in *Voices for Independence* concluded, as the trial court here should have:

> For all of these reasons, we reject Defendants' theory that the Plaintiffs' cause of action under Title II of the ADA accrued on the date that the defective curb sites in question were actually constructed or altered.  We decline to read into the ADA a *per se* rule that charges all prospective Title II plaintiffs with constructive knowledge of the defective curb site as of the date the site is constructed or altered.  Rather, under the federal "discovery rule," a cause of action as to any particular plaintiff accrues when the plaintiff knows or should know of the injury which forms the basis of his Title II claim.

*Id*. at *15.

## B.   Plaintiffs Encountered the Barriers to Accessibility Within the Limitations Period.

Plaintiffs properly pled that some of the barriers were created by the Defendant within two years of the filing of the complaint.  *See, e.g.*, Doc. 94, USCA5 804 ("Many, if not all, of the streets at issue, . . . were substantially resurfaced, reconstructed, repaved, and otherwise altered by or on behalf of Defendant either within the last two years or after 1992.").[4]  Plaintiffs also properly pled that they encountered the barriers within two years of the filing of the complaint.  *See, e.g., id.* at 819, 822, and 824.  The trial court should have resolved any doubt as to when Plaintiffs first encountered the violations set forth in the Fourth Amended Complaint in favor of the Plaintiffs.

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem.*

---

[4] It is impossible for Plaintiffs and their experts to be more precise without obtaining documentary evidence from the Defendants through discovery.

*Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957); *Blackburn [v. Marshall]*, 42 F.3d [925,] 931 [(5th Cir. 1995)]. This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969).

*Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997).

The motion before the trial court was to dismiss the Fourth Amended Complaint, not for summary judgment. It was premature for the trial court to assume that no discriminatory acts accrued within the limitations period. Certainly, there were no allegations in the Fourth Amended Complaint establishing that all the Plaintiffs had knowledge of all of the violations for over two years prior to the institution of the lawsuit. In fact, the opposite is demonstrably true. For example, Plaintiff Scott Updike ("Updike") did not even become disabled until September 8, 2003. (Doc. 94, USCA5 823). The initial Complaint in this cause was filed on July 22, 2005. Thus, *every barrier* Plaintiff Updike encountered in Arlington was discovered *within two years* of the filing of the initial complaint.

**C.    ADA Should be Broadly Construed to Satisfy its Remedial Nature**.

> Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals . . .. Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." . . . To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001) (citations omitted).

There is no other type of discrimination where the limitations bar imposed by the trial court would be tolerated by our society. Imagine if a restaurant in Arlington had a policy of excluding all African-Americans. No court would rule that unless African-Americans attempted to gain entry – and filed suit – during the two years after the policy went into effect, any subsequent victims would be time barred from seeking injunctive relief. *See Bazemore v. Friday*, 478 U.S. 385, 395 (1986) ("[e]ach week's paycheck that delivers less to a black than a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII"). Nor would any court provide safe harbor via a statute of limitations to a company with a policy of

terminating pregnant women simply because no woman brought suit within two years after implementation of the unlawful policy.  Of course, any particular woman subjected to the discriminatory act must comply with the applicable limitations period; but the policy would not be immune to challenge by other women when applied to them.

These examples are, of course, extreme, but they make the point that society does not reward discrimination with immunity from civil liability if the discriminator's conduct avoids causing injury for a period of time.

In the analogous context of claims under the Fair Housing Act arising from discriminatory structural barriers, courts have recognized that the remedial purpose of the legislation would be frustrated by permitting the statute of limitations to commence upon the date of construction, as opposed to the date of plaintiff's encounter with the barrier.

> Moreover, it makes little practical sense to start the limitations period running from the date of completion of the design or construction.  Often, housing units go unsold or unlet for some time after they are built.  If the statute of limitations were to begin running immediately upon completion of the building, potential buyers may not even look at the property until after the statute of limitations has run.  Such a result would run counter to the well-established principle that interpreting the Fair Housing Act, courts are to give effect to the "broad remedial intent of Congress embodied in the Act."

*Fair Housing Council, Inc. v. Village of Olde Saint Andrews, Inc.*, 2006 WL 3724128, *11 (6th Cir. 2006).

**II.    EVEN IF PLAINTIFFS' CLAIMS WERE BARRED BY THE STATUTE OF LIMITATIONS, THE DEFENDANT'S ACTIONS ARE A CONTINUING VIOLATION OF THE ADA WHICH OCCURRED DURING THE LIMITATIONS PERIOD.**

The trial court recognized that the continuing violation theory would "save [Plaintiffs] from the effects of limitation." (Doc 105, USCA5 967).  This Circuit has previously recognized the continuing violation theory.  *See, e.g., Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).  The trial court further correctly stated that "even under this theory, at least one of the discriminatory acts must have occurred within the limitations period." (Doc 105, USCA5 967).  However, the trial court again erred when it ruled that the "discriminatory act" that must have occurred within the limitations period is the improvement of the public rights of way, rather than Plaintiffs' exposure to the non-compliant, inaccessible, public rights of way.  The law is exactly the opposite.  In *Pickern*, the Ninth Circuit noted that even where the plaintiff waited until after the one year limitations period expired to bring suit, the suit was timely because the barrier continues to exist even after the expiration of the limitations period.  *Pickern,* 293 at 1137.

The trial court cited with approval to *Deck v. City of Toledo*, 56 F. Supp. 2d 886 (N.D. Ohio 1999).  Indeed, there is little difference between *Deck* and the instant case.  However, in *Deck* the court rejected the approach taken by the trial court here.  The *Deck* court responded to the Plaintiffs' concern – that they would

need to "scour the newspaper for evidence of recently altered public facilities, visit each altered facility and, if necessary, challenge its accessibility within two years of the project's completion" – by noting that the "limitations period is measured beginning only from the time when the plaintiff knew or should have known of the injury." *Deck*, 56 F. Supp. 2d at 892.

Moreover, *Deck* held that even if the two-year statute barred the claim, Plaintiffs could nevertheless proceed under the continuing violation theory. For this holding, *Deck* relied on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982), where the continuing violation theory was first articulated by the Supreme Court. The Court held that "statutes of limitations . . . are intended to keep stale claims out of the Courts . . . . Where the challenged violation is continuing one, the staleness concern disappears." *Id*. at 380, 102 S. Ct. at 1125. The Court concluded:

> Where a Plaintiff . . . challenges not just one incident of [unlawful] conduct . . . but an unlawful practice that continues into the limitations period, [in such cases] the complaint is timely when it is filed within [the statute of limitations period] of the last asserted occurrence of that practice.

*Id*.

*Deck* also held that where a city continuously constructs inaccessible curb ramps, a court can find a policy of discriminatory action. *Deck*, at 893-95. Where such a policy exists, the continuing violation theory will allow plaintiffs to

proceed.  The Fourth Amended Complaint pleads such a pattern of discrimination

by Arlington.  (Doc 94, USCA5 802, 803, and 841).

Another factor in favor of applying the continuing violation doctrine is that

Title II addresses program accessibility.  One missing curb cut does not necessarily

give rise to a cause of action.

> Pursuant to 28 C.F.R. § 35.150(a)(1), a public entity need
> not necessarily make each of its existing facilities
> accessible.  However, each of the entity's services,
> programs, and activities must be operated so that, when
> viewed in its entirety, it is 'readily accessible to and
> usable by individuals with disabilities' by January 26,
> 1995.  28 C.F.R. § 35.150(a).  This mandate may be met
> by a variety of means, which may not necessarily include
> structural changes in existing facilities.  *See* 28 C.F.R. §
> 35.150(b)(1).

*Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1336-37 (S.D. Cal. 1997).  Thus,

by necessity, Plaintiffs must encounter a sufficient number of inaccessible

intersections to be able to allege program inaccessibility.

As Judge Karlton, of the Eastern District of California, has noted:

> [R]equiring piecemeal compliance runs the risk that an
> injunction will only remedy some barriers, leaving others
> in place for the disabled to encounter.  The statute,
> however, provides for injunctive relief to any person who
> has "reasonable grounds for believing that such person is
> about to be subject to discrimination."  42 U.S.C. §
> 12188(a)(1).  The language makes plain that future threats
> of encountering physical barriers suffices to bring suit
> under the statute.  Indeed, it is difficult to believe that a
> statute with the broad remedial purpose of ending
> discrimination against the disabled, should be construed as
> permitting discrimination to persist after its existence has

been discovered.

*Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).

### III.    THE STATUTE OF LIMITATIONS IS INAPPLICABLE TO CLAIMS FOR INJUNCTIVE RELIEF.

Although a plaintiff may not be able to recover money damages for past acts of discrimination which are beyond the statute of limitations, there is no bar to a request for injunctive relief seeking remediation of current acts of discrimination. Each act of discrimination starts its own limitations period. Such is the case with Plaintiffs here. Each time they are unable to cross a street because an intersection lacks curb cuts, they are injured anew. For instance, in *Pickern,* 293 F.3d 1133 (9th Cir. 2002), the plaintiff sought injunctive relief against a grocery store so as to require the removal of physical barriers which made it difficult for the plaintiff to gain access to and patronize the store. The plaintiff alleged that these barriers constituted unlawful discrimination under the ADA. However, the plaintiff had first encountered these barriers more than 9 years before filing the lawsuit (*i.e.*, beyond the applicable limitations period). The district court dismissed the lawsuit based upon the plaintiff's delay in filing his claim after he first became aware that the barriers existed. The Court of Appeals reversed because the plaintiff was seeking injunctive relief for the removal of barriers which currently exist, not money damages for past injuries.

> So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues.
>
> A plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period.  But he or she has a cause of action, and is entitled to injunctive relief, for an injury that is occurring within the limitations period, as well as for threatened future injury.  Dorn states that he is currently aware of barriers to access that now exist at the Paradise store, and that these barriers currently deter him. . . .  Dorn's suit for injunctive relief is therefore not time-barred.

293 F.3d at 1137.  *See also Access 4 All, Inc. v. Trump International Hotel & Tower Condominium*, 458 F. Supp. 2d 160, 167-68 (S.D.N.Y. 2006) (under the ADA, the awareness of discriminatory architectural barriers and the avoidance of public accommodation arising from that awareness is an injury in fact and this injury "continues beyond the initial encounter with discrimination so long as the discriminatory conditions continue"). [5]

---

[5] In <u>Foster v. Morris</u>, 2006 WL 3712949 (3d Cir. 2006), the plaintiff brought a Title II ADA suit seeking injunctive relief and monetary damages arising from the lack of accessible facilities at a county jail.  The plaintiff was incarcerated at a state prison facility, but on a number of occasions he was transferred for short periods of time to the county jail, where each time he encountered inaccessible facilities.  Due to the lack of accessible facilities, the plaintiff suffered bodily injuries on November 1, 1999.  His last stay at the county jail was in April, 2001.  He filed suit in May, 2002.  The district court entered summary judgment in favor of defendants on the basis of the expiration of the statute of limitations.  The Third Circuit reversed.  It agreed the statute of limitations barred money damages for the November, 1999 injury.  However, the court noted that the plaintiff had been transferred to the county jail during the limitations period and he was seeking "an injunction to bar him from being transferred to [the county jail] until its facilities comply with the ADA."  The injunction claim was not barred, even though plaintiff's first encounter with the non-compliant facilities occurred outside of the statute of limitations.

The disparate effect of a statute of limitations on claims for injunctive relief versus monetary damages, is well-grounded in the law. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("traditionally, and for good reasons, statutes of limitation are not controlling measures of equitable relief"); *U.S. v. American Electric Power Service Corp.*, 137 F. Supp. 2d 1060, 1067-68 (S.D. Ohio 2001) ("statutes of limitations historically do not control measures of equitable relief"); *Marchionni v. SEPTA*, 2000 WL 124564, *2 (E.D. Pa. 2000) ("a request for injunctive relief has no specifically applicable statute of limitations").

In *Voices for Independence*, faced with the identical fact pattern, the court held:

> We further conclude that Defendants' statute of limitations defense is somewhat misplaced in light of the fact that Plaintiffs are seeking only equitable relief here.

2007 WL 2905887, *16. *Accord King v. Township of East Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998) (plaintiff's claims for damages under Civil Rights Act were barred by the statute of limitations and were not preserved under continuing violations exception, but the claim for injunctive relief was not barred because there is no "statute of limitations specifically applicable to requests for injunctive relief").

## IV.    THE TRIAL COURT ERRED IN GRANTING A MOTION TO DISMISS BASED ON DEFENDANT'S AFFIRMATIVE DEFENSE ASSERTING THE STATUTE OF LIMITATIONS.

The court in *Voices for Independence v. Pennsylvania Department of Transportation*, denied the defendant's motion for summary judgment, based on the applicable statute of limitations, because the defendant failed to carry its burden.

> Because expiration of the statute of limitations is an affirmative defense, the Defendants bear the ultimate burden of proof on the matter. Accordingly, in moving for summary judgment on the basis of that defense, Defendants bear the initial burden of producing evidence that would entitle them to a directed verdict if the evidence went uncontroverted at trial.

*Id*. at *16 (citations omitted). *Accord U.S. v. Retirement Services Group*, 302 F.3d 425, 430 (5th Cir. 2002) ("A statute of limitations defense is an affirmative defense, Fed.R.Civ.P. 8(c), and thus the burden was on the appellants to create a genuine issue of material fact regarding when HUD had sufficient knowledge to start the limitations period running."); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th 1988) ("To prevail in their affirmative defense of prescription, the defendants had to show that, more than two years prior to bringing suit, the plaintiffs had knowledge sufficient to begin the running of the limitations period.").

The trial court granted a motion to dismiss based on Defendant's assertion that Plaintiffs did not plead compliance with the applicable limitations period. Besides the fact Plaintiffs did sufficiently plead compliance with the limitations

period, it was Defendant's burden to establish when the cause of action accrued. *See Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983) ("The question of when Watts' cause of action accrued and thus, when the statute of limitations expired presents issues making the determination of this question on a Rule 12(b)(6) motion inappropriate in this case."); *HIP, Inc. v. Port Auth. N.Y. & N.J.*, 2008 WL 852445, *4 ("Defendant has not met its burden of showing that Plaintiff's ADA claim accrued on May 15, 2005").[6]

## V.    THE TRIAL COURT'S WEARINESS WITH PLAINTIFF FRAME WAS UNJUSTIFIED.

Plaintiff Richard Frame ("Frame") was surprised by the trial court's comments in footnote 1 of the Order ("Needless to say, the Court is growing weary of Frame's ADA grievances."). The trial court apparently grew "weary" of Frame's lawsuits based on nothing more than the number of lawsuits he has filed. Apparently, the trial court took it upon itself to research the various ADA lawsuits filed by the Frame. Unfortunately, its research was incomplete. Each lawsuit filed by Frame was preceded by his attempt to use the respective defendant's place of public accommodation. (Doc. 109, USCA5 994). All the lawsuits that have been concluded were successful in obtaining architectural changes at a place of public

---

[6] *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) ("If the employer in an ADA case asserts an affirmative defense, like the expiration of the statute of limitations as DaimlerChrysler did in this case, then the burden of proof for that defense rests solely on the employer. Proof of the expiration of the statute of limitations clearly requires proof of the lawful start date for the limitations period.") (citations omitted).

accommodation that was previously inaccessible to the disabled.[7] (Doc 109,

USCA5 994).

The trial court's weariness is unjustified and misdirected.  Frame is

vindicating the rights granted to him by the United States Congress; and is

enforcing a law that is over fifteen (15) years old, yet widely ignored by businesses

and municipalities all across this country.  Frame's actions are largely selfless —he

gains no monetary reward, but does create access for himself and other disabled

patrons who use the same places of public accommodation.  The relief sought by

Frame in these cases is critical to all disabled persons in Arlington.

> Experts in the field have suggested that "[d]isability is
> not really the cause of an undignified, harsh life.  The
> real cause is lack of access to buildings, jobs,
> transportation, segregation and denial of services."  Mary
> Johnson, Jerry's Kids, THE NATION, Sept. 14, 1992, at
> 232.  Congress, recognizing the truth of this assertion,
> took a monumental step toward ending such
> discrimination by enacting the Americans with
> Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq*.
> The underlying premise to this legislation is that it is
> preferable to provide access to opportunities rather than
> to "take care of" people with disabilities.

---

[7] The only exception was a lawsuit where the defendant sold the premises and therefore was no longer in possession and control.  (Doc. 109, USCA5 994).

*Doe v. Judicial Nominating Commission*, 906 F. Supp. 1534, 1538 (S.D. Fla.

1995).  The trial court's weariness would be better directed at entities that refuse to

follow the law.

## CONCLUSION

For the foregoing reasons, Plaintiffs urge this Court to reverse the trial

court's dismissal of the Fourth Amended Complaint.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in
Fed. R. App. P. 32(a)(7).  This brief contains 6,800 excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that a true and correct copy of the foregoing Initial
Brief of Appellant was served by U.S. Mail & electronic transmission, this 2nd day
of October, 2008, to:

Edwin P. Voss of Brown & Hofmeister, LLP, Counsel for Defendant,
740 East Campbell Road, Suite 800, Richardson, Texas 75081

Denise V. Wilkerson, Assistant City Attorney, City of Arlington,
P.O. Box 90231, Arlington, Texas 76004-3231.

_____
Miguel M. de la O