IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

Nos. 08-10630, 08-10631

———————————————

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,          Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                    Defendant-Appellee.

———————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

———————————————————————

**<u>BRIEF OF APPELLEE</u>**

Edwin P. Voss, Jr.
State Bar No. 20620300
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

Denise V. Wilkerson
Assistant City Attorney
State Bar No. 20534100
City of Arlington
P.O. Box 90231
Arlington, Texas 76004-3231
817-459-6878 (Telephone)
817-459-6897 (Telecopier)

Attorneys for Appellee
City of Arlington

November 14, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Nos. 08-10630, 08-10631

_____

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,          Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                      Defendant-Appellee.

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| Name | Interest |
| --- | --- |
| Richard Frame | Plaintiff-Appellant |
| Wendell Decker | Plaintiff-Appellant |
| Scott Updike | Plaintiff-Appellant |
| JN, by his next friend and mother, Gabriela Castro | Plaintiff-Appellant |
| Mark Hamman | Plaintiff-Appellant |
| Joey Salas | Plaintiff-Appellant |

i

| | |
|---|---|
| Miguel M. de la O | Trial and Appellate Counsel for Plaintiffs-Appellants |
| Charles D. Ferguson | Trial Counsel for Plaintiffs-Appellants |
| John M. Nevins | Local Trial Counsel for Plaintiffs-Appellants |
| John L. Freeman | Former Local Trial Counsel for Plaintiffs-Appellants |
| City of Arlington, Texas | Defendant-Appellee |
| Edwin P. Voss, Jr. | Trial and Appellate Counsel for Defendant-Appellee |
| Denise V. Wilkerson | Trial and Appellate Counsel for Defendant-Appellee |
| Kent S. Hofmeister | Trial Counsel for Defendant-Appellee |
| Sidney C. Stahl | Mediator |

_____
EDWIN P. VOSS, JR.
Counsel of Record for Defendant-Appellee

ii

## STATEMENT REGARDING ORAL ARGUMENT

This appeal does not require oral argument. Oral argument will not assist the court in the resolution of the issues raised in this appeal because this case involves a straightforward application of existing legal precedent, and the positions of the parties can be adequately stated in their briefs. The district court's decision follows established Supreme Court and Fifth Circuit precedent regarding application of the statute of limitations defense in the context of a Rule 12(b)(6) motion to dismiss. Appellants have, however, requested oral argument; should the court decide oral argument is warranted, Appellee City of Arlington requests an opportunity to respond to Appellants' arguments.

# TABLE OF CONTENTS

Certificate of Interested Parties.................................................................. i

Statement Regarding Oral Argument ......................................................... iii

Table of Contents ....................................................................................... iv

Table of Authorities .................................................................................... vi

I.    Statement of Jurisdiction.................................................................... 1

II.   Statement of the Issues ...................................................................... 1

III.  Statement of the Case ........................................................................ 2

IV.   Statement of Facts ............................................................................. 4

V.    Summary of Argument ...................................................................... 5

VI.   Argument and Authorities - The District Court Correctly Granted the City's Motion to Dismiss ................................................................. 6

    A.    Appellate Standard of Review ........................................................ 6

    B.    The Legal Standard for Motions to Dismiss Under Rule 12 .............. 6

    C.    The Legal Standard for Plaintiffs' Discrimination Claims .................. 8

    D.    Plaintiffs' Alleged Violations of the ADA or Rehabilitation Act Occurred Prior to July 22, 2003, and Were Barred by the Statute of Limitations ..................................................................................... 12

        1.    There Is No Dispute As To the Two Year Limitations Period .......................................................................................... 12

        2.    Plaintiffs Specifically Alleged Harm Outside of Limitations ..................................................................................... 13

        3.    Plaintiffs' Claims Accrued When Discriminatory Acts Occurred ....................................................................................... 14

        4.    Plaintiffs' Reliance on the Federal Discovery Rule is Misplaced ...................................................................................... 15

        5.    Plaintiffs' Alleged Dates of Encounter Are Not Relevant ...... 18

        6.    Plaintiffs' Claims Did Not Fall Within ADA's Remedial Purpose........................................................................................ 20

        7.    The Continuing Violation Theory Does Not Save Plaintiffs' Time-Barred Claims ............................................. 22

8.    Statute of Limitations Applicable to Claims for Injunctive Relief ....................................................... 29

9.    Plaintiffs' Affirmative Defense Argument is Without Merit......................................................................... 30

10.   The District Court's Footnote 1 Observation Was Not the Basis of Its Decision ................................ 32

E.    Plaintiffs Lack Legal Standing to Bring This Action ........................ 33

1.    Legal Standards ..................................................... 34

2.    No Standing to Sue on Behalf of Disabled Persons in General..................................................................... 35

3.    No Standing to Assert Rehabilitation Act Claim ................... 36

4.    No Standing to Present Claims Regarding Transition Plan, Self-Evaluation or Other Regulations ........................... 37

F.    Plaintiffs Failed to Establish Discrimination .................................... 40

1.    Plaintiffs Failed to Allege Facts Which Show Sufficient Alteration to Trigger ADA Scrutiny...................................... 41

2.    Sidewalks in the Public Rights-of-Way are Not a Program, Activity or Service Under the ADA, and There are No Existing Facility Accessibility Standards ................... 45

3.    Alternatively, an Interpretation that the ADA or the Rehabilitation Act Requires Construction, Maintenance and Retrofitting Sidewalks is Unconstitutional...................... 51

4.    There is No ADA or Rehabilitation Act Claim for Paratransit Releases ................................................. 54

VII.   Conclusion............................................................................... 55

Certificate of Service ............................................................................. 58

Certificate of Compliance ...................................................................... 59

# TABLE OF AUTHORITIES

**Cases**

*Ability Center of Greater Toledo v. City of Sandusky*, 133 F.Supp.2d 589 (N.D.Ohio 2001), *aff'd*, 385 F.3d 901 (6th Cir. 2004) .................................. 38, 39

*Abramson v. University of Hawaii*, 594 F.2d 202 (9th Cir. 1979) ........................ 16

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ......................................................... 39

*Alford v. City of Cannon Beach,* 2000 WL 33200554 (D. Ore.) ...................... 45, 49

*AMTRAK v. Morgan,* 536 U.S. 101 (2002) ............................................... 22, 26, 28

*Askanase v. Fatjo,* 130 F.3d 657 (5th Cir. 1997) .................................................... 17

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ........................................................... 7

*Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002), *cert. denied,* 539 U.S. 958 (2003) ................................................................................................. 29, 46, 47

*Bauer v. Texas,* 341 F.3d 352 (5th Cir. 2003) ......................................................... 36

*Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955 (2007) ............... 7, 8

*Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971 (5th Cir. 1983) .................. 27

*Brennan v. Stewart,* 834 F.2d 1248 (5th Cir. 1988) ................................................. 9

*Brown v. Sibley,* 650 F.2d 760 (5th Cir. Unit A 1981) ............................................ 37

*Carrasquillo v. City of New York,* 324 F.Supp. 2d 428 (S.D.N.Y. 2004) .............. 11

*Carter v. Orleans Parish Pub. Sch.,* 725 F.2d 261 (5th Cir. 1984) ........................ 10

*Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343 (5th Cir. 2001) ................ 25

*Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994) ................................................ 33, 40

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ....................................................... 52

*City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432 (1985) .................... 52

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) .................................................. 36

*Conley v. Gibson,* 355 U.S. 41 (1957) ............................................................. 7, 8

*Copeland v. Wasserstein, Perella & Co., Inc.,* 278 F.3d 472 (5th Cir. 2002)............6

*Crawford v. Western Electric Co.,* 614 F.2d 1300 (5th Cir. 1980) ......................... 23

*Deck v. City of Toledo,* 56 F.Supp.2d 886 (N.D. Ohio 1999) . 14, 15, 16, 17, 19, 23, 24, 27

*Deck v. City of Toledo,* 76 F.Supp.2d 816 (N.D. Ohio 1999) ......................... 28, 39

*Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)................................................................................................. 16, 27

*Dillery v. City of Sandusky,* 398 F.3d 562 (6th Cir. 2005)..........................................8

*Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority* (slip opinion), 2006 WL 3392733, at *11 (E.D. Pa. 2006)14, 20, 22, 39

*Dixon v. Anderson,* 928 F.2d 212 (6th Cir. 1991)................................................. 16

*E.E.O.C. v. Penton Industrial Pub. Co., Inc.,* 851 F.2d 835 (6th Cir. 1988)........... 16

*Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368 (5th Cir. 2008).....7

*Felton v. Polles,* 315 F.3d 470 (5th Cir. 2002) ..................................................... 25

*Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278 (5th Cir. 1993) ................ 35

*Foster v. Morris,* 2006 WL 3712949 (3d Cir. 2006).............................................. 30

*Frank v. Xerox Corp.,* 347 F.3d 130 (5th Cir. 2003)............................................ 25

*Geiger v. City of Upper Arlington* (slip opinion), 2006 WL 1888877 at *1 (S.D. Ohio 2006).......................................................................... 21, 22, 45, 46, 47

*Grady v. City of Fort Worth, Texas*, 2002 WL 63010 (N.D. Tex. 2002) ......... 51, 54

*Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116 (7th Cir. 1997) ..........9

*Hainze v. Richards,* 207 F.3d 795 (5th Cir. 2000)...................................... 10, 46, 51

*Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340 (7th Cir. 1999)........................ 25

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ..................................... 24, 26

*Henrickson v. Potter,* 327 F.3d 444 (5th Cir. 2003) .................................................. 22

*HIP, Inc. v. Port Auth. N.Y. & N.J.,* 2008 WL 852445 (D.N.J. 2008) .................. 19

*Holmberg v. Armbrecht,* 327 U.S. 396 (1946) ......................................................... 30

*Holmes v. Texas A&M University,* 145 F.3d 681 (5th Cir. 1998) ..............................6

*Huckabay v. Moore,* 142 F.3d 233 (5th Cir.1998) ............................................... 22, 25

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191 (5th Cir. 2007) ..........................7

*In re Rubenstein,* 637 A.2d 1131 (Del. 1994) .......................................................... 50

*In re: Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir. 1999) ....................................... 17

*Iverson v. City of Boston,* 452 F.3d 94 (1st Cir. 2006) ................................ 38, 39, 40

*Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986) ...................................................7

*Jensen v. Snellings,* 841 F.2d 600 (5th Cir. 1988) .................................................... 31

*Jones v. ALCOA, Inc.,* 339 F.3d 359 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161
(2004) ............................................................................................................ 12, 32

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045 (5th
Cir. 1982) ......................................................................................................... 4, 7

*Kinney v. Yerusalim,* 9 F.3d 1067(3rd Cir. 1993) ..................................................... 42

*Lavelle v. Listi,* 611 F.2d 1129 (5th Cir. 1980) ........................................................ 14

*Lightbourn v. County of El Paso, Texas,* 118 F.3d 421 (5th Cir. 1997) ............. 37, 55

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................... 34

*Lundeen v. Mineta,* 291 F.3d 300 (5th Cir. 2002) .................................................... 40

*Matthews v. Jefferson,* 29 F.Supp. 2d 525 (W.D. Ark. 1998) ................................. 39

*McGregor v. Louisiana State University Bd. of Sup'rs,* 3 F.3d 850 (5th Cir. 1993)27

*Melton v. DART,* 391 F.3d 669 (5th Cir. 2004) ....................................................... 55

*Messer v. Meno,* 130 F.3d 130 (5th Cir. 1997) ....................................................... 25

*Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860 (C.D. Cal. 2004)....... 32

*Morin v. Caire,* 77 F.3d 116 (5th Cir. 1996) ...........................................................7

*Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492 (E.D. Va. 2002) .... 14, 17, 19, 22, 25

*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) ................................ 25

*New Jersey Protection and Advocacy, Inc. v. Township of Riverside,* (slip opinion) 2006 WL 2226332 (D.N.J. 2006) ...................................................... 22, 45, 46, 47

*Pegram v. Honeywell, Inc.,* 361 F.3d 272 (5th Cir. 2004) ................................. 25, 26

*Perez v. Laredo Junior College,* 706 F.2d 731 (5th Cir. 1983) ............................... 25

*Perry v. Board of Supervisors of C.S.U.,* 715 F.2d 971 (5th Cir. 1983) .................. 22

*Raines v. Byrd,* 521 U.S. 811 (1997) ................................................................ 34, 35

*Reickenbacker v. Foster,* 274 F.3d 974 (5th Cir. 2001) ......................................... 53

*Resident Council of Allen Parkway Vill. v. United States Dep't of Housing & Urban Dev.,* 980 F.2d 1043 (5th Cir. 1993) ....................................................... 40

*Resnick v. Magical Cruise Co., Ltd.,* 148 F.Supp. 2d 1298 (M.D. Fla. 2001) . 35, 51

*Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238 (3rd Cir. 1999) .................................9

*Rizzo v. Children's World Learning Centers, Inc.,* 173 F.3d 254 (5th Cir. 1999) .....9

*Rodriguez v. Investco, LLC,* 305 F.Supp.2d 1278 (M.D. Fla. 2004) ...................... 32

*Rosen v. Montgomery County,* 121 F.3d 154 (5th Cir. 1997) ................................. 46

*Ross v. Gatlinburg,* 327 F.Supp. 2d 834 (E.D. Tenn 2003) .................................. 39

*Schonfeld v. City of Carlsbad,* 978 F.Supp. 1329 (S.D. Calif. 1997) ..................... 40

*Shotz v. Cates,* 256 F.3d 1077 (11th Cir. 2001) .................................................... 36

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26 (1976) ............................ 34

*Slager v. Duncan,* 162 F.3d 1155 (4th Cir. 1998)...................................................... 49

*Stewart v. CPC International, Inc.,* 679 F.2d 117 (7th Cir. 1982) ........................... 16

*Tennessee v. Lane,* 541 U.S. 509 (2004) ................................................ 21, 49, 52, 53

*Tyler v. City of Manhattan,* 118 F.3d 1400 (10th Cir. 1997).............................. 36, 45

*U.S. v. Retirement Services Group,* 302 F.3d 425 (5th Cir. 2002) ........................... 31

*United Air Lines, Inc. v. Evans,* 431 U.S. 553 (1977) ............................................. 27

*United States v. Martinez,* 263 F.3d 436 (5th Cir. 2001)................................... 33, 40

*Villanueva v. CNA Ins. Co.,* 868 F.2d 684 (5th Cir. 1989)................................ 33, 40

*Voices for Independence v. Penn Dep't of Transp.,* 2007 WL 2905887 (W.D. Pa. 2007) ........................................................................................................ 19, 26

*Warth v. Seldin,* 422 U.S. 490 (1975) ..................................................................... 34

*Washington v. Indiana High Sch. Athletic Ass'n, Inc.,* 181 F.3d 840 (7th Cir. 1999) ............................................................................................................................ 10

*Watts v. Graves,* 720 F.2d 1416 (5th Cir. 1983)........................................... 14, 31, 32

*Webb v. Investacorp., Inc.,* 89 F.3d 252 (5th Cir. 1996) .................................... 33, 40

*Zimmerman v. Oregon DOJ,* 170 F.3d 1169 (9th Cir. 1999) .................................. 46

**Statutes**

United States Constitution, Article III, Sec. 2 ....................................................... 34

28 C.F.R. § 35.104 ............................................................................................... 43, 45

28 C.F.R. § 35.105 .................................................................................................... 38

28 C.F.R. § 35.150 ........................................... 18, 27, 38, 41, 42, 43, 44, 47, 48, 53

28 C.F.R. § 35.151 .................................................................................................... 41

28 C.F.R. §§ 35.149 - 35.151................................................................................... 21

28 C.F.R. part 36, §14, Appendix A.................................................................... 44, 50

28 C.F.R. part 36, §4.1.6(2), Appendix A ............................................................. 50

28 C.F.R. Pt. 36, App. B ....................................................................................... 42

29 U.S.C. § 794 .............................................................................................. 9, 19

36 C.F.R. 1191 ....................................................................................... 10, 11, 15

42 U.S.C. § 12101 ..................................................................................................8

42 U.S.C. § 12132 ......................................................................................... 8, 9, 19

42 U.S.C. § 12133 .............................................................................................. 10

63 Fed. Reg. 2, 013 (Jan. 13, 1998) ...................................................................... 11

Fed. R. App. P. 28 ....................................................................................... 2, 4, 33

Fed. R. App. P. 32 ............................................................................................... 59

Fed. R. Civ. P. 12 ................................................................... iii, 2, 4, 6, 7, 12, 31, 32

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

Nos. 08-10630, 08-10631

———————————————————

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,          Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                    Defendant-Appellee.


## BRIEF OF APPELLEE

Defendant-Appellee City of Arlington, Texas (hereafter "the City,"
"Appellee" or "Defendant," where appropriate) respectfully submits the following
brief in response to the Initial Brief of Appellants.

**I.**

## STATEMENT OF JURISDICTION

The City does not dispute that this Court has jurisdiction to hear this appeal,
under the authorities cited in the Initial Brief of Appellants ("Appellants' Brief"),
p. 1.

**II.**

## STATEMENT OF THE ISSUES

Despite the issue presented in Appellants' Brief, at p. 1, the City submits
that the issue presented by this appeal is whether the district court was correct in

**BRIEF OF APPELLEE - Page 1**

dismissing Plaintiffs' claims under the ADA and the Rehabilitation Act for failure to state a claim upon which relief could be granted, under Rule 12(b)(6). The Plaintiffs complain about one ground asserted in the City's dismissal motion and decided by the district court, *i.e.,* that Plaintiffs' claims were barred by the applicable statute of limitations. The City asserts that the district court's judgment should be affirmed on that ground, and on other grounds asserted in its dismissal motion, as well: (1) Plaintiffs lacked standing to bring their various claims; and (2) Plaintiffs' allegations do not establish discrimination under the ADA or Rehabilitation Act.

## III.

## STATEMENT OF THE CASE

Plaintiffs' statement of the case is somewhat correct, but inappropriately contains Plaintiffs' arguments. *See* Appellants' Brief, pp. 2-4; Fed. R. App. P. 28(a)(6). For the sake of accuracy and completeness, the City provides the following statement of the case. Fed. R. App. P. 28(b)(3).

Plaintiffs' Complaint was filed on July 22, 2005, alleging violations of the ADA and the Rehabilitation Act against the City. Record on Appeal ("Rec."), Vol. 1, pp. 18-41. On August 11, 2005, the City filed Defendant City of Arlington's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims and Brief, asserting Plaintiffs' failure to state a claim upon which relief could be granted, on several grounds.

**BRIEF OF APPELLEE - Page 2**

Rec., Vol. 1, pp. 51-80.[1]  As recounted in Appellants' Brief, at pp. 2-4, Plaintiffs amended their complaint four times, either voluntarily or at the request of the district court.  Rec., Vol. 1, pp. 160-183; Vol. 1, pp. 212-246; Vol. 3, pp. 557-601; and Vol. 4, pp. 801-852.  Plaintiffs' Fourth Amended Complaint was filed on August 9, 2007.  Rec., Vol. 4, pp. 801-852.

The City's Third Renewed Motion to Dismiss Plaintiffs' claims, and accompanying brief, were filed on April 30, 2007, and were initially directed to Plaintiffs' Third Amended Complaint.  Rec., Vol. 3, pp. 679-717.  The district court nonetheless considered the City's dismissal motion as one directed towards Plaintiffs' Fourth Amended Complaint.  Rec., Vol. 4, pp. 799-800.[2]  After briefing by the parties (Rec., Vol. 4, pp. 858-935), the district court issued its Order Granting Third Renewed Motion to Dismiss on March 31, 2008 (Rec., Vol. 4, pp. 961-969), and Final Judgment, dated March 31, 2008 (entered on the district court's docket on April 1, 2008).  Rec., Vol. 4, p. 970.  Plaintiffs' Motion to Alter and/or Amend the Judgment of Dismissal and Memorandum of Law in Support Thereof was filed on April 14, 2008.  Rec., Vol. 4, pp. 989-1000.  After briefing by the parties (Rec., Vol. 5, pp. 1001-1014), the district court denied Plaintiffs'

---

[1]  This motion was re-filed by the City on August 22, 2005, with leave of court, in order to comply with the district court's electronic filing procedures.  Rec., Vol. 1, pp. 122-153.

[2]  Plaintiffs' Fourth Amended Complaint added new parties-plaintiff, but otherwise asserted identical claims as the preceding complaint.  *Id.;* and Rec., Vol. 4, pp. 801-852.

**BRIEF OF APPELLEE - Page 3**

motion. Rec., Vol. 5, p. 1015. Plaintiffs' Notice of Appeal and Corrected Notice of Appeal were filed on June 7 and 8, 2008, respectively. Rec., Vol. 5, pp. 1016-1029.

## IV.

## <u>STATEMENT OF FACTS</u>

Plaintiffs' Statement of the Facts section (Appellants' Brief, pp. 4-9) actually contains very little factual matter and, instead, sets forth Plaintiffs' legal arguments regarding their ADA and Rehabilitation Act claims, contrary to Fed. R. App. P. 28(a)(7). Plaintiffs' repeated avoidance of citing specific facts to support their claim to relief, here as well as in the district court, supports the dismissal of Plaintiffs' claims. *See* Rec., Vol. 3, p. 510; Vol. 4, pp. 962-968; and Vol. 5, p. 1015. The only "facts" under consideration in an appeal from dismissal under Rule 12(b)(6) for failure to state a claim are those presented in Plaintiffs' complaint. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). For Plaintiffs' factual allegations, *see* Plaintiffs' Fourth Amended Complaint. *See* Rec., Vol. 4, pp. 801-852. [3]

---

[3] Unfortunately, as will be discussed herein, much of Plaintiffs' allegations in their pleadings, and argument in their Statement of Facts section, asserts claims based upon accessibility to facilities as in a case under ADA Title III, rather than discrimination under ADA Title II (where there is no requirement to make all facilities accessible).

<u>**BRIEF OF APPELLEE**</u> **- Page 4**

**V.**

## SUMMARY OF ARGUMENT

This is not a class action case.  Plaintiffs' goal in this lawsuit, nonetheless, is for the City to remediate its entire streets, sidewalks and public rights-of-way system, even in residential areas of the City.  By this lawsuit, Plaintiffs attempt to impose technical ADA regulation standards on sidewalks and other structures in the public rights-of-way, where no City programs, services or activities are offered.  Neither the ADA nor the Rehabilitation Act authorize such attempt.  While the City has a duty to provide accessibility to its programs, and a duty to construct accessible facilities when altering existing facilities or constructing new ones, Plaintiffs' complaint did not include a single specific allegation of a construction or alteration date triggering the City's duty.

The applicable statute of limitations for ADA and Rehabilitation Act claims is two (2) years in Texas.  Plaintiffs failed to allege any violation of the City of Arlington that occurred within two (2) years prior to filing Plaintiffs' complaint.  As a result, Plaintiffs' claims under the ADA and the Rehabilitation Act were untimely.  Plaintiffs have also waived, in this *de novo* appeal, any issue as to the other grounds asserted in the City's dismissal motion.  Those grounds also support the district court's judgment.  The district court properly granted the City's dismissal motion, and its judgment should be affirmed.

**BRIEF OF APPELLEE - Page 5**

**VI.**

**ARGUMENT AND AUTHORITIES**

**THE DISTRICT COURT CORRECTLY GRANTED
THE CITY'S MOTION TO DISMISS**

A.    Appellate Standard of Review.

This is an appeal from a judgment of dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court of appeals' review is *de novo. Copeland v. Wasserstein, Perella & Co., Inc.,* 278 F.3d 472, 477 (5th Cir. 2002); *Holmes v. Texas A&M University,* 145 F.3d 681, 683 (5th Cir. 1998). In reviewing a dismissal for failure to state a claim, this Court uses the same standard used by the district court, *i.e.,* whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Copeland,* 278 F.3d at 477. This Court will affirm an order granting dismissal under Rule 12(b)(6) if it appears that no relief could be granted under any set of facts that could be proven consistent with the plaintiff's allegations. *Holmes,* 145 F.3d at 683.

B.    The Legal Standard for Motions to Dismiss Under Rule 12.

The City sought dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for dismissal of a cause of action if the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the

**BRIEF OF APPELLEE** - Page 6

pleadings. *See Jackson v. Procunier,* 789 F.2d 307, 309 (5th Cir. 1986); and *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

Two considerations guide a court's analysis of the propriety of dismissal under Rule 12(b)(6). First, the allegations contained in the complaint are to be construed in plaintiff's favor, and all well-pleaded facts in the complaint are accepted as true. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Conclusory allegations in the complaint, however, shall not be accepted as true. *Kaiser Aluminum,* 677 F.2d at 1050.

Second, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). Further, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic,* 127 S.Ct. at 1965. The district court recognized and applied the *Bell Atlantic* standard. Rec., Vol. 4, p. 963. This Court, as well, has recognized and applied *Bell Atlantic's* new standard. *See Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 n.10 (5th Cir. 2007) (stating that this Court no longer applies the minimal standard of adequate pleading set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Appellants' Brief nonetheless omits any reference to *Bell Atlantic,* and does not include a discussion of how Plaintiffs' Fourth Amended Complaint

**BRIEF OF APPELLEE - Page 7**

("Plaintiffs' Amended Complaint") satisfies the *Bell Atlantic* standard.   *See, generally,* Appellants' Brief.[4]

C.      The Legal Standard for Plaintiffs' Discrimination Claims.

Plaintiffs' Amended Complaint alleged that the City intentionally discriminated against Plaintiffs in violation of Title II of the ADA.  Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  To establish a *prima facie* case under Title II, Plaintiffs must each establish that:  (1) he has a disability; (2) he is otherwise qualified; and (3) he is being denied access to or the benefits of the program or service solely on the basis of his disability.  *See Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir. 2005).

Plaintiffs also alleged that they have been discriminated against in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act").  Section 504 of the Rehabilitation Act provides, in pertinent part:

---

[4]  Plaintiffs instead reference, in the context of other argument, the old *Conley v. Gibson* standard that has now been abrogated by *Bell Atlantic.  See* Appellants' Brief, p. 17.

**BRIEF OF APPELLEE - Page 8**

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a). To establish a *prima facie* violation of § 504, Plaintiffs must each show that: (1) he is a "handicapped person" as defined in the Rehabilitation Act; (2) he is "otherwise qualified" to participate in the offered activity or to enjoy its benefits; (3) he was excluded, denied benefits, or discriminated against solely by reason of his handicap; and (4) the program denying his participation receives federal financial assistance. *See Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3rd Cir. 1999); and *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 119 (7th Cir. 1997).

The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Rizzo v. Children's World Learning Centers, Inc.,* 173 F.3d 254, 261 (5th Cir. 1999); and 42 U.S.C. § 12132 (1995). The Rehabilitation Act was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." *Brennan v. Stewart,* 834 F.2d 1248, 1259 (5th Cir. 1988); and 29 U.S.C. § 794 (1995). The language in both statutes is similar; indeed, the ADA expressly provides that "[t]he remedies, procedures and rights" available under the

**BRIEF OF APPELLEE - Page 9**

Rehabilitation Act are also accessible under the ADA. 42 U.S.C. § 12133 (1995).

As a result, "[j]urisprudence interpreting either section is applicable to both."

*Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000).[5]  A plaintiff asserting a

private cause of action for violations of the ADA and the Rehabilitation Act, as in

this case, may only prevail upon a showing of intentional discrimination. *Carter v.*

*Orleans Parish Pub. Sch.,* 725 F.2d 261, 264 (5th Cir. 1984).

Plaintiffs assert that intentional discrimination exists whenever a sidewalk,

curb ramp, parking lot or other facility is found in the City to be out of compliance

with technical standards.  Appellants' Brief, pp. 6-9.  This Court should reject

Plaintiffs' incorrect statement of the law.  There are no regulations applicable to

public rights-of-way. *See* 36 C.F.R. 1191 (Final Rule) (standards for public rights-

of-way are listed as "reserved").  Comment 14 sheds light on this intentional

omission:

> Section 14 of the interim rule contained new construction provisions
> which were **not** intended to apply to existing facilities in the public
> rights-of-way.  With respect to alterations, section 14 contained less
> stringent scoping and technical provisions for alterations to
> established rights-of-way where there is site infeasibility. . . . The
> guidelines contained in section 14 of the interim rule have been
> adopted by the State of Alabama and are being used to guide policies
> on pedestrian accessibility in the States of California, New Jersey and
> Florida.

---

[5]  The Rehabilitation Act, however, requires that the discrimination be based **solely** on disability. *See Washington v. Indiana High Sch. Athletic Ass'n, Inc.,* 181 F.3d 840, 845 n. 6 (7th Cir. 1999)(emphasis added).

**BRIEF OF APPELLEE - Page 10**

63 Fed. Reg. 2, 013 (Jan. 13, 1998) (emphasis added).  Noteworthy is that Texas is not included in those standards.  Noteworthy, too, is that the original regulation (at 36 C.F.R. Part 1191, Interim Final Rule) provided, in the definition for "Continuous Passage," the following:

> Although public sidewalks are subject to technical provisions similar to those that apply to accessible routes, public sidewalks are not required to meet guidelines for accessible routes unless the public sidewalk is used to provide the required accessible route connecting accessible elements on a site.

As a result, contrary to Plaintiffs' argument, under either the old C.F.R. or the existing one, sidewalks in the public rights-of-way are not generally and globally required to be accessible.  This Court should review Plaintiffs' allegations with a denial-of-access-to-a-city-program standard in mind, rather than adopting Plaintiffs' global argument of technical violations amounting to intentional discrimination.  In other words, since Plaintiffs' claims are based upon alleged technical violations of regulations, rather than exclusion from City programs, activities or services, Plaintiffs' allegations fail to state a plausible claim.  *See, e.g., Carrasquillo v. City of New York,* 324 F.Supp. 2d 428, 443 (S.D.N.Y. 2004) (plaintiffs' alleged difficulty in attending a prison activity, rather than exclusion from it, found insufficient to state an ADA claim).

**<u>BRIEF OF APPELLEE</u> - Page 11**

D.    Plaintiffs' Alleged Violations of the ADA or Rehabilitation Act Occurred Prior to July 22, 2003, and Were Barred by the Statute of Limitations.

Plaintiffs' Amended Complaint vaguely alleged harm occurring from recent times all the way back to when the ADA was enacted in 1990. Rec., Vol. 4, pp. 801-852. Any claims for discrimination arising out of events that occurred more than two (2) years preceding the date Plaintiffs' case was filed are barred by limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161 (2004). Plaintiffs' Original Complaint was filed on July 22, 2005 (Rec., Vol. 1, pp. 5, 18), so that the applicable date two years prior is July 22, 2003.

1.    There Is No Dispute As To the Two Year Limitations Period.

Plaintiffs have not opposed the designation of the two (2) year limitations period as being applicable, either in the district court or in this Court. *See, generally,* Appellants' Brief. The district court correctly found that the Texas two year statute of limitations applies to this action, which was asserted by the City in its dismissal motion. *See* Rec., Vol. 3, pp. 695-698; Vol. 4, pp. 966-967.

**BRIEF OF APPELLEE** - **Page 12**

2.      <u>Plaintiffs Specifically Alleged Harm Outside of Limitations</u>.

In the district court's Order Denying as Moot Motion to Dismiss and Ordering Amended Pleadings, dated July 31, 2006 (Rec., Vol. 3, pp. 509-511), the court requested Plaintiffs to add more specificity in their time-sensitive allegations:

> Plaintiffs' amended complaint does not adequately allege construction and/or alteration dates or timelines for the locations alleged to be noncompliant with § 35.150 or § 35.151. . . Therefore, the Court DIRECTS Plaintiffs to file a third amended complaint . . . Plaintiffs' third amended complaint may not include new causes of action or factual allegations other than the inclusion of dates or timelines of alteration and/or construction for the sites allegedly in noncompliance with the ADA and the Rehabilitation Act.

Rec., Vol. 3, p. 510 (emphasis in original).  In response, Plaintiffs specifically avoided any allegation of harm caused by the City's alteration or construction efforts within two (2) years of the filing of Plaintiffs' lawsuit.  Instead, all of Plaintiffs' alleged harm as to the City's construction of streets and sidewalks are specifically alleged to have occurred either 3, 5, 10 or more years prior to when this lawsuit was filed.  *See* Rec., Vol. 4, pp. 815-841 (Plaintiffs' Amended Complaint, at ¶¶ 34, 36, 37, 43, 45, 46, 47, 48, 50, 53, 54, 55, 56).  As a result, the district court correctly found that Plaintiffs failed to state a claim of a violation of harm within the applicable statute of limitations.  Rec., Vol. 4, p. 967.

3.    Plaintiffs' Claims Accrued When Discriminatory Acts Occurred.

While state law determines the limitations period that is applicable, federal law governs the accrual of a cause of action. *See, e.g., Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983). A cause of action accrues when "the plaintiff knows or has reason to know of the injury . . . and who has inflicted the injury. . . ." *Id.* (quoting *Lavelle v. Listi,* 611 F.2d 1129, 1131 (5th Cir. 1980)). *See also Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority* (slip opinion), 2006 WL 3392733, at *11 (E.D. Pa. 2006)(accrual of federal cause of action is federal question in ADA case); *Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492, 507-10 (E.D. Va. 2002) (disabled plaintiffs' FHA claims accrued when building constructed). The district court, relying on *Deck v. City of Toledo,* 56 F.Supp.2d 886, 892 (N.D. Ohio 1999), determined that limitations began to run at the time the discriminatory act occurred, rather than in response to the continuing effects of those acts. Rec., Vol. 4, p. 967. Specifically, the district court found that Plaintiffs' cause of action accrued when the improvements took place and not when Plaintiffs alleged that they attempted to use the sidewalks and other facilities. *Id.* This issue forms the focal point of Plaintiffs' appeal. Appellants' Brief, p. 1.

Plaintiffs' Amended Complaint seemed to assume that every street, sidewalk, curb ramp, parking lot or other facility that is located in the City is the

**BRIEF OF APPELLEE - Page 14**

City's responsibility. In any event, Plaintiffs' Amended Complaint did not remedy the issue about which the district court was concerned in its July 28, 2006, order: allegations concerning construction and/or alteration dates or timelines. Plaintiffs attempt, by this appeal, to avoid the effect of their vague allegations by arguing the federal "discovery rule" as to when their cause of action accrued, rather than when the City built the facility allegedly not in compliance with ADA technical regulations.[6] That attempt should be rejected.

>  4. <u>Plaintiffs' Reliance on the Federal Discovery Rule is Misplaced</u>.

Plaintiffs argue that the federal discovery rule allows their cause of action to accrue sometime after the construction of the curb ramps, sidewalks and other facilities in question. Appellants' Brief, pp. 11-16. Since Plaintiffs' Amended Complaint specifically alleged that all construction activity for the sites at issue occurred more than three (3) years prior to the filing of their complaint, Plaintiffs' reliance on the discovery rule is not surprising. Plaintiffs' argument was rejected by the district court, however, and should be rejected by this Court.

The district court referenced the rationale in *Deck* in finding that Plaintiffs' claims are time-barred. Rec., Vol. 4, p. 967. Appellants' Brief omits any

---

[6] As previously mentioned, there are no regulations for public rights-of-way. *See* 36 C.F.R. 1191 (Final Rule) and comment 14. *See* Section F(2), below.

**BRIEF OF APPELLEE - Page 15**

discussion of *Deck* in this context.  Appellants' Brief, pp. 11-16.[7]  *Deck* provides sound rationale for holding that limitations begins to run on an ADA claim regarding insufficient sidewalks, curb ramps and other facilities (as alleged by Plaintiffs here) at the time the discriminatory act occurred and not in response to the continuing effects of those acts, recognizing the same federal accrual standard so strongly asserted here by Plaintiffs:

> Although Plaintiff's (sic) are correct in contending that a two year statute of limitations for violations of the ADA could create a difficult issue of discovery with respect to noncompliant curb ramps, the law on the matter is clear.  The general rule is "statutes of limitations … are triggered at the time the alleged discriminatory act occurred." *E.E.O.C. v. Penton Industrial Pub. Co., Inc.,* 851 F.2d 835, 837-38 (6th Cir. 1988).  Of course, the limitations period is measured beginning only from the time when the plaintiff knew or should have known of the injury." *Stewart v. CPC International, Inc.,* 679 F.2d 117, 120 (7th Cir. 1982).  However, it is important to note that statutes of limitations **"begin to run in response to the discriminatory act[s] themselves, not in response to the continuing effects of those acts."** *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir. 1991) (emphasis added) (discussing the continuing violation theory).  *See also Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (finding that it is insufficient for a Plaintiff to allege that his termination gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination); *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979) (holding that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful").

---

[7]  Selectively, Plaintiffs cite to and endorse *Deck* in the context of their continuing violation argument.  Appellants' Brief, pp. 20-21 ("Indeed, there is little difference between *Deck* and the instant case.").  The City discusses *Deck* and the continuing violation theory in subsection 7, below.

**BRIEF OF APPELLEE - Page 16**

Therefore, the fact that the curb ramps in question are in undisputed violation of the ADA and that disabled individuals still suffer the ramifications of having noncompliant ramps scattered throughout the community does not create a present violation of the ADA if the ramps were completely constructed and in plain view two years prior to the commencement of the lawsuit.

*Deck,* 56 F.Supp.2d at 892 (emphasis in original).

The *Deck* logic is consistent with the policy behind statutes of limitations. *See Moseke,* 202 F.Supp.2d at 509-10. This logic was rightfully adopted by the district court, and should also be affirmed by this Court. There is no Fifth Circuit authority mandating the alternative approach urged by Plaintiffs. The cases cited by Plaintiffs (Appellants' Brief, pp. 12-16) do not control this Court's analysis, particularly since the non-Fifth Circuit cases not only reject *Deck's* reasoning, but also conflict with this Court's precedents in regards to the application of the discovery rule. *See In re: Coastal Plains, Inc.,* 179 F.3d 197, 214 (5th Cir. 1999) (application of the discovery rule is permitted in those cases where the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable); *Askanase v. Fatjo,* 130 F.3d 657, 668 (5th Cir. 1997) (same).

Plaintiffs' arguments concerning the discovery rule not only contradict this Court's prior precedents, but also completely eviscerate application of **any** statute of limitations defense in ADA cases complaining about the construction or alteration of municipal facilities. Moreover, Plaintiffs did not allege denial of access to a program, service or activity of the City's, or the date of such denial of

**BRIEF OF APPELLEE - Page 17**

access, faulty construction or alteration, contrary to the requirement to allege specific dates (specific dates were discussed in each of Plaintiffs' cited authorities). *See* 28 C.F.R. § 35.150. While the City does not intend to violate the ADA, or argue that the ADA's goals and objectives are not right, honorable and worthy, Plaintiffs' arguments to reject application of a statute of limitations in ADA matters, in effect, calls for unlimited potential municipal liability, to the detriment of the City's citizens and the public fisc.

Plaintiffs' Original Complaint was filed on July 22, 2005; therefore, Plaintiffs must have alleged facts which show a violation of the ADA and/or Rehabilitation Act, and that such violation occurred within two years prior to the date on which Plaintiffs' Original Complaint was filed. Since Plaintiffs' Amended Complaint undisputedly alleges harm arising out of alteration or new construction events that occurred prior to July 22, 2003, such claims are barred by limitations as a matter of law.

> 5.    Plaintiffs' Alleged Dates of Encounter Are Not Relevant.

Plaintiffs assert that they encountered the City's alleged unlawful streets, sidewalks, curb ramps and other facilities within two years of filing their complaint. Appellants' Brief, pp. 16-19. Plaintiffs assert that the date of their alleged encounter controls their cause of action accrual requirement, rather than the date of the City's alleged discriminatory act (*i.e.,* the date of construction). *Id.,* at

**BRIEF OF APPELLEE - Page 18**

pp. 12-16 (citing *HIP, Inc. v. Port Auth. N.Y. & N.J.,* 2008 WL 852445 (D.N.J. 2008); and *Voices for Independence v. Penn Dep't of Transp.,* 2007 WL 2905887 (W.D. Pa. 2007)). The reasoning employed in those district court opinions should be disregarded. As cited from *Deck,* above, the ADA and Rehabilitation Act provide a remedy for discriminatory acts, not for the continuing effect of those discriminatory acts. *Compare* 42 U.S.C. § 12132 and 29 U.S.C. § 794(a), *with Deck,* 56 F.Supp.2d at 892. To reiterate, the effect of Plaintiffs' argument would be to completely erase any limitations period that could ever be applicable to claims alleging ADA construction violations, no matter how stale. *See Moseke,* 202 F.Supp.2d at 507 (rejecting continuing effect argument in FHA case).

Plaintiffs further argue that "It was premature for the trial court to assume that no discriminatory acts accrued within the limitations period." Appellants' Brief, p. 17. The district court did no such thing, but instead read Plaintiffs' deficient pleadings as **only** asserting Defendant's discriminatory acts to have occurred three years or more prior to the filing of Plaintiffs' complaint. Rec., Vol. 4, p. 967. Plaintiffs' attempt to re-define "discriminatory act" to mean "encounter with discriminatory act" should be rejected. *See, e.g., Deck,* 56 F.Supp.2d at 892; *Moseke,* 202 F.Supp.2d at 507.

6.    Plaintiffs' Claims Did Not Fall Within ADA's Remedial Purpose.

Plaintiffs assert that the district court's decision contravenes the remedial purposes of the ADA.  Appellants' Brief, pp. 18-19.  Plaintiffs' assertion of various hypothetical horrible examples, and their attempt to assert, by analogy, that a fair housing case's rationale is controlling, amounts to mere sophistry.  *Id.*  Plaintiffs' claims are based on their attempt to enforce ADA regulation details on sidewalk, curb ramp, parking space, and other public facilities, as constituting intentional discrimination.  Rec., Vol. 4, pp. 814-851.  Plaintiffs' allegations regarding these facilities contained detailed information concerning slopes, cross-slopes, number of parking spaces, and other matters appearing not in the ADA statute, but instead in the ADA regulations.  *Id*.  None of those allegations, however, established that the City intentionally discriminated against Plaintiffs by preventing them from participating in any program, activity, service or benefit of the City in contravention of Title II.  In other words, Plaintiffs' allegations did not allege discrimination, but only alleged non-compliance with regulations related to the construction of those facilities (without specifying any dates of construction).  Plaintiffs seem to equate non-compliance with those regulations as creating their cause of action; such is not the case.  *See Disabled in Action in Pennsylvania,* 2006 WL 3392733, at **11-29 (no private right of action to enforce agency regulations directed at public entity under ADA); and *Geiger v. City of Upper Arlington* (slip

**BRIEF OF APPELLEE** - Page 20

opinion), 2006 WL 1888877 at *1 (S.D. Ohio 2006) (ADA does not require municipalities to comply with structural specifications when making improvements to sidewalks).

Plaintiffs alleged intentional discrimination under the ADA and Rehabilitation Act. In this case, the only program Plaintiffs alleged that they were denied access to was the putative "program" of "sidewalks" (and connecting curb ramps and other facilities). *See, generally,* Rec., Vol. 4, pp. 801-852. Plaintiffs did not allege that they were excluded from or denied access to a City program, activity or service, such as the ability to vote, serve on a jury, attend a City Council meeting, or similar program, activity or service. *Cf. Tennessee v. Lane,* 541 U.S. 509, 524-25 (2004).

Plaintiffs' alleged dates of harm were also vague. Rec., Vol. 4, pp. 801-852. Plaintiffs had five opportunities to allege their purported discrimination cause of action, and increasingly focused their claims not on program exclusion but instead on purported technical violations of 28 C.F.R. §§ 35.149 - 35.151.[8] The district court found Plaintiffs' allegations insufficient in that regard. *See* Rec., Vol. 3, pp. 509-11. The City's sidewalks, curb ramps, parking spaces and other "facilities" under the ADA are not a "program, activity or service" of the City. *See New Jersey Protection and Advocacy, Inc. v. Township of Riverside,* (slip opinion) 2006

---

[8] To reiterate, there are no regulations applicable to public rights-of-way. *See* note 6, above.

**BRIEF OF APPELLEE** - Page 21

WL 2226332 (D.N.J. 2006); *Geiger,* 2006 WL 1888877, at *3; and discussion in Section F(2), below.  And, as the district court observed, Plaintiffs alleged that the City's construction of those facilities all occurred outside the applicable two year limitations period.  Rec., Vol. 4, pp. 967-68.  Plaintiffs, therefore, failed to state a claim upon which relief could be granted.

       7.    <u>The Continuing Violation Theory Does Not Save Plaintiffs'<br>Time-Barred Claims</u>.

Plaintiffs assert a "continuing violation" theory to save their time-barred claims.  Appellants' Brief, pp. 20-23.  Such an assertion was rejected by the district court.  Rec., Vol. 4, pp. 967-968.  A plaintiff asserting continuing violations "must demonstrate more than a series of discriminatory acts.  He must show an organized scheme leading to and including a present violation such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir.1998) (internal citations omitted).  A suit over discrete discriminatory acts nevertheless must be brought within the appropriate time period. *AMTRAK v. Morgan,* 536 U.S. 101, 107 (2002). *See also Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003); and *Disabled in Action in Pennsylvania*, 2006 WL 3392733, at **13-17.  When an act has a degree of permanence sufficient to trigger notice of a violation of law, limitations begins to run. *Perry v. Board of Supervisors of C.S.U.,* 715 F.2d 971, 981 (5th Cir. 1983); *Moseke,* 202 F.Supp.2d at 503-07.

**<u>BRIEF OF APPELLEE</u> - Page 22**

Here, Plaintiffs' Amended Complaint alleged no such discriminatory practice, *per se*, only that some isolated sidewalks or curb ramps were allegedly "altered or redone" 3, 5, 10 or more years prior to when this case was filed. Rec., Vol. 4, pp. 815-841. Plaintiffs' Amended Complaint, ¶¶ 34, 36, 37, 43, 45, 46, 47, 48, 50, 53, 54, 55, 56. Plaintiffs did not allege any violations within the two-year limitations period, and the continuing violation theory does not apply. Any harm Plaintiffs alleged that occurred by the City's actions beyond the two year statute, relying on such discrete acts, is not justiciable. *See Crawford v. Western Electric Co.,* 614 F.2d 1300, 1309 (5th Cir. 1980).

Appellants' Brief asserts, nonetheless, that the case *Deck v. City of Toledo,* 56 F.Supp.2d 886 (N.D. Ohio 1999) was "cited with approval" by the trial court, and that "there is little difference between *Deck* and the instant case." Appellants' Brief, p. 20.[9] The facts in *Deck*, however, are significantly different from this case vis-à-vis application of the continuing violation theory. It was undisputed in *Deck* that at least one of the problematic curb ramps was installed within limitations:

> Therefore, if the City was engaged in a discriminatory practice by failing to oversee the contractors, even if they did not affirmatively intend to discriminate, **and at least one of the ramps was installed within the statutory two year period (which is undisputed),** the

---

[9] As to the issue of cause of action accrual, discussed above, the City agrees with Plaintiffs, and *Deck* defeats Plaintiffs' argument regarding when their claims accrued. *See* subsections 3 and 4, above.

**BRIEF OF APPELLEE** - Page 23

> statute of limitations will not bar the claims because the City's actions constitutes (sic) a continuing violation.

*Deck,* 56 F.Supp.2d at 895 (emphasis added).

The district court relied upon this difference to find that Plaintiffs' claims were not saved by the continuing violation theory: "But even under this theory, at least one of the discriminatory acts must have occurred within the limitations period. [citation omitted]. By Plaintiffs' own account, the most recent alteration by Arlington was three years before the complaint was filed." Rec., Vol. 4, pp. 967-68 (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380 (1982)).[10] As a result, the continuing violation theory does not save Plaintiffs from the effects of limitations. *Id.*[11]

The district court's application of the continuing violation theory is consistent with this Court's precedent. While there is no Fifth Circuit case that applies the continuing violation theory to claims under the ADA or Rehabilitation

---

[10]  Plaintiffs also cite the *Havens Realty* case. Appellants' Brief, p. 21.

[11]  Plaintiffs cite the following sentence from the district court as grounds for reversal: "Plaintiffs' argument that Arlington is committing a continuing violation of the ADA and the Rehabilitation Act does save them from the effects of limitations." Rec., Vol. 4, p. 967. *See* Appellants' Brief, p. 20. Plaintiffs' emphasis is misplaced, since the trial court determined that the continuing violation theory did **not** save Plaintiffs from the effect of limitations. Rec., Vol. 4, pp. 967-68. With all due respect to the district court, the City believes and asserts that the sentence relied upon by Plaintiffs contains an inadvertent (and unfortunate) typographical error, by its having omitted the word "not" from between "does" and "save" (so that the phrase would correctly read ". . . does not save them . . ."). This construction would make the district court's order internally consistent. Plaintiffs' argument, instead, makes the district court's order internally contradictory, when it is clear that the district court found Plaintiffs' continuing violation theory without merit. *See, generally,* Rec., Vol. 4, pp. 967-970.

**<u>BRIEF OF APPELLEE</u> - Page 24**

Act, this Court has maintained a consistent view that the focus is on the defendant's actions, one of which must have occurred within the applicable limitations period:

> This court has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003); *see also Huckabay v. Moore,* 142 F.3d 233, 238-39 (5th Cir. 1998). Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Felton v. Polles,* 315 F.3d 470, 487 (5th Cir. 2002) (*citing Messer v. Meno,* 130 F.3d 130, 135 (5th Cir. 1997)). The end goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir. 1999).

*Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 (5th Cir. 2004). *See also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) (discussed in *Pegram*); *Perez v. Laredo Junior College,* 706 F.2d 731, 734 (5th Cir. 1983); *Moseke,* 202 F.Supp.2d at 503-07.

Plaintiffs assert that each instance wherein the City has failed to properly construct a sidewalk, curb ramp or other facility constitutes a discrete, actionable act. Rec., Vol. 4, pp. 803-804; 815-841. None of the City's acts, however, are

**BRIEF OF APPELLEE - Page 25**

alleged to have occurred within two years of the filing of Plaintiffs' complaint; indeed, all of such acts by the City are specifically and expressly alleged to have occurred three or more years prior to the filing of Plaintiffs' complaint. *Id.* Thus, the basis for the district court's determination (". . . at least one of the discriminatory acts must have occurred within the limitations period." Rec., Vol. 4, p. 967) is consistent with this Court's precedent (*Pegram*) and the Supreme Court's continuing violation standard (*Morgan*) by focusing on when the alleged discriminatory act occurred. Rec., Vol. 4, pp. 967-968.

Plaintiffs assert that the focus of the discriminatory "act" should be when Plaintiffs encountered the alleged inaccessible facility. Appellants' Brief, pp. 20-22. This approach inappropriately confuses the continuing violation doctrine with the federal discovery rule. *See, e.g.,* this very same flawed reasoning in Plaintiffs' cited case, *Voices for Independence (VFI) v. Penn. Dep't of Transp.,* 2007 WL 2905887 (W.D. Pa. 2007) at *13. This Court, following *Havens*, has distinguished between the continuing effect of a past discriminatory act, and continuing discriminatory acts:

> One thing is clear. A plaintiff cannot use the continuing violation theory "to resurrect claims about discrimination [, or in this case due process,] concluded in the past, even though its effects persist." . . . **We must be careful not to confuse continuous violations with a single violation followed by continuing consequences;** only continuous unlawful acts can form the basis of a continuous violation.

*McGregor v. Louisiana State University Bd. of Sup'rs,* 3 F.3d 850, 867 (5th Cir. 1993) (citing *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir. 1983) (quoting *Delaware State College v. Ricks,* 449 U.S. 250 (1980)), and citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)).

Here, Plaintiffs' argument simply conflicts with prior precedent from both this Court and the Supreme Court, by urging application of the continuing violation theory to what Plaintiffs allege are the continuing consequences of the City's alleged discriminatory acts that are expressly alleged to have occurred more than three years prior to when Plaintiffs' complaint was filed, rather than to any acts that are alleged to have occurred within limitations. Plaintiffs' invitation to overrule this Court's precedent, and to disregard Supreme Court decisions, should be rejected. As in *Deck,* there may be a case in this Circuit that involves allegations of fact wherein a city's discriminatory acts undeniably occurred within the limitations period; however, this case is not such a case. *Berry,* 715 F.2d at 981 ("This [continuing violation] inquiry, of necessity, turns on the facts and context of each particular case.").

Plaintiffs' allegations focused on alleged inaccessibility of various facilities, using the technical standards as their guide. Title II of the ADA does not mandate that all facilities need to be accessible; the City is simply required to provide program access via reasonable accommodations. 28 C.F.R. § 35.150. There is not

one allegation of a specific alteration date where the City's duty to install a curb ramp or sidewalk was triggered (unlike the situation in all of the cases Plaintiffs cite). Instead, Plaintiffs assert that the City's alleged failures amount to a continuing, discriminatory policy or practice sufficient to satisfy the continuing violation inquiry. Appellants' Brief, pp. 21-22. Such an assertion was rejected by the Supreme Court in *Morgan,* where the Court observed that a party cannot avoid a time-bar on the basis of the continuing violation doctrine merely by labeling discrete acts as a "practice." *Morgan,* 536 U.S. at 111, 112 ("There is simply no indication that the term "practice" converts related discrete acts into a single unlawful practice for the purposes of timely filing. . . . Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

Plaintiffs' policy argument was also rejected in the second *Deck* opinion. *Deck v. City of Toledo,* 76 F.Supp.2d 816, 823 (N.D. Ohio 1999) ("*Deck II*"). In *Deck II* the court, *inter alia,* rejected the plaintiffs' contention that the City of Toledo's alleged failure to have policies and procedures designed to ensure compliance with the ADA constitutes a violation of the ADA for which the plaintiffs would be entitled to redress. *Id.* This Court should likewise reject Plaintiffs' similar argument.

In any event, none of the alleged discriminatory acts of the City are alleged by Plaintiffs to have occurred within the limitations period. Rec., Vol. 4, pp. 815-

**BRIEF OF APPELLEE** - **Page 28**

841. Key to Plaintiffs' argument is their contention that a city sidewalk or curb ramp is a "program," "service" or "activity" covered by the ADA. Appellants' Brief, pp. 22-23. Plaintiffs' argument is based upon *Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002), *cert. denied,* 539 U.S. 958 (2003), wherein the Ninth Circuit broadly found such municipal "facilities" to be a "program, service or activity" under the ADA. *Id.* This Court has not adopted *Barden's* flawed reasoning, and should not do so in this case. *See* Section F(2), below. The continuing violation doctrine does not save Plaintiffs' time-barred claims. The district court's judgment should be affirmed.

8.    Statute of Limitations Applicable to Claims for Injunctive Relief.

Plaintiffs assert that no statute of limitations is applicable to claims seeking injunctive relief, and that their lawsuit should not have been dismissed. Appellants' Brief, pp. 23-25. The basis for Plaintiffs' position is based upon the premise that "discriminatory act" means the time(s) when they encountered an alleged defective sidewalk, curb ramp or other facility. Appellants' Brief, pp. 23-24. The effect of Plaintiffs' claims would be to allow any disabled person to come to any municipality and allege a technical compliance issue as tantamount to a

**BRIEF OF APPELLEE - Page 29**

Title II violation to force the city to remediate its entire public right-of-way.  There is no Fifth Circuit case that so holds.  *See* discussion in subsections 3-7, above.[12]

Further, the cases Plaintiffs cite stand for the proposition that the equitable tolling doctrine applies to defeat a limitations defense under circumstances where a defendant causes a plaintiff to not pursue his rights.  *See, e.g., Holmberg v. Armbrecht,* 327 U.S. 396 (1946); Appellants' Brief, p. 25.  The equitable tolling doctrine has no applicability here.  Plaintiffs' Amended Complaint does not allege fraud or any other action by the City that caused Plaintiffs to be delayed in asserting their claims.  *See* Rec., Vol. 4, pp. 801-852.  Plaintiffs alleged that the City failed to comply with the ADA when constructing certain facilities more than three years prior to the filing of Plaintiffs' complaint.  Rec., Vol. 4, pp. 803-804; 815-841.  Since Plaintiffs alleged, at best, harm from events occurring outside limitations, without alleging fraud, their claims were barred.

9.    <u>Plaintiffs' Affirmative Defense Argument is Without Merit</u>.

Plaintiffs assert that it was the City's burden to establish when Plaintiffs' cause of action accrued, since a plea of limitations is an affirmative defense, so that the district court committed error in granting the City's dismissal motion.  *See* Appellants' Brief, pp. 26-27.  This argument is a red herring.

---

[12]  Curiously, Plaintiffs cite *Foster v. Morris,* 2006 WL 3712949 (3d Cir. 2006) to support their argument.  Appellants' Brief, p. 24 n.5.  This Court should ignore the *Foster* case, since the Third Circuit designated the case as "not precedential" under Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3.

<u>**BRIEF OF APPELLEE**</u> - **Page 30**

First, Plaintiffs did not make this argument to the district court, either in response to the City's dismissal motion or in their post-judgment motion to alter or amend judgment. *See* Rec., Vol. 4, p. 873; 989-995. Plaintiffs simply asserted that the statute of limitations issue is "an issue for summary judgment or trial, if at all, but it is not a basis upon which to dismiss the claim pursuant to Fed. R. Civ. P. 12.B (sic)." Rec., Vol. 4, p. 873. Second, the cases cited by Plaintiffs all were cases that did not review a dismissal motion under Rule 12, but instead reviewed district court rulings on summary judgment motions. *See U.S. v. Retirement Services Group,* 302 F.3d 425, 430 (5th Cir. 2002); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir. 1988); *Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983). In other words, in each of Plaintiffs' cited cases, the defendants had answered the complaint, discovery had occurred, and motions for summary judgment were asserted, with evidence. *Id.* In this case, the City has not answered, nor did it assert any evidence as part of its Rule 12 dismissal motion. Rec., Vol. 3, pp. 679-717.

Third, Plaintiffs' own allegations established that the discriminatory acts they asserted all occurred outside the two year limitations period. *See* Rec., Vol. 4, pp. 803-804; 815-841. Finally, Plaintiffs' argument suggests that a statute of limitations defense is somehow not appropriate in the context of a Rule 12 motion to dismiss; that simply is not the law in this Circuit. *See Jones,* 339 F.3d at 366

("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted). *See also Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983) (statute of limitations may serve as a proper ground for dismissal under Rule 12(b)(6)) (a case that is also cited in Appellants' Brief, at p. 27). As a result, this argument by Plaintiffs should be disregarded.

> 10.    The District Court's Footnote 1 Observation Was Not the Basis of Its Decision.

Plaintiff Frame expresses surprise at the district court's comment in footnote 1 of its Order Granting Third Renewed Motion to Dismiss (Rec., Vol. 4, p. 961). Appellants' Brief, pp. 27-29. It is clear from the district court's order that its observations expressed in footnote 1 were simply that: observations. *See* Rec., Vol. 4, pp. 961-69. While it is sometimes true that a court will dismiss a case for lack of standing where the named plaintiff is a serial ADA litigant,[13] this issue formed no basis for the district court's ruling. As such, Plaintiffs' unhappiness with footnote 1 is not relevant to this Court's decision.[14]

---

[13]    *See Rodriguez v. Investco, LLC,* 305 F.Supp.2d 1278, 1285 (M.D. Fla. 2004) (plaintiff involved in approximately 200 ADA cases); and *Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860, 861 n.2, 865 (C.D. Cal. 2004) (plaintiff involved in more than 300 ADA cases).

[14]    Plaintiffs have not urged any issue in this appeal complaining of the district court's ruling on Plaintiffs' motion to alter or amend. *See, generally,* Appellants' Brief.

**BRIEF OF APPELLEE - Page 32**

E.     Plaintiffs Lack Legal Standing to Bring This Action.

In this *de novo* appeal, the City again asserts all bases urged in the district court for this Court's affirmance of the dismissal of Plaintiffs' claims, *i.e.,* that Plaintiffs lack standing to bring this action, so that Plaintiffs' allegations fail to state a plausible claim of discrimination.[15]    Plaintiffs' initial brief did not substantively address these issues (even where the district court's decision did address some of them), instead only arguing statute of limitations issues. *See, generally,* Appellants' Brief.    Plaintiffs, therefore, have abandoned any claim on these issues because they have presented no argument on them to this Court within the meaning of Federal Rule of Appellate Procedure 28(a)(9)(A). *See United States v. Martinez,* 263 F.3d 436, 438 (5th Cir. 2001). Further, Plaintiffs' lack of briefing on these matters means that they have waived any claim for reversal on these issues. *See Webb v. Investacorp., Inc.,* 89 F.3d 252, 257 n. 2 (5th Cir. 1996) (holding that an appellant waives all issues not raised and argued in his initial brief on appeal); *Villanueva v. CNA Ins. Co.,* 868 F.2d 684, 687 n. 5 (5th Cir. 1989) (issues not briefed are waived); *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994) (same).  For the sake of argument, the City will discuss all of its reasons that were presented in the motion to dismiss.

---

[15]  The district court referenced the standing requirement in its order.  Rec., Vol. 4, pp. 963-64.

**BRIEF OF APPELLEE - Page 33**

    1.    <u>Legal Standards</u>.

Article III, Section 2 of the United States Constitution confines the jurisdiction of federal courts to the resolution of actual "cases" and "controversies." *Raines v. Byrd,* 521 U.S. 811, 818 (1997). The case or controversy limitation of Article III requires that a party invoking federal jurisdiction has legal standing – that is, a personal stake in the outcome. *Raines,* 521 U.S. at 818. Plaintiffs must establish they had legal standing at the time the suit was filed with the Court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569 n. 4 (1992).

To satisfy this requirement, a plaintiff must show three elements: (1) there must be an injury in fact, *i.e.*, a harm or invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not merely conjectural or hypothetical; (2) there must be a causal connection between the alleged injury and the defendant's conduct; and (3) it must be likely, as opposed to merely speculative, that the plaintiff's alleged injury will be redressed by a favorable judicial decision. *Raines,* 521 U.S. at 819. *See also Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975)); *Lujan,* 504 U.S. at 560-61. A plaintiff, moreover, must assert his or her own personal legal rights and interests and cannot rest on the legal rights and interests of third parties. *Warth,* 422 U.S. at 499. A review of a

<u>**BRIEF OF APPELLEE**</u> **- Page 34**

plaintiff's standing to bring suit in a discrimination case under the ADA is appropriate and necessary. *See, e.g., Resnick v. Magical Cruise Co., Ltd*., 148 F.Supp. 2d 1298, 1301-03 (M.D. Fla. 2001).

    2.    <u>No Standing to Sue on Behalf of Disabled Persons in General</u>.

This is not a class action. The scope of Plaintiffs' case includes the entire public rights-of-way of the City. Rec., Vol. 4, pp. 807-842. Plaintiffs' Amended Complaint alleged both specific harm (as to Plaintiffs) and vague and conclusory allegations related to disabled persons in general. *Id.* To the extent Plaintiffs did not allege that they personally suffered an injury in fact, then such general claims should have been dismissed because Plaintiffs failed to allege harm under the ADA and the Rehabilitation Act that is concrete and particularized, actual or imminent, to them. *Raines,* 521 U.S. at 819.

Plaintiffs' general allegations of difficulty and problems with City streets or other facilities, where Plaintiffs did not specify how they were excluded from participation or denied the benefits of a service, program or activity, or any element necessary to show a personal case or controversy, also violated this first requirement of standing. *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993). General allegations of disparate impact on disabled persons in general, without allegations of specific acts of intentional discrimination against Plaintiffs, are insufficient. *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th

Cir. 1997). Plaintiffs' allegations that did not specify that the curb ramps, sidewalks and other public facilities they alleged were defective were actually owned, operated, maintained or controlled by the City, were also insufficient to state a claim against the City.

This failure was particularly noteworthy where Plaintiffs asserted that they sought declaratory and injunctive relief. Appellants' Brief, pp. 23-25. A plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future, when seeking declaratory or injunctive relief. *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983); *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003); *Shotz v. Cates,* 256 F.3d 1077, 1081-82 (11th Cir. 2001)(finding no standing in ADA case). There must be a substantial and continuing controversy shown by specific facts that a plaintiff alleges. *Id.* The continuing controversy may not be conjectural or contingent; it must be real and definite and not a speculative threat of future injury. *Id.* Plaintiffs did not allege denial to any specific City program, service or activity; they only alleged facility inaccessibility as to some sidewalks, curb ramps, parking spaces, etc. Rec., Vol. 4, pp. 814-852.

3.    No Standing to Assert Rehabilitation Act Claim.

Plaintiffs generally alleged that Section 504 of the Rehabilitation Act was violated simply because they believed that the City received federal financial assistance. Rec., Vol. 4, pp. 842, 848. To state a Section 504 claim, a plaintiff

**BRIEF OF APPELLEE - Page 36**

must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance. *Brown v. Sibley,* 650 F.2d 760, 767-71 (5th Cir. Unit A 1981). A plaintiff may not predicate a § 504 claim against a defendant on the mere fact that the defendant itself obtains federal money. *See Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 427 (5th Cir. 1997); and *Brown,* 650 F.2d at 767 ("The State of Mississippi, for example, receives 'federal financial assistance,' in the generic sense of those words, but no one would contend that section 504 therefore reaches all proprietary and governmental activities of the State of Mississippi.") Since Plaintiffs did not allege that the City received specific federal financial assistance for the facilities by which they were directly benefited, Plaintiffs failed to state a claim under Section 504. *See Lightbourn,* 118 F.3d at 427.

        4.      <u>No Standing to Present Claims Regarding Transition Plan, Self-Evaluation or Other Regulations</u>.

The district court specifically addressed Plaintiffs' transition plan claims, and found them to warrant dismissal. Rec., Vol. 4, p. 968. Plaintiffs did not address this issue. *See, generally,* Appellants' Brief. The district court's determination should be affirmed.

Plaintiffs lack standing to challenge the City's transition plan, to force the City to undergo additional self-evaluation, or to force the City to comply with other ADA regulations. Rec., Vol. 4, pp. 841-42; 844; 846, 849, 850. Regarding

<u>**BRIEF OF APPELLEE**</u> **- Page 37**

Plaintiffs' transition plan allegations, the ADA required that, by August 26, 1992, a public entity must develop a transition plan: 1) identifying physical obstacles limiting accessibility to programs in facilities; 2) providing curb ramps for pedestrian walks across curbs, giving priority to walkways serving entities such as government offices and facilities; 3) describing the methods used to make the facilities accessible; 4) specifying the schedule for taking the steps necessary to achieve compliance; and 5) indicating the official responsible for implementation of the plan. 28 C.F.R. § 35.150(d). Plaintiffs also requested the district court to order the City to undertake a self-evaluation of **all** of its streets, sidewalks, curbs, public parking, public restrooms, entrances to government buildings, and City policies and practices regarding all of these items, under the same regulations. Rec., Vol. 4, pp. 841-850; and 28 C.F.R. § 35.105(a). Besides the unreasonable and illegally broad scope of such request (Plaintiffs have not brought suit on behalf of all disabled persons in general), Plaintiffs do not have standing to bring a lawsuit under these regulations.

"There is no private right of action to enforce the self-evaluation and transition plan requirements set forth in the regulations accompanying Title II." *Ability Center of Greater Toledo v. City of Sandusky*, 133 F.Supp.2d 589, 593 (N.D.Ohio 2001), *aff'd*, 385 F.3d 901 (6th Cir. 2004). *See also Iverson v. City of Boston,* 452 F.3d 94, 101-02 (1st Cir. 2006); *Deck v. City of Toledo*, 76 F.Supp.2d

816, 823 (N.D. Ohio 1999); *Ross v. Gatlinburg*, 327 F.Supp. 2d 834 (E.D. Tenn 2003); and *Matthews v. Jefferson,* 29 F.Supp. 2d 525, 539-40 (W.D. Ark. 1998). The *Iverson* case is instructive, not only on the availability of a private right of action to enforce transition plan and self-evaluation regulations, but also to enforce **any** regulation that "imposes an obligation beyond what the [ADA] statute mandates." *Iverson*, 452 F.3d at 101. Further:

> . . . a regulation that simply effectuates an express mandate contained in the organic statute may nonetheless be enforceable through the private right of action available under the statute itself (citation omitted). In contrast, a regulation that announces an obligation or a prohibition not imposed by the organic statute may not be enforced under the aegis of a statutory right of action (citation omitted). So viewed, the dispositive question is whether the regulation either forbids conduct that the statute allows or imposes an obligation beyond what the statute mandates. If that question produces an affirmative answer, the regulation is not privately enforceable (citation omitted).

*Iverson*, 452 F.3d at 100-01 (citing *Alexander v. Sandoval*, 532 U.S. 275, 284-85 (2001)). *See also Disabled in Action in Pennsylvania*, 2006 WL 3392733, at \*\*18-29. Further, applying the rationale of the *Ability Center* case, *Iverson* states, " ' . . . there is no indication that a public entity's failure to develop a transition plan [seriously] harms disabled individuals or that a public entity cannot make its services, programs or activities accessible to qualified disabled persons without first establishing a transition plan." *Iverson*, 452 F.3d at 101 (citing *Ability Ctr*., 385 F.3d at 914). As a result, *Iverson* found that "the transition plan regulation

**BRIEF OF APPELLEE - Page 39**

imposes an obligation beyond the statutory mandate and, therefore, is not privately enforceable." *Id*.[16]  The district court agreed with this rationale.  Rec., Vol. 4, p. 968.  As a result, Plaintiffs' Amended Complaint failed to state a claim for relief for the City's alleged violation of the transition plan regulations, self-evaluation regulations, or technical regulations such as slope requirements.[17]  *Iverson*, 452 F.3d 101-02.[18]

F.    Plaintiffs Failed to Establish Discrimination.

As mentioned in the previous section, this ground was asserted in the City's dismissal motion.  Rec., Vol. 3, pp. 607-608; 629-639.  Plaintiffs did not address this issue in their initial brief, so that they have waived their position on it. *Martinez,* 263 F.3d at 438; *Webb,* 89 F.3d 257 n. 2; *Villanueva,* 868 F.2d at 687 n. 5; *Cinel,* 15 F.3d at 1345.  The district court's dismissal should be affirmed because Plaintiffs failed to establish discrimination in their pleadings.

---

[16]  Additionally, claims concerning self-evaluation and transition plan failures are barred by application of the two-year statute of limitations.  *See, e.g., Schonfeld v. City of Carlsbad*, 978 F.Supp. 1329, 1333 (S.D. Calif. 1997).  Claims regarding administrative requirements from the early 1990s, even if they created a private right of action, fall outside the applicable two-year statute of limitations.  *See* Section D, above.

[17]  Again, there are no regulations applicable to the public rights-of-way.  *See* note 6, above.

[18]  *See also Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002)(a plaintiff seeking to establish an implied private right of action under a federal statute bears the "heavy burden" of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute); and *Resident Council of Allen Parkway Vill. v. United States Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993)(same).

**BRIEF OF APPELLEE - Page 40**

1.    Plaintiffs Failed to Allege Facts Which Show Sufficient Alteration to Trigger ADA Scrutiny.

Plaintiffs' Amended Complaint generally alleged that the City discriminated against them because the City failed to install curb ramps, construct sidewalks, construct parking spaces, etc., when resurfacing, repairing, altering, or constructing city streets, roads, and sidewalks, and failed to construct such facilities properly, since the effective date of the ADA (but more that three years prior to when their suit was filed). *See, generally,* Rec., Vol. 4, pp. 801-852.  A city is not required to make each existing facility accessible, but instead the regulations specify that if a street is significantly altered, a curb ramp must be built where pedestrian walkways exist.  28 C.F.R. § 35.150.[19]

With respect to new construction and alterations, the regulations provide that the accessibility requirements under Title II are triggered whenever an alteration "affects or could affect the *usability* of a facility." 28 C.F.R. § 35.151(b) (emphasis

---

[19] (a) General.  A public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.  This paragraph does not –
   (1)    Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;
   (2)    Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or
   (3)    Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. . . .
(b)    Methods. . . . A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section.

28 C.F.R. § 35.150 (a)(1)-(3), (b).

**BRIEF OF APPELLEE - Page 41**

added). The concept of "usability" should "be read broadly to include any change that affects the usability of the facility, not simply changes that relate directly to access by individuals with disabilities." 28 C.F.R. Pt. 36, App. B. In *Kinney v. Yerusalim,* the Third Circuit held that if the depth of the resurfacing overlay is at least 38 mm (1.5) in.), then the usability of the street is affected. *Kinney v. Yerusalim,* 9 F.3d 1067, 1074 (3rd Cir. 1993) (". . . 'resurfacing' involves more than minor repairs or maintenance. At a minimum, it requires the laying of a new asphalt bed spanning the length and width of a city block.").

Plaintiffs vaguely alleged that some alteration or new construction occurred that would have triggered the City's duty to install sidewalks and curb ramps. Even after four pleading amendments, Plaintiffs failed to describe the scope or timing of the particular alteration that triggered the City's duty to install curb ramps at any specific location. Additionally, Plaintiffs failed to specify what City program, service or activity to which they were denied access as a result of a missing or defective sidewalk, curb ramp or parking space facility.

The regulations accompanying the ADA provide that for existing facilities (those that were constructed prior to the effective date of the ADA), a public entity is to operate "each service, program, or activity so that the service, program, or activity, **when viewed in its entirety**, is readily accessible to and usable by individuals with disabilities." *See* 28 C.F.R. § 35.150 (a) (emphasis added).

**BRIEF OF APPELLEE - Page 42**

When structural changes in facilities are undertaken to comply with the obligations established under the regulations, such changes must be made within three years from the effective date of the ADA (January 26, 1992) or, specifically, January 26, 1995. *See* 28 C.F.R § 35.150 (c).  The term facility means "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, **walks, passageways, parking lots**, or other real or personal property, including the site where the building, property, structure, or equipment is located."  28 C.F.R. § 35.104 (emphasis added).

Plaintiffs' Amended Complaint was devoid of specific factual allegations which showed that the City had in any way discriminated against Plaintiffs by violating the ADA, its accompanying regulations, or the Rehabilitation Act, or did so in violation of 28 C.F.R. 35.150, by making the entire "program" of sidewalks and curb ramps inaccessible (if one should even read Plaintiffs' allegations so broadly).  First, Plaintiffs did not allege facts which showed that the City failed to make existing sidewalks, curb ramps, handicap parking spaces and other facilities accessible to or usable by individuals with disabilities within the time period for compliance (*i.e.,* 1992-1995).  That Plaintiffs may not be able to *easily maneuver* their motorized wheelchairs on a particular sidewalk or curb ramp does not establish that a **facility** was inaccessible or unusable to individuals with disabilities as existed, or even as constructed, after that time.  Plaintiffs did not indicate

**BRIEF OF APPELLEE - Page 43**

whether the recited slopes they alleged differ from the natural topography in the area, or whether there was a statutory obligation to alter the natural topography of any street or sidewalk in order to comply with accessibility standards. Neither the ADA nor the Rehabilitation Act imposes an obligation upon a public entity to make each of its *existing facilities* accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150. There are no existing regulations regarding sidewalks in the public rights-of-way. *See* Appendix A to 28 C.F.R. part 36, §14 (reserved).

Plaintiffs further did not allege that Arlington Memorial Hospital, Bob Duncan Community Center, Cliff Nelson Recreation Center or the Sub Courthouse were facilities owned by the City, or that they were facilities over which the City had control. In any event, Plaintiffs' vague allegation that the City installed an "*insufficient number*" of handicap parking spaces at these locations was insufficient to establish a violation under the ADA or Rehabilitation Act. More important, Plaintiffs nowhere alleged that these "defects" in existing facilities prevented Plaintiffs from having access to the facility or, to put it another way, that these deficiencies amounted to intentional discrimination by the City. *See, e.g.,* 28 C.F.R. 35.150(b)(1) ("A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section."). "Acts and omissions which have a disparate impact on disabled

persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular." *Tyler*, 118 F.3d at 1403. Plaintiffs' allegations did not state a plausible claim.

    2.    <u>Sidewalks in the Public Rights-of-Way are Not a Program, Activity or Service Under the ADA, and There are No Existing Facility Accessibility Standards</u>.

Plaintiffs' Amended Complaint asserted that the City was under a continuous obligation to maintain the public rights-of-way to some unidentified accessibility standard, whether located on City property or not, in perpetuity. Additionally, Plaintiffs alleged a duty for the City to add sidewalks to all City streets located within the City of Arlington. Neither the ADA nor the Rehabilitation Act impose this onerous burden on cities. *See New Jersey Protection and Advocacy, Inc. v. Township of Riverside,* 2006 WL 2226332 (D.N.J. 2006); *Geiger,* 2006 WL 1888877, at *1; and *Alford v. City of Cannon Beach,* 2000 WL 33200554 (D. Ore.). Plaintiffs' allegations can only be read as an improper attempt to have the courts judicially define the City's curb ramp, sidewalk and parking space facilities as a "program, activity or service" in order to come under the ADA's accessibility provisions. Plaintiffs' case, therefore, is based upon an improper premise as a matter of law; "facilities" and "programs" are not synonymous under the ADA. *See, e.g.,* 28 C.F.R. § 35.104.

**<u>BRIEF OF APPELLEE</u> - Page 45**

More important, sidewalks, curb ramps and parking spaces are not a "program, activity or service" of a public entity within the meaning of § 12132 of the ADA. *See New Jersey Protection,* 2006 WL 2226332 at *3; *Geiger,* 2006 WL 1888877 at *3. Both the *New Jersey Protection* and *Geiger* decisions expressly rejected the reasoning presented in *Barden,* 292 F.3d at 1076 (the case upon which Plaintiffs rely, that holds that sidewalks are a "program, activity or service" of a city). The Ninth Circuit's approach is to broadly consider "anything a public entity does" and any "normal function of government" as matters that are covered by Title II of the ADA. *Barden,* 292 F.3d at 1076. This expansive view conflicts with previous decisions of the Fourth, Fifth and Ninth Circuits.

Certainly it is a "normal function" of government to employ people and make arrests, yet these courts have held that those functions are not covered by Title II because they are not "programs," "services," or "activities." *Rosen v. Montgomery County,* 121 F.3d 154 (5th Cir. 1997)(arrests); *Hainze v. Richards,* 207 F.3d 795 (5th Cir.), *cert. denied,* 531 U.S. 959 (2000)(use of force during arrest); *Zimmerman v. Oregon DOJ,* 170 F.3d 1169, 1174 (9th Cir. 1999)(employment). Moreover, the reasoning in the *New Jersey Protection* opinion is instructive:

> In the context of maintaining sidewalks, however, the issue is not the exclusion of individuals from the activity of maintaining sidewalks, but rather the failure to maintain the sidewalks in a certain way. Moreover, the fact that the entity provides the service of maintaining a

**BRIEF OF APPELLEE - Page 46**

city facility does not itself necessitate the accessibility of that facility; such a reading would render superfluous the exception provided in 28 C.F.R. § 35.150(a)(1) that relieves entities of any obligation to make every facility accessible. Accordingly, this Court deigns to find that sidewalks are, in and of themselves, programs, services, or activities for the purpose of the ADA's implementing regulations.

*New Jersey Protection,* 2006 WL 2226332, at *3 (footnote omitted).

Plaintiffs would have this Court rule, as a matter of first impression in this Circuit, that sidewalks, curb ramps, parking spaces and other such facilities are instead a program, activity or service deserving broad protection under Title II of the ADA. *See, generally*, Appellants' Brief. The better reasoning is that such facilities are just that: facilities. *New Jersey Protection*, 2006 WL 2226332, at *3; and *Geiger*, 2006 WL 1888877, at *3. This Court should likewise reject Plaintiffs' invitation to adopt the flawed reasoning presented in the *Barden* case.

Even if this Court were to hold similarly as in *Barden*, Plaintiffs' Amended Complaint should have been dismissed because Plaintiffs failed to allege that the City's **entire** "program, activity and service" of sidewalk, curb ramps, parking spaces, etc., were inaccessible. Indeed, Plaintiffs alleged that **only parts** of these "programs, activities and services" of the City were inaccessible, which was insufficient to state a claim under either Title II of the ADA, or Part 35 of the Code of Federal Regulations, or the Rehabilitation Act. To reiterate, 28 C.F.R. § 35.150 requires a public entity to "operate each service, program, or activity so that the service, program, or activity, **when viewed in its entirety**, is readily accessible to

**BRIEF OF APPELLEE** - Page 47

and usable by individuals with disabilities."   28 C.F.R. § 35.150(a)(emphasis added).  Plaintiffs did not plead that **all** sidewalks, curb ramps, parking spaces, etc. were inaccessible or were not usable by them.   Rec., Vol. 4, pp. 801-852. Plaintiffs' claims were appropriately dismissed.

Plaintiffs alleged that under 28 C.F.R. § 35.150 (d)(2), the City was required to install sidewalks that met some accessibility standard at all streets and roadways under the City's control and responsibility, including, but not limited to, city-owned streets and county and/or state roadways within the City over which it has maintenance responsibilities.  Rec., Vol. 4, pp. 801-852.  The regulation upon which Plaintiffs relied, however, does not require construction of new sidewalks:

> If a public entity has responsibility or authority over streets, roads, or walkways, its transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

28 C.F.R. § 35.150(d)(2).  Interpretations of this regulation only require that the City develop a transition plan that includes a schedule for installing curb ramps at existing pedestrian walks, giving priority to government facilities, with the goal of providing some means of accessibility to programs.[20]  There is no requirement that governments employ any and all means to make services accessible to persons

---

[20]   As already discussed in Section E(4), above, Plaintiffs cannot bring suit over alleged transition plan failures.

**BRIEF OF APPELLEE** - Page 48

with disabilities, as Plaintiffs alleged. *See Tennessee v. Lane,* 541 U.S. 509, 531-32 (2004)("But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs.").

The legislative history of the ADA helps is illustrative. In 1998, the Justice Department responded to an inquiry from a Member of Congress regarding whether the ADA requires the removal of snow and maintenance of sidewalks on a city street. According to the response provided by Bill Lann Lee, the Acting Assistant Attorney General for the Civil Rights Division:

> The focus of the [ADA's accessibility] requirement is access to services, programs, and activities, *as opposed to physical structures.* Therefore, there is no general requirement that compels a public entity to ensure that all sidewalks are free of snow.

*See* www.usdoj.gov/crt/foia/cltr191.txt. Likewise here, there is no general requirement that compels the City to ensure that all of its sidewalks, curb ramps, parking spaces, and other facilities are accessible to all disabled persons.

Further, there is simply no general requirement that the City construct, or even maintain, new sidewalks, either in the ADA, the Rehabilitation Act, or other regulations. *See, e.g., Slager v. Duncan,* 162 F.3d 1155 (4th Cir. 1998); and *Alford v. City of Cannon Beach,* 2000 WL 33200554 (D. Ore. 2000) at * 23-24. Even referencing the Technical Assistance Manual to determine the requirements of the

**BRIEF OF APPELLEE - Page 49**

ADA, there are no requirements to construct new curb ramps or sidewalks in general. The purpose of the ADA is to eliminate discrimination against persons with disabilities, and "to place those with disabilities on equal footing, not to give them an unfair advantage." *In re Rubenstein,* 637 A.2d 1131 (Del. 1994). Plaintiffs sought remedies that exceed the requirements for accessibility.

Under the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), for example, alterations to primary function areas (where major activities take place) trigger a "path of travel" requirement, that is, a requirement to make the path of travel from the entrance to the altered area -- and telephones, restrooms, and drinking fountains serving the altered area -- accessible (Appendix A to 28 C.F.R. part 36, §4.1.6(2)). The ADAAG contains no corresponding technical requirements for elements of the public rights-of-way such as sidewalks. *See* Appendix A to 28 C.F.R. part 36, § 14 (reserved).

> Currently, the board's guidelines focus mainly on facilities on sites. While they address certain features common to public sidewalks, such as curb ramps, further guidance is necessary to address conditions unique to public rights-of-way. Various constraints posed by space limitations at sidewalks, roadway design practices, slope, and terrain raise valid questions on how and to what extent access can be achieved.

*Final Report Public Rights-of Way Access Advisory Committee, dated January 2001. See* www.access-board.gov/prowac/commrept/index.htm. Since there is no general obligation to construct or maintain sidewalks, Plaintiffs' numerous

complaints about the condition of sidewalks in the City's public rights-of-way failed to state a claim. *See, e.g., Grady v. City of Fort Worth, Texas*, 2002 WL 63010 (N.D. Tex. 2002)(requiring strict compliance with burden of proof requirement to establish exclusion from participating in program, service or activity, and intentional discrimination requirement, in claims brought under ADA by deaf plaintiff); and *Resnick*, 148 F.Supp. 2d at 1303-06 (court will not impose irrelevant or inapplicable ADA regulations).

3. <u>Alternatively, an Interpretation that the ADA or the Rehabilitation Act Requires Construction, Maintenance and Retrofitting Sidewalks is Unconstitutional</u>.

Plaintiffs' view of the City's obligations relating to sidewalks, under both the ADA and the Rehabilitation Act, is an incorrect interpretation of those statutes. Should this Court, however, agree with Plaintiffs' contention that the City must build and continuously maintain all of its sidewalks to a condition accessible to the disabled, then the laws at issue here are unconstitutional. The ADA and the Rehabilitation Act provide the same rights and remedies to individuals claiming disability discrimination. *See Hainze*, 207 F.3d at 799. These statutes, as they relate to governmental entities, were passed by Congress under § 5 of the Fourteenth Amendment to enforce the prohibition on irrational disability discrimination and to "enforce a variety of other basic constitutional guarantees."

<u>**BRIEF OF APPELLEE**</u> **- Page 51**

*Tennessee v. Lane*, 541 U.S. at 522; and *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 442 (1985).

The authority of Congress to pass such remedial legislation, however, is not unlimited. *See, e.g., City of Boerne v. Flores*, 521 U.S. 507 (1997). In *City of Boerne*, the Supreme Court held that the Religious Freedom Restoration Act of 1993 ("RFRA") was unconstitutional because it exceeded Congress' enforcement power under § 5 of the Fourteenth Amendment. *City of Boerne,* 521 U.S. at 536. It is a long-settled principle that courts, not Congress, define the substance of constitutional guarantees. *City of Boerne,* 521 U.S. at 519-524. Legislation that reaches beyond the scope of actual constitutional guarantees must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne,* 521 U.S. at 520.

Here, Plaintiffs can find no support in the text of either the ADA or the Rehabilitation Act for the very expansive obligations they would impose on the City with respect to curb ramps, sidewalks, parking lots, and other City facilities. Plaintiffs' lawsuit essentially contended that the entire City of Arlington should have wide, level, and unobstructed sidewalks, curb ramps and parking lots. This mandate has nothing to do with discrimination, but rather creates "an affirmative accommodation obligation on the part of public entities that far exceeds the

**BRIEF OF APPELLEE - Page 52**

constitutional boundaries." *Reickenbacker v. Foster*, 274 F.3d 974, 983 (5th Cir. 2001).

Moreover, in *Tennessee v. Lane*, the Supreme Court held implicitly that the onerous provisions of Title II of the ADA were valid **only when** a deprivation of a fundamental right would result from a lack of accommodation (in that case, a right of access to judicial services). *Tennessee v. Lane,* 541 U.S. at 533-34.  The present case involves no fundamental right.  Plaintiffs claimed a general entitlement to travel anywhere in Arlington on sidewalks and curb ramps that meet their ideal standards for accessibility.[21]  While use of public sidewalks and curb ramps is beneficial to all residents, there is no authority establishing this benefit as a fundamental right.  Plaintiffs' assertion that the ADA and Rehabilitation Act mandate creation and maintenance of sidewalks and curb ramps to their standards was beyond the dimension of any identifiable constitutional right.  Therefore, the applicable statutes would be unconstitutional if applied in the manner Plaintiffs contend is appropriate.

---

[21]  The City, of course, does acknowledge its obligation to install curb ramps when building or altering streets.  28 C.F.R. § 35.150.  This regulation does not require sidewalks to be constructed or maintained in all areas, as discussed above.

**BRIEF OF APPELLEE - Page 53**

4.      There is No ADA or Rehabilitation Act Claim for Paratransit Releases.

Plaintiffs alleged that the City operates a "paratransit service that requires occupants to execute a liability waiver absolving Arlington of any liability, even for the negligent acts of Arlington employees." Rec., Vol. 4, p. 842. Plaintiffs alleged that the requirement to sign a waiver was unreasonable, and created an unidentified additional "risk" to Plaintiffs "safety" to sign such a release. *Id.* To the extent Plaintiffs contended that such allegations, even if true, constituted a violation of the ADA and the Rehabilitation Act, Plaintiffs' contentions were without merit.

Plaintiffs failed to allege any facts which showed that they were discriminated against because of their disability, or that they were denied access to the paratransit service. Rec., Vol. 4, p. 842. Indeed, Plaintiffs admitted that they had access to the paratransit service; Plaintiffs simply focused on the City's paperwork in providing that service. *Id.* Plaintiffs did not allege that other persons were not discriminated against by the City's allowing others to not sign waivers, or that Plaintiffs were discriminated against by signing a waiver form that others were not required to sign. *Id. See, e.g., Grady,* 2002 WL 63010 at *3.

Additionally, there is nothing in the ADA or Rehabilitation Act that preempts a public entity from requiring legally enforceable waivers, under state law, when providing accessibility services. Plaintiffs also did not allege any facts

**BRIEF OF APPELLEE - Page 54**

concerning whether the City's paratransit service is even covered by the regulations that implement the ADA and Rehabilitation Act. As a matter of law, Plaintiffs' focus on the City's paratransit services did not state a plausible claim. *See, e.g., Melton v. DART,* 391 F.3d 669, 674-76 (5th Cir. 2004)(no ADA or Rehabilitation Act application to non-fixed route paratransit services sufficient to trigger reasonable accommodation regulations). *See also Lightbourn,* 118 F.3d at 427. Therefore, this claim was correctly dismissed.

## VII.

## CONCLUSION

Congress did not create a private right of enforcement regarding individual technical violations of the ADA or Rehabilitation Act regulations without the specific allegation of a denial of access to a program, service or activity. The ADA provides for an administrative remedy for technical violations with the Justice Department, rather than burdening the federal court system with litigation over sidewalk slopes or cracks, parking lot stripes, and other specific administrative details related to ADA and Rehabilitation Act standards. The City of Arlington is committed to following and complying with the ADA, the Rehabilitation Act, and its implementing regulations. It has followed those important laws since Congress passed them so many years ago. Plaintiffs did not allege any specific date of construction that triggered the City's duty under the ADA, or that the City did not

comply with that duty when triggered. Plaintiffs' Amended Complaint sought to impose substantially greater burdens upon the City than are required by law in a manner that would have been unreasonable and created potentially unlimited liability. For the reasons stated herein, the district court's judgment that Plaintiffs failed to state a plausible claim should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee City of Arlington, Texas, prays that this Court affirm the district court's dismissal of Plaintiffs' claims against it, and the City prays for such other and further relief to which it is justly entitled.

**BRIEF OF APPELLEE - Page 56**

Respectfully submitted,

By: _____

    Edwin P. Voss, Jr.
    State Bar No. 20620300
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

    Denise V. Wilkerson
    Assistant City Attorney
    State Bar No. 20534100
City of Arlington
P.O. Box 90231
Arlington, Texas 76004-3231
817-459-6878 (Telephone)
817-459-6897 (Telecopier)

ATTORNEYS FOR APPELLEE
CITY OF ARLINGTON, TEXAS

**BRIEF OF APPELLEE - Page 57**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two paper copies and one electronic version of this document was served by certified mail, return receipt requested, upon Mr. Miguel M. de la O, de la O, Marko, Magolnick & Leyton, 3001 S.W. 3rd Avenue, Miami, Florida 33129, lead appellate counsel for Plaintiffs-Appellants, and upon Mr. John M. Nevins, The Nevins Law Firm, 7600 San Jacinto Place, Suite 200, Plano, Texas 75024, Plaintiffs-Appellants' local counsel, on the _____ day of November, 2008.

By: _____
　　　Edwin P. Voss, Jr.

**BRIEF OF APPELLEE - Page 58**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains _____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further hereby certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Word 2003 in 14 point font size (12 point font size for footnotes) in Times New Roman type style.

By: _____
    Edwin P. Voss, Jr.

Attorney for Appellee City of Arlington

Dated: _____

<u>BRIEF OF APPELLEE</u> - Page 59