# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CASE NO. 08-10630

Lower Case No. 4:05-cv-470

RICHARD FRAME, WENDELL DECKER,
SCOTT UPDIKE, J.N., a minor, by his next friend
and mother, GABRIELA CASTRO, MARK HAMMAN
and JOEY SALAS,

Appellants,

vs.

THE CITY OF ARLINGTON,
a Municipal Corporation,

Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

## REPLY BRIEF OF APPELLANTS

---

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Appellants
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555

**Miguel M. de la O**
Florida Bar No. 0822700
delao@dmmllaw.com

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................ ii

ARGUMENT

    I.    THE FOURTH AMENDED COMPLAINT SATISFIED THE
        STANDING SET FORTH IN *BELL ATLANTIC*. ...................................1

    II.   ARLINGTON MISSTATED THE LAW WHEN IT CLAIMS
        PLAINTIFFS MUST SHOW INTENTIONAL
        DISCRIMINATION AND THAT INACCESSIBLE
        SIDEWALKS DO NOT CONSTITUTE A VIOLATION OF
        TITLE II ................................................................................................2

    III.  LIKE THE TRIAL COURT, APPELLEES MISAPPLY THE
        STATUTE OF LIMITATIONS ..............................................................6

    IV.  ARLINGTON FAILS TO REFUTE THE APPLICATION OF
        THE CONTINUING VIOLATION THEORY....................................12

    V.   ARLINGTON RAISES ALMOST NO DEFENSE TO THE
        INAPPLICABILITY OF A LIMITATIONS PERIOD TO
        INJUNCTIVE RELIEF. .......................................................................12

    VI.  PLAINTIFFS HAVE STANDING TO BRING THIS ACTION
        AND PROPERLY PLED ACTIONABLE ACTS OF
        DISCRIMINATION...............................................................................13

CONCLUSION ..........................................................................................14

CERTIFICATE OF COMPLIANCE..........................................................14

CERTIFICATE OF SERVICE ...................................................................15

**de la O ▪ Marko ▪ Magolnick ▪ Leyton**

TELEPHONE 305/285-2000    3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129    FACSIMILE 305/285-5555

# TABLE OF CITATIONS

## CASES                                                                          PAGES

*Association for Disabled Americans v. City of Orlando*,
153 F.Supp.2d 1310 (M.D. Fla. 2001).........................................................................3

*Barden v. City of Sacramento,*
292 F.3d 1073 (9th Cir. 2002), *cert denied*, 539 U.S. 958 (2003) .................3,4,6,11

*Bell Atlantic Corp. v. Twombly*,
--- U.S. ---, 127 S.Ct. 1955, 1974 167 L.Ed.2d 929 (20070)....................................1

*Carter v. Orleans Parish Pub. Sch.*,
725 F.2d 261 (5th Cir. 1984)......................................................................................2

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 844 (1984)...........................................................................................6

*Deck v. City of Toledo*,
56 F.Supp. 2d 886 (N.D. Ohio 1999)..............................................................3,6,7,8,9

*Elsensohn v. St. Tammany Parish Sheriff's Office*,
530 F.3d 268 (5th Cir. 2008)......................................................................................1

*Geiger v. City of Upper Arlington*,
2006 WL 1888877 at *1 (S.D. Ohio 2006) (slip opinion)....................................9,10

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946)............................................................................................12,13

*Kinney v. Yerusalim*,
812 F.Supp. 547 (E.D. Pa.), *affirmed*, 9 F.3d 1067 (3d Cir. 1993) *cert. denied,*
511 U.S. 103 (1994)....................................................................................................5

*Lavelle v. Listi*,
611 F.2d 1129 (5th Cir. 1980).....................................................................................6

*Moseke v. Miller and Smith, Inc.*,
202 F.Supp. 492 (E.D. Va. 2002) ..............................................................................8

*New Jersey Protection and Advocacy, Inc. v. Township of Riverside,*
2006 WL 2226332 (D.N.J. 2006) (slip opinion)................................................10,11

*Parker v. Universidad de Puerto Rico*
225 F.3d 1 (1st Cir. 2000)..............................................................................5

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001)........................................................................................2

*Watts v. Graves,*
720 F.2d 1416 (5th Cir. 1983) .......................................................................6,9

## OTHER AUTHORITIES

42 U.S.C. § 12132.........................................................................................11

28 C.F.R. § 35.150(d)(2)...............................................................................11

60 Fed. Reg. 58462, 58463 (1995) ................................................................6

Section 1108 of the Transportation Equity Act for the 21st Century,
Pub. L. No. 105-178, 112 Stat. 107 (23 U.S.C. 133(b)(3)..........................5

*Americans with Disabilities Act of 1989:  Hearings on H.R. 2273,*
*Before the Subcomm. On Civil and Constitutional Rights of the*
*House Comm. On the Judiciary*, 101 Cong., 1st Sess. 248 (1989)...........5

U.S. Architectural and Transportation Barriers Compliance Board,
*Accessible Rights-Of-Way:  A Design Guide* (Nov. 1999)........................4

## ARGUMENT

**I.    THE FOURTH AMENDED COMPLAINT SATISFIED THE STANDARD SET FORTH IN *BELL ATLANTIC*.**

Arlington complains that Plaintiffs' Brief does not discuss *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007), but fails to explain how the *Bell Atlantic* standard makes any difference here.  It does not.

> We must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor.  *See Lovick v. Ritemoney, Ltd.,* 378 F.3d 433, 437 (5th Cir.2004) (citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

*Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).  The Fourth Amended Complaint pleaded sufficient facts to state a claim for relief.  Regardless of the standard applied, the trial court prematurely dismissed Plaintiffs claims.

## II.    ARLINGTON MISSTATES THE LAW WHEN IT CLAIMS PLAINTIFFS MUST SHOW INTENTIONAL DISCRIMINATION AND THAT INACCESSIBLE SIDEWALKS DO NOT CONSTITUTE A VIOLATION OF TITLE II.

Plaintiffs do *not* "assert that intentional discrimination exists whenever a sidewalk, curb ramp, parking lot or other facility is found in the City to be out of compliance with technical standards.  Appellants' Brief, pp. 6-9."  Arlington Brief at 10.  The word "intentional" is not even found in the pages cited by Arlington.  In those pages, Plaintiffs make the point that Arlington has discriminated against them.  "Congress noted that the many forms such discrimination [against the disabled] takes include 'outright intentional exclusion' as well as the 'failure to make modifications to existing facilities and practices.'"  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001).

Moreover, Arlington is flat wrong when it argues that "[a] plaintiff asserting a private cause of action for violations of the ADA and the Rehabilitation Act, as in this case, may only prevail upon a showing of intentional discrimination.  *Carter v.Orleans Parish Pub. Sch.,* 725 F.2d 261, 264 (5th Cir. 1984)."  Arlington Brief at 10.  As the *Carter* decision cited by Arlington clearly notes, intentional discrimination need only be shown when a Plaintiff seeks money damages.  *Carter*, at 264.[1]

---

[1] Plaintiffs need not prove Arlington intentionally discriminated against them.

Sidewalks are in fact a "program, activity or service" under the ADA.[2]  The

Ninth Circuit has held that "anything a public entity does" and any "normal

function of government," including maintaining public sidewalks, is covered by

---

> It is not necessary to show that the City *specifically intended* to discriminate against disabled individuals; the ADA imposes a duty upon the City to comply with its provisions and accommodate persons with disabilities.  An affirmative act of intentional discrimination, . . . is not necessary under the ADA.

*Deck v. City of Toledo*, 56 F. Supp. 2d 895 (N.D. Ohio 1999).

[2] Arlington's argument that there are no final standards for public rights-of-way is a *non-sequitor*.  The purpose of accessibility standards is to assist private and public entities in their efforts to comply with the ADA by setting forth minimum standards.  *See Association for Disabled Americans v. City of Orlando*, 153 F. Supp. 2d 1310, 1317 (M.D. Fla. 2001).  Simply because a particular final standard has not been adopted does not mean the ADA's fundamental requirement of accessibility can be ignored.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.. . .  One form of prohibited discrimination is the exclusion from a public entity's services, programs, or activities because of the inaccessibility of the entity's facility-thus, the program accessibility regulations at issue here.

> The access requirements are set forth in 28 C.F.R. §§ 35.149-35.151.  Section 35.150 requires a public entity to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).  The public entity is required to develop a transition plan for making structural changes to facilities in order to make its programs accessible.  *Id.* at § 35.150(d)(1).  The regulation also requires the transition plan to include a schedule for providing curb ramps to make pedestrian walkways accessible. *Id.* at § 35.150(d)(2).  Section 35.151 similarly requires newly-constructed or altered roads and walkways to contain curb ramps at intersections.  28 C.F.R. § 35.151(e)

*Barden v. City of Sacramento,* 292 F.3d 1073, 1075-76 (9th Cir. 2002)

Title II.  *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir.), *cert. denied*, 539

U.S. 958 (2002).[3]  The court's reasoning in *Barden* is supported both by agencies

charged with creating regulations and guidelines under Title II and by the

legislative history of the ADA itself.  U.S. Architectural and Transportation

Barriers Compliance Bd., *Accessible Rights-of-Way: A Design Guide* (Nov. 1999)

(public rights-of-way constitute a program offered by a government to its citizens).

> The regulations' special emphasis on the installation of
> curb ramps is not hard to understand.  Without curb
> ramps or slopes, it is extremely difficult, if not
> dangerous, for persons in wheelchairs and other persons
> with disabilities to perform the essential task of crossing
> the street.  Because the wheels of wheelchairs are
> sensitive to obstacles, curbs without ramps or slopes
> present the danger that the chair will overturn, injuring
> the occupant.  Consequently, disabled persons are
> sometimes obligated to navigate their chairs in the street,
> exposed to the peril of traffic. Without the ability to cross
> streets, the opportunities afforded by the ADA are of
> little benefit.

---

[3] After the *Barden* Court issued its opinion, the City of Sacramento petitioned the U.S. Supreme Court for a writ of certiorari and before ruling on the writ, the Supreme Court accepted a powerful *amicus* brief (the "Brief") from the Department of Justice ("DOJ") supporting the *Barden* holding.  Justice Department Brief of *Amicus Curiae, Barden* (No. 01-15744).  In the Brief, the DOJ emphasized among other things that a public entity is required to make its entire system of public sidewalks accessible, not just the sidewalks that provide access to other government services and programs.  *Id*. at 12.  The DOJ also recognized that when Congress enacted the ADA, it made a determination that societal benefits of promoting community access to the disabled outweigh the societal costs of complying with the ADA.  *Id*. (citing to 42 U.S.C. § 12101 (a)(9); H.R. Rep. No. 485, 101st Cong., 2d Sess., Pt. 3, at 49-50 (1990).  After the Supreme Court received the Brief, it quickly denied Sacramento's petition.

*Kinney v. Yerusalim*, 812 F. Supp. 547, 549 (E.D. Pa.), *affirmed*, 9 F.3d 1067 (3d Cir. 1993), *cert. denied,* 511 U.S. 103 (1994). *Accord Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000) ("Congress emphasized in enacting the ADA that the employment, transportation, and public accommodations sections of the ADA would be meaningless if people who used wheelchairs were not afforded the opportunity to travel on and between the streets").

The legislative history of Title II supports a finding that sidewalks are a service program, or activity. During congressional hearings, testimony established that one of the greatest barriers disabled persons faced while trying to participate in economic life was the inability to use sidewalks to reach places of employment and commerce. *See, e.g., Americans with Disabilities Act of 1989: Hearings on H.R. 2273, Before the Subcomm. On Civil and Constitutional Rights of the House Comm. On the Judiciary,* 101st Cong., 1st Sess. 248 (1989) (disabled citizens are forced to stay home or use the street because curb cuts and sidewalks are inadequate). Moreover, in subsequent legislation, Congress has explicitly recognized that public sidewalks are covered by Title II. *See* Section 1108 of the Transportation Equity Act for the 21st Century, Pub. L. No. 105-178, 112 Stat. 107 (23 U.S.C. 133(b)(3)) (authorizes the use of federal funds set aside for transportation improvements undertaken by states for the modification of public sidewalks to comply with the ADA).

Finally, Title II regulations are premised on the view that public sidewalk systems are a covered service, program, or activity under Title II. *See 60 Fed. Reg.* 58462, 58463 (1995) (observing that curb ramp requirements for existing sidewalks were premised on the view that "maintenance of pedestrian walkways by public entities is a covered program") (notice of proposed rulemaking). That position, embodied in the DOJ's regulations implementing Title II, is entitled to substantial deference. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Without accessible sidewalks between curb ramps, the regulations' requirements for curb ramps in sidewalks would be meaningless. *Barden*, 292 F.3d at 1077.

### III.   LIKE THE TRIAL COURT, APPELLEES MISAPPLY THE STATUTE OF LIMITATIONS.

Arlington begins its defense of the trial court's ruling just as the trial court began its analysis of the statute of limitations, by observing: "A cause of action accrues when 'the plaintiff knows or has reason to know of the injury . . . and who has inflicted the injury. . . .' [*Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983)] (quoting *Lavelle v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980))." A reasonable person reading that sentence would conclude that the limitations period here begins to run when a plaintiff encounters the barrier of which s/he complains.

Arlington argues that *Deck v. City of Toledo*, 56 F. Supp. 2d 886 (N.D. Ohio 1999), supports its view that a Title II cause of action for inaccessible sidewalks

begins to run when the inaccessible sidewalk is first built. *Deck* states exactly the opposite. The quotation from *Deck* on Page 16 of Arlington's Brief supports Plaintiffs' argument. Responding to the plaintiff's concern in *Deck,* that a two year statute of limitations would make it difficult to enforce ADA violations, the court explains that the concern is legitimate but is ameliorated by the discovery rule because the limitations period is measured beginning from the time the plaintiff knew or should have known of the injury. The court goes on to note that the two year limitation will not be completely open-ended because once the discriminatory act is discovered, the fact that its effects are felt long after will not renew the limitations period.

*Deck* did conclude that if the curb ramps were constructed and in plain view for two years, there was no present violation of the ADA and the plaintiffs had to rely on the continuing violation theory. However, *Deck* does not address what knowledge the plaintiffs possessed about the ADA violations. In the instant case, it is alleged and beyond dispute that some plaintiffs did not and could not have learned of the inaccessible sidewalks within two years of the filing of the complaint.

Arlington complains about the potential for unlimited liability if the federal discovery rule is applied in this case. Arlington Brief at 18. The alternative scenario, the one playing out right now in the City of Arlington, is that Arlington can build its rights of ways in any manner it sees fit, in violation of Title II, and

claim immunity from the violation by virtue of the Statute of Limitations even against a citizen that was not born, was not disabled, or was not a resident, during the two years following the unlawful construction.  Given that the liability is not "unlimited" because there are a finite number of violations, and that the remedy is to fix the unlawful construction, the remedial nature of the ADA militates in favor of Plaintiffs' application of the discovery rule.  Plaintiffs' Brief cites a number of cases in support of their claim that their cause of action cannot accrue before they learn of the barrier.  Arlington dismisses these cases thusly: "The reasoning employed in those district court opinions should be disregarded."  Arlington Brief at 19.  Arlington's failure to even discuss, much less rebut, the rationale of these various opinions is telling.

Arlington then cites to *Deck* and to *Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492 (E.D. Va. 2002), as support for its view that the discovery rule does not apply in the instant case.  *Deck's* support for Plaintiffs' position was discussed *supra.  Moseke* does not rebut Plaintiffs' argument.  *Moseke* is a case brought under the Fair Housing Act.  The court refused to apply the discovery rule because

> the FHA unambiguously states that the "occurrence" of the discriminatory act will trigger the statute of limitations.  *See* 42 U.S.C. § 3613(a)(1)(A) (plaintiff must file lawsuit within two years after the " occurrence or the termination of an alleged discriminatory housing practice ....")

*Id*. at 509.  By comparison, it is undisputed the ADA contains no statute of limitations.  *Deck*, at 889; Doc. 105, USCA5 966; Doc. 87, USCA5 690.  Consequently, federal courts borrow the pertinent State's personal injury statute of limitations, Doc. 105, USCA5 966, but apply federal law to determine when a cause of action accrues.  *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983).  This Circuit has repeatedly held that a cause of action accrues, as the trial court noted, when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  *Id*.

> Stated differently, "[u]ntil the plaintiff is in possession of the 'critical facts' that he has been hurt and who has inflicted the injury, the statute of limitations does not commence to run."  *Lavellee*, 611 F.2d at 1131 (quoting *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979)).

*Watts*, at 1423.  Thus, Plaintiffs' cases are far more persuasive and instructive because they expressly address the limitations issue in the Title II context.

Arlington's assertion that municipalities need not comply with the ADA when "making improvements to sidewalks" is wrong.  Arlington Brief at 20-21 ("*Geiger v. City of Upper Arlington* (slip opinion), 2006 WL 1888877 at *1 (S.D. Ohio 2006) (ADA does not require municipalities to comply with structural specifications when making improvements to sidewalks).").  Not only is Arlington wrong as a matter of law, but it misrepresented the holding of *Geiger* to this Court.

> The ADA itself imposes obligations on municipalities to make improvements in accordance with the mandates of

> the ADA: "alterations of facilities commenced after
> January 26, 1992, 'by, on behalf or, or for the use of a
> public entity in a manner that affects or could affect the
> usability of the facility or part of the facility shall, to the
> maximum extent feasible, be altered in such manner that
> the altered portion of the facility is readily accessible and
> usable by individuals with disabilities.'" *Ability Center of
> Greater Toledo v. City of Sandusky*, 385 F.3d 901, 904
> (6th Cir. 2004) (quoting 28 C.F.R. § 35.151).

*Geiger v. City of Upper Arlington*, 2006 WL 1888877, *1 (S.D. Ohio 2006).  The

actual holding of *Geiger* is undisputed by Plaintiffs here: a city has no obligation to

build sidewalks.

> The City of Upper Arlington also argues that the ADA
> does not impose an obligation on the City to build
> sidewalks.  **The ADA does require municipalities to
> comply with the structural specifications of the ADA
> when the municipality is making improvements to its
> sidewalks.**  *See* 28 U.S.C § 35.104.  However, nothing in
> the ADA's enabling regulations, or case law states that a
> municipality may be ordered to construct sidewalks on
> all of its streets in order to bring the city into compliance
> with the ADA.  Geiger has failed to state a claim
> pursuant to the ADA.

*Id.* (emphasis added).

Next Arlington asserts the remarkable proposition that "[t]he City's

sidewalks, curb ramps, parking spaces and other 'facilities' under the ADA are not

a 'program, activity or service' of the City."  Arlington Brief at 21.  For support,

Arlington relies on *Geiger* and *New Jersey Protection and Advocacy, Inc. v.

Township of Riverside*, 2006 WL 2226332 (D.N.J. 2006) (slip op.).  Based on the

excerpt from *Geiger* set forth *supra*, Arlington again misrepresents the holding in *Geiger*.

This troublesome pattern continues with Arlington's discussion of *New Jersey Protection and Advocacy.* The court did find that sidewalks themselves are not services, programs, or activities, but Arlington fails to tell this Court that *New Jersey Protection and Advocacy* found that sidewalks are facilities and that the relevant ADA regulations "compel installation of curb ramps in preexisting sidewalks in most instances, regardless of whether the sidewalks constitute a facility, or a program, service or activity." *See New Jersey Protection and Advocacy*, Inc., 2006 WL 2226332 at *3.[4] Moreover, the court held that 28 C.F.R. § 35.150(d)(2) "implies a more general obligation to install curb ramps in **all** sidewalks, even those predating the ADA, and the emphasis on curb ramps … suggests that the DOJ considered accessible sidewalks necessary to insure equal participation in and enjoyment of a public entities' services, programs, or activities." *Id*. at *4 (finding the curb cut obligation to be mandated by 42 U.S.C. § 12132).

_____

[4] In deciding not to find sidewalks to be programs, services, or activities for ADA implementing regulations, and instead finding them to be "facilities," the *New Jersey Protection and Advocacy* engages in the "needless hair splitting arguments" the *Barden* Court sought to avoid. *See Barden*, 292 F.3d at 1076 ("attempting to distinguish which public functions are services, programs, or activities, and which are not, would disintegrate into needless hair splitting arguments").

> The failure to explicitly articulate the curb ramp
> requirement outside the context of a transition plan does
> not abrogate the Department of Justice's clear intention
> to require curb ramps or other sloped areas where
> pedestrian walks cross, giving priority to walkways
> serving entities covered by the Act.

*Id.* at *3.

## IV.    ARLINGTON FAILS TO REFUTE THE APPLICATION OF THE CONTINUING VIOLATION THEORY.

Arlington makes a lengthy argument that the continuing violation theory is inapplicable, but the eight page discussion boils down to one argument that Arlington repeats over and over – that Plaintiffs failed to allege an act of discrimination within two years of filing the complaint.  Arlington Brief at 22, 23, 25, and 28.  This is untrue.  The Fourth Amended Complaint alleges both that barriers were created within two years prior to the initial lawsuit and that these barriers were first encountered within those two years.  Plaintiffs' Brief at 16.

## V.    ARLINGTON RAISES ALMOST NO DEFENSE TO THE INAPPLICABILITY OF A LIMITATIONS PERIOD TO INJUNCTIVE RELIEF.

Plaintiffs cited eight cases establishing that statutes of limitations are inapplicable to equitable claims for injunctive relief.  Plaintiffs' Brief at 23-25.  In response, Arlington selects one of the cases (*Holmberg v. Armbrecht*, 327 U.S. 396 (1946)) and argues it only applies when there is a basis for equitable tolling based on fraud by the defendant.  Arlington Brief at 30.  First, *Holmberg* does not hold that statutes of limitations are inapplicable in equity only if there is a basis for

equitable tolling. *See id.* at 396. Rather, *Holmberg* makes the point that "[e]quity eschews mechanical rules;" thus *laches* is not based solely on the passage of time, and even a significant passage of time is not conclusive because of the possibility of equitable tolling. *Id.* Second, and again very tellingly, Arlington ignores – without explanation – the remaining cases cited by Plaintiffs.

## VI. PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AND PROPERLY PLED ACTIONABLE ACTS OF DISCRIMINATION.

Arlington claims Plaintiffs waived their arguments against Arlington's challenge to their standing by not addressing the argument in their Initial Brief because the trial court addressed them. *See* Arlington Brief at 33 ("Plaintiffs' initial brief did not substantively address these [standing] issues (even where the district court's decision did address some of them), instead only arguing statute of limitations issues."). No fair reading of the trial court's order supports Arlington's argument. The trial court did dismiss the claim concerning Arlington's failure to adopt and implement a transition plan because Plaintiffs' lack standing, but the injunctive relief claims were dismissed solely based on the statute of limitations. *See* Doc. 105, USCA5 969.

Arlington then repeats the various standing arguments it presented to the trial court. The page limitation governing this Reply Brief prevents Plaintiffs from fully addressing Arlington's arguments. They are meritless, but rather than attempting to include an extremely condensed rebuttal, Plaintiffs refer this Court to

their response to Arlington's Motion to Dismiss the Third Amended Complaint. *See* Doc 97, USCA5 868-872.

Likewise, Arlington asserts this Court should affirm the trial court's order because Plaintiffs did not address Arlington's argument to the trial court that Plaintiffs failed to "establish discrimination" for a variety of reasons. Arlington Brief at 40. This is a remarkable proposition in light of the trial court failure to address these issues. That is not to say this Court could not affirm the trial court on other grounds than those set forth by the trial court. But to claim Plaintiffs are barred forevermore from rebutting plainly wrong arguments, arguments not adopted by the trial court, is a bridge too far. Again, these issues were sufficiently discussed and rebutted in Plaintiffs' response to Arlington' Motion to Dismiss the Third Amended Complaint which is part of the record on appeal. *See* Doc. 97 at 872-879.

## CONCLUSION

For the foregoing reasons, Plaintiffs urge this Court to reverse the trial court's dismissal of the Fourth Amended Complaint.

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepare in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman 14 pt. style.

## <u>CERTIFICATE OF SERVICE</u>

I HERBY CERTIFY that a true and correct copy of the foregoing Initial Brief of Appellant was served by U.S. Mail & electronic transmission, this 8th day of December, 2008, to:

Edwin P. Voss of Brown & Hofmeister, LLP, Counsel for Defendant, 740 East Campbell Road, Suite 800, Richardson, Texas 75081

Denise V. Wilkerson, Assistant City Attorney, City of Arlington, P.O. Box 90231, Arlington, Texas 76004-3231.

_____
Miguel M. de la O