# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CASE NO. 08-10630

Lower Case No. 4:05-cv-470

RICHARD FRAME, WENDELL DECKER,
SCOTT UPDIKE, J.N., a minor, by his next friend
and mother, GABRIELA CASTRO, MARK HAMMAN
and JOEY SALAS,

Appellants,

vs.

THE CITY OF ARLINGTON,
a Municipal Corporation,

Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

## APPELLANTS' PETITION FOR REHEARING *EN BANC*

---

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Appellants
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555

**Miguel M. de la O**
Florida Bar No. 0822700
delao@dmmllaw.com

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

I HEREBY CERTIFY that the following persons may have an interest in the outcome of the appeal in this cause:

| NAME | INTEREST |
|---|---|
| Richard Frame | Appellant |
| Wendell Decker | Appellant |
| Scott Updike | Appellant |
| J.N., a minor | Appellant |
| Gabriela Castro | Mother and Next of Kin of J.N., Appellant |
| City of Arlington, Texas | Appellee |
| Miguel M. de la O | Counsel for Appellants |
| Charles D. Ferguson | Counsel for Appellants |
| John L. Freeman | Local Counsel for Appellants |
| John M. Nevin | Local Counsel for Appellants |
| Edwin P. Voss, Jr. | Counsel for Appellee |
| Denise V. Wilkerson | Counsel for Appellee |
| Terry R. Means | U.S. District Court Judge |

_____

Miguel M. de la O

## STATEMENT OF COUNSEL
## REGARDING *EN BANC* PETITION

I express a belief, based on my reasoned and studied professional judgment, that the Panel's decision presents the following question of exceptional importance:

> In a case involving solely injunctive relief, do Appellants' claims of discrimination by the City of Arlington, for constructing curb cuts, sidewalks and parking lots in violation of Title II of the ADA and Rehabilitation Act, accrue on (a) the date the City completed a noncompliant construction or alteration, or (b) the date the Appellants encountered a noncompliant barrier.

The Panel recognized that the narrow question presented by this appeal was an issue of first impression. *See* Decision, at 1, 10.

The Panel majority's answer – that Appellants' claims accrued on the date Arlington completed construction – is "an error of exceptional public importance," as defined in F.R.A.P. 35(b)(1)(B). Under the Panel's holding, even a person who becomes disabled more than two years after a city completes construction (the situation of one Appellant here) cannot file an ADA complaint under Title II.

The Panel's decision ignored the standing requirements articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). By ignoring fundamental principles of standing, the Panel reached the clearly erroneous conclusion that Appellants' cause of action for violations of Title II accrued when the City completed construction on non-complaint curb cuts, sidewalks and parking lots, rather than when Appellants first encountered the barriers. Judge Pardo, recognizing the majority's error, filed a lengthy opinion in which he dissents from Part III of the Decision. Decision, at 16.

The holding will affect far more than curb cuts. The Panel's decision will have the effect of immunizing forever all places of public accommodations that have not altered their premises within their respective State's applicable statute of limitations, because courts interpret Titles II and III identically with regards to the application of statutes of limitations. The perverse result of the Panel's decision is to encourage places of public accommodation not to make any alterations to their premises so the limitations period does not begin running anew – thus undermining the ADA's broad remedial purpose.

_____

**Miguel M. de la O**
Florida Bar No. 0822700
delao@dmmllaw.com

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:   (305) 285-5555
Attorneys for Petitioners-Appellants

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT OF COUNSEL REGARDING *EN BANC* PETITION ................... ii

TABLE OF CITATIONS ...............................................................................iv

STATEMENT OF THE ISSUE PRESENTED TO MERIT *EN BANC* CONSIDERATION .................................................................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE.........................................................................................................2

STATEMENT OF THE FACTS ...........................................................................2

ARGUMENT ......................................................................................................7

      A. The Panel Majority Recognized, But Failed to Apply, the Correct Standard for Determining When a Cause of Action Accrues. ......................................................................................8

      B. The Panel Majority's Decision Will Immunize All Places of Public Accommodation. ....................................................................12

CONCLUSION .................................................................................................13

CERTIFICATE OF SERVICE .............................................................................13

**de la O ▪ Marko ▪ Magolnick ▪ Leyton**

TELEPHONE 305/285-2000          3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129          FACSIMILE 305/285-5555

## TABLE OF CITATIONS

**CASES**                                                              **PAGES**

*A Helping Hand, LLC v. Baltimore County, Maryland*
515 F.2d 356 (4th Cir. 2006)............................................................................9

*Addiction Specialists v. Township of Hampton*
411 F.3d 399 (3d Cir. 2005).............................................................................9

*Association of Community Organizations for Reform Now v. Fowler*
178 F.3d 350 (5th Cir. 1999)..........................................................................10

*Barden v. City of Sacramento*
292 F.3d 1073 (9th Cir. 2002), *cert. denied*
539 U.S. 958 (2003)..........................................................................................3

*Bazemore v. Friday*
478 U.S. 385 (1986)..........................................................................................8

*Disability Rights Wisconsin v. Walworth Cty. Brd. Of Supervisors*
522 F.3d 796 (7th Cir. 2008)............................................................................9

*Kinney v. Yerusalim*
9 F.3d 1067 (3d Cir. 1993), c*ert. denied*,
511 U.S. 1033 (1994)....................................................................................3, 5

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)........................................................................................10

*MX Group v. City of Covington*
293 F.3d 325 (6th Cir. 2002)............................................................................9

*Order of R.R. Telegraphers v. Ry. Express Agency*
321 U.S. 342 1944)........................................................................................12

*PGA Tour, Inc. v. Martin*
532 U.S. 661 (2001)......................................................................................2, 7

*Rotella v. Wood*
528 U.S. 549 (2000)..........................................................................................9

*Shotz v. Cates*
256 F.3d 1077 (11th Cir. 2001)................................................................10

*Steel Co. v. Citizens for a Better Environment*
523 U.S. 83, 188 S. Ct. 1003 (1998).........................................................9

*Tandy v. City of Wichita*
380 F.3d 1277 (10th Cir. 2005).............................................................9

*Walker v. Epps*
 550 F.3d 407 (5th Cir. 2008).................................................................10

*Wallace v. Kato*
549 U.S. 384, 388 (2007).........................................................................10

*Wilson v. Pier I Imports (US), Inc.*
413 F.Supp.2d 1130 (E.D. Cal. 2006) ....................................................7

## <u>OTHER AUTHORITES</u>

29 U.S.C. § 794(a) ...................................................................................3
42 U.S.C. § 12131(1)(a)-(b)......................................................................4
42 U.S.C. § 12132....................................................................................3
28 C.F.R. §35.150(d)(2)............................................................................3
28 C.F.R. §35.151 ....................................................................................3

## I.  STATEMENT OF THE ISSUE PRESENTED TO MERIT *EN BANC* CONSIDERATION

In an action involving solely injunctive relief, did two members of the Panel err in holding that a plaintiff's claim of discrimination against a municipality accrues on the date a curb cut, sidewalk or parking lot is completed (or altered) in violation of Title II of the ADA, regardless of when the plaintiff first encounters the barrier, even if the plaintiff is not disabled (or even born) before the statute of limitations runs.

## II.  STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

On July 22, 2005, a Complaint was filed by disabled individuals ("Appellants") who had suffered – and continue to suffer – injury under the Americans with Disabilities Act of 1990 (the "ADA") due to the City of Arlington's ("Arlington" or "Appellees") creation of, and refusal to remove, architectural barriers.  On August 9, 2007, the trial court granted Appellants leave to file a Fourth Amended Complaint.  (Doc. 93, 94, USCA5 799, 801).  On March 31, 2008, the trial court granted Arlington's Motion to Dismiss and entered a Final Judgment dismissing Appellants' claims with Prejudice.  (Doc. 105, 106, USCA5 961, 970).  Appellants appealed.

On July 7, 2009, a Panel of this Court ruled unanimously that the trial court erred in dismissing Appellants' Fourth Amended Complaint.  However, two

members of the Panel affirmed the trial court's holding that, pursuant to Texas' two-year personal injury statute of limitations, any claims against Arlington for barriers created more than two years prior to the filing of the initial lawsuit are barred as untimely.  A copy of the Panel's decision is attached as Exhibit "A" ("Decision").

## III.   STATEMENT OF THE FACTS

Congress passed the ADA to address a host of obstacles to the integration of persons with disabilities into daily life.

> Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals . . ..  Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices."  After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." . . .  To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001) (citations omitted).

Title II of the ADA prohibits public entities from discriminating in the provision of public services on the basis of disability.  "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.[1]

The ADA and its implementing regulations require that, after January 26, 1992, all public entities must install curb ramps at all intersections where road construction or road alterations are performed so as to make public sidewalks and streets accessible to persons with disabilities.  28 C.F.R. § 35.150(d)(2), § 35.151. Soon after the ADA's enactment, the Third Circuit recognized the critical importance of municipalities installing curb cuts.

> The lack of curb cuts is a primary obstacle to the smooth integration of those with disabilities into the commerce of daily life.  Without curb cuts, people with ambulatory disabilities simply cannot navigate the city; activities that are commonplace of those who are fully ambulatory become frustrating and dangerous endeavors.  At present time, people using wheelchairs must often make the Hobson's choice between traveling in the streets – with cars and buses and trucks and bicycles – and traveling over uncut curbs which, even when possible, may result in the wheelchair becoming stuck or overturning, with injury to both passenger and chair.

*Kinney v. Yerusalim*, 9 F.3d 1067, 1069 (3d Cir. 1993), *cert. denied*, 511 U.S. 1033 (1994); *see Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) (public sidewalks qualify as a service, program or activity of government; ADA's

---

[1] Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

"prohibition of discrimination applies to the maintenance of public sidewalks" so as to require curb ramp installation), *cert. denied*, 539 U.S. 958 (2003).

Defendant is a Texas municipal corporation which has been given the authority to install, repair, and maintain streets and sidewalks within Arlington, including the installation, repair, and maintenance of curb ramps.  Arlington is a public entity within the meaning of Title II of the ADA, which is defined as any state or local government or any department or agency of a state or local government.  42 U.S.C. § 12131(1)(a)-(b).  (Doc. 94, USCA5 805).  Although Arlington challenged its duty to comply with these regulations, the Panel decision agreed with Appellants. Decision, at 8.

Appellants are residents of Arlington and individuals with disabilities who travel within Arlington to conduct business and/or other daily activities.  (Doc. 94, USCA5 805-806).  Within the two years preceding the filing of the Complaint, Appellants were unable to travel safely on Arlington's sidewalks and streets in their wheelchairs because of Arlington's extensive lack of curb ramps or of properly installed curb ramps.  Additionally, within the two years preceding the filing of the Complaint, Appellants were unable to travel safely on Arlington's pedestrian rights-of-way because many sidewalks are not properly maintained, contain abrupt vertical changes in level violation, excessive cross slopes, and/or contain obstructions from protruding objects.  (Doc. 94, USCA5 807).

Curbs, and poorly maintained sidewalks, are major obstacles to persons who use wheelchairs. The front wheels are sensitive to obstacles, and any non-compliant change in level, crack or slope can impede the progress of a wheelchair, damage a wheelchair, or increase the possibility of overturning a wheelchair and seriously injuring its passenger. *Id. See Kinney,* at 1069.

Arlington has discriminated against Appellants because of their disabilities by denying them the navigable use and benefit of its sidewalks, streets, and intersections. Without accessible curb ramps and sidewalks, the Appellants are prevented from undertaking commonplace activities available to those who are fully ambulatory. Arlington has also discriminated against the Appellants by failing to provide sufficient handicap parking spaces at certain public facilities. (Doc. 94, USCA5 842).

It should not go unnoticed that the Decision is noticeably devoid of any discussion of the facts pled or of the Appellants' individual circumstances. This omission is understandable in view of the detailed allegations in the Fourth Amended Complaint, and the implications of the Panel majority's decision. For example:

> 51.    Mr. Updike is a veteran of the U.S. Army, and he was discharged in 1985, after two years of service to our country. He became a quadriplegic on September 8, 2003, after a tragic automobile accident. Now the only motorized vehicle he drives is his wheelchair. Although Mr. Updike triumphed over the challenges of military service, he finds it extremely difficult to overcome the barriers to accessibility that Arlington has not rectified. For example, Mr. Updike has two school-age daughters, and in order to

remain a responsible, loving father, he attends school events and supports his daughters' education. One daughter goes to Bailey Junior High on 2411 Winewood Avenue, and the other daughter attends Ruby Ray Swift Elementary on 1101 S. Fielder Road. For example, on Tuesday, September 27, 2005, he had to travel in his wheelchair on Bowen Road in order to accompany his daughter to a school event. Since Arlington does not provide proper access to the school for Mr. Updike by providing ADA-compliant sidewalks and curb ramps, he is forced to travel in the street with vehicular traffic and also forced to take longer routes.

52.    Mr. Updike has lived in Arlington for the past two years, and regularly travels to Albertsons on Little Road to buy groceries, about six to ten times per month. He also shops at Big Lots on Green Oaks Boulevard about two times per month. He goes roughly every other day to CVS Pharmacy at Little Road and Green Oaks Boulevard. Further, Mr. Updike goes twice per month to Wells Fargo on Little Road. These are examples of destinations that are important for Mr. Updike to access regularly, but this is certainly not an exclusive list of all destinations that Mr. Updike has attempted to access in the past two years.

(Doc. 94, USCA5 823). Thus, even though Appellant Updike was not disabled until well after the ADA was enacted, and years after Arlington failed to provide ADA-compliant sidewalks and curb ramps when constructing or altering roadways, the Panel majority would forever immunize Arlington's unlawful acts and deny Appellant Updike equal access to Arlington's services, programs, and activities.

## IV.    ARGUMENT

The primary intent of the ADA is to require the removal of existing barriers to allow persons with disabilities full participation in their community.

> Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals . . .. Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life."

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001) (citations omitted).

There is no remedial civil rights law that condones the perpetuation of a discriminatory practice by the application of a statute of limitation – yet, this is exactly the consequence of the Panel majority's decision.

> [I]t is difficult to believe that a statute with the broad remedial purpose of ending discrimination against the disabled, should be construed as permitting discrimination to persist after its existence has been discovered.

*Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).

It is unimaginable to think that "Whites Only" and "Colored" entrances to a courthouse would ever be subject to a statute of limitations. If a restaurant in Arlington had a policy of not serving African-Americans, no court would rule that unless African-Americans filed suit during the two years after the policy went into

effect, all subsequent victims would be forever time-barred from seeking injunctive relief. *See Bazemore v. Friday*, 478 U.S. 385, 395 (1986) ("[e]ach week's paycheck that delivers less to a black than a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII"). Nor would any court provide safe harbor to a company with a policy of terminating pregnant women if no woman brought suit within two years after implementation of the unlawful policy.[2]

## A.   THE PANEL MAJORITY RECOGNIZED, BUT FAILED TO APPLY, THE CORRECT STANDARD FOR DETERMINING WHEN A CAUSE OF ACTION ACCRUES.

The key issue on appeal, and in the Panel's decision, was determining *when* a cause of action accrues. The Panel majority's decision correctly explained:

> A claim ordinarily accrues when a plaintiff has "'a complete and present cause of action'" or, stated differently, "when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (citations omitted)); *Walker* [*v. Epps*], 550 F.3d [407,] 414 [5th Cir. 2008].

Decision, at 11. After identifying the correct standard, the Panel majority inexplicably neglected to apply it to the facts of the instant case; they literally failed to take the next step and analyze *when* a Title II plaintiff has a "complete and present

---

[2] Of course, a woman directly subjected to the discriminatory act must comply with the applicable limitations period, but a new female employee would never be barred from bringing a claim merely because the policy was in force for over two years.

cause of action" and "can file suit and obtain relief."  The Panel majority instead
turned its focus to policy considerations, thus ignoring both this Court's precedent
regarding when a cause of action accrues and Congressional intent.

The Panel majority's most egregious error was overlooking the standing
requirements for a Plaintiff seeking injunctive relief under Title II.[3]  All plaintiffs
asserting violations of Title II must demonstrate Article III standing.[4]  "Standing to
sue is part of the common understanding of what it takes to make a justiciable case."
*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102, 118 S. Ct. 1003,
1016 (1998).

---

[3] The Panel majority could also have reached the correct result by applying the
federal discovery rule to Title II claims, but chose not to do so.  Decision, at 13.
Judge Pardo correctly noted that, because the Appellants' cause of action accrued
when they suffered an injury-in-fact (*i.e.*, when they "suffer[] the exclusion or denial
that [Title II] prohibits" (Decision, at 18), a discussion of the discovery rule is
unnecessary.  However, the discovery rule provides an alternative route to
vindicating the ADA's broad remedial purpose; and the policy considerations which
support the discovery rule likewise support Appellants' argument.  As the Panel
majority explained, the discovery rule has been generally applied to fraud and
medical malpractice cases because their latent injuries "cry for a discovery rule []
loudest."  Decision, at 12 (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).  The
majority does explain why the barriers created by Arlington are any less latent to
potential plaintiffs who do not live near the barrier, have not traveled on the streets
containing the barrier, do not live in Arlington yet, or are not yet even disabled (or
born).

[4] *See, e.g.*, *Disability Rights Wisconsin v. Walworth Cty. Brd. of Supervisors*, 522
F.3d 796, 800 (7th Cir. 2008); *A Helping Hand, LLC v. Baltimore County, Maryland*,
515 F.3d 356, 362 (4th Cir. 2006); *Addiction Specialists v. Township of Hampton*,
411 F.3d 399, 405 (3d Cir. 2005); *Tandy v. City of Wichita*, 380 F.3d 1277, 1283
(10th Cir. 2005); *MX Group v. City of Covington*, 293 F.3d 325, 332 (6th Cir. 2002).

To establish Article III standing, a plaintiff must demonstrate an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In the context of the ADA, the 11th Circuit has noted that

> because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges ... a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.

*Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001); *see also Association of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) ("alleged injury must be '(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical' to pass constitutional muster") (quoting *Lujan*, at 560-61).

It is indisputable that Appellants did not have standing to bring any claims against Arlington until each encountered a barrier to access.  Lacking standing, Appellants obviously did not have "a complete and present cause of action" allowing them to "file suit and obtain relief."  Thus, Appellants' cause of action could not accrue until they encountered a barrier on the streets of Arlington.

The Panel majority failed to apply *Wallace v. Kato* and *Walker v. Epps* to determine when Appellants' causes of action accrued based on the facts in this case. Instead, the Panel majority relied on policy considerations to conclude that the Appellants' cause of action accrued when Arlington completed construction or alteration of a sidewalk or roadway.  Decision, at 13-14.  The Panel majority

unaccountably excluded from its policy calculus the statutory anti-discrimination purpose of the ADA. It glossed over the remedial nature of the ADA, the findings of Congress in implementing the ADA, and the reality that, as between the disabled persons and municipalities, municipalities are in the best position to bear the burdens imposed by the ADA. Municipalities are responsible for construction which either creates barriers to accessibility or fails to remove barriers during alterations of existing roadways and sidewalks. The Panel majority's decision to place the burden of Arlington's misfeasance in discharging its obligations under Title II on the Appellants is contrary to the intent of Congress and fundamental notions of justice.

By contrast, Judge Pardo's dissent applied the analytical framework identified by the majority, and examined in detail when a cause of action accrues for injunctive relief under the ADA. *See* Decision, at 16-19. Judge Pardo concluded:

> Simply put, there cannot be an injury under the ADA until the plaintiff actually suffers the exclusion or denial that the statute prohibits. Thus, to suffer an injury under Title II of the ADA, the qualified individual must have *actually encountered* the discrimination or *actually be deterred* from visiting the public accommodation because of exclusion from or denial of the benefits of a service, program, or activity. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has *actually* become aware of discriminatory conditions existing at a public accommodation, *and* is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").

*Id.* at 18.

The Panel also focused on the general policy underlying statutes of limitation, noting they are intended to protect defendants from "stale" claims. Decision, at 13. However, any staleness is not a result of Appellants sitting on their rights, as *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) warns against. Appellants' claims arise because Arlington consciously chose to ignore clear federal law when it built new, or altered existing, curbs, sidewalks, and parking lots. In contrast, any delay by the Appellants in seeking injunctive relief is not conscious. Appellants either did not know of the violations because they had not encountered them, or – in the case of Appellant Updike – were not yet disabled.

## B. THE PANEL MAJORITY'S DECISION WILL IMMUNIZE ALL PLACES OF PUBLIC ACCOMMODATION.

As the Panel's decision recognizes, the statute of limitations analysis is the same under Title III as under Title II. Decision, at 9. Thus, the Panel majority's decision will be equally applicable to places of public accommodation under Title III, and will bar forever claims for remedial injunctive relief if the place of public accommodation was built (or renovated) outside of its resident State's applicable limitations period. Worse still, the Panel majority's decision incentivizes places of public accommodation not to alter their premises to avoid the limitations period from beginning anew. Prior to the Panel majority's decision, places of public accommodation had an incentive to eliminate architectural barriers that were readily achievable in order to avoid enforcement actions. Unless this Court corrects the

Panel majority's decision, places of public accommodation that were not built or altered within the State's limitations period will be immunized from suit, leaving the disabled community without remedy against hospitals, office buildings, hotels, and restaurants, which have ignored the ADA's requirements for nearly 20 years.

## V.   CONCLUSION

For the foregoing reasons, Appellants respectfully asks the Court to grant their petition for rehearing *en banc*.

Respectfully submitted,

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Appellants
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555

By:_____
   **Miguel M. de la O**
   Florida Bar No. 0822700
   delao@dmmllaw.com

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that a true and correct copy of the foregoing Petition was served by U.S. Mail & electronic transmission, this 21st day of July, 2009, on Edwin P. Voss of Brown & Hofmeister, LLP, , 740 East Campbell Road, Suite 800, Richardson, Texas 75081; and Denise V. Wilkerson, Assistant City Attorney, City of Arlington, P.O. Box 90231, Arlington, Texas 76004-3231.

_____
Miguel M. de la O