IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Nos. 08-10630, 08-10631

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,      Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                            Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**APPELLEE'S PETITION FOR REHEARING EN BANC**

Edwin P. Voss, Jr.
State Bar No. 20620300
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas 75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

Denise V. Wilkerson
Assistant City Attorney
State Bar No. 20534100
City of Arlington
P.O. Box 90231
Arlington, Texas 76004-3231
817-459-6878 (Telephone)
817-459-6897 (Telecopier)

Attorneys for Appellee
City of Arlington

July 17, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Nos. 08-10630, 08-10631

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,          Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                Defendant-Appellee.

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| Name | Interest |
| --- | --- |
| Richard Frame | Plaintiff-Appellant |
| Wendell Decker | Plaintiff-Appellant |
| Scott Updike | Plaintiff-Appellant |
| JN, by his next friend and mother, Gabriela Castro | Plaintiff-Appellant |
| Mark Hamman | Plaintiff-Appellant |
| Joey Salas | Plaintiff-Appellant |

| | |
|---|---|
| Miguel M. de la O | Trial and Appellate Counsel for Plaintiffs-Appellants |
| Charles D. Ferguson | Trial Counsel for Plaintiffs-Appellants |
| John M. Nevins | Local Trial Counsel for Plaintiffs-Appellants |
| John L. Freeman | Former Local Trial Counsel for Plaintiffs-Appellants |
| City of Arlington, Texas | Defendant-Appellee |
| Edwin P. Voss, Jr. | Trial and Appellate Counsel for Defendant-Appellee |
| Denise V. Wilkerson | Trial and Appellate Counsel for Defendant-Appellee |
| Kent S. Hofmeister | Trial Counsel for Defendant-Appellee |
| Sidney C. Stahl | Mediator |

EDWIN P. VOSS, JR.
Counsel of Record for Defendant-Appellee

ii

## <u>EN BANC STATEMENT</u>

Pursuant to Fed. R. App. P. 35 (b)(1), Appellee City of Arlington, Texas (the "City" or "Appellee"), provides the following en banc statement:

1.    En banc consideration is warranted in this case because this proceeding presents a question of exceptional importance where the panel decided, as a matter of first impression in this Court, that curbs, sidewalks and parking lots are "services, programs or activities" within the meaning of Title II of the Americans with Disabilities Act ("ADA").  The majority panel decision on this one issue departs from Congressional intent and subjects all existing curbs, sidewalks and parking lots (and potentially all other physical infrastructure) owned or maintained by all state and local governmental entities in the Fifth Circuit to new, costly and burdensome requirements.   In an attempt to define Plaintiffs' discrimination cause of action, the panel decision unnecessarily imposes unprecedented potential liability upon the City and upon all state and local governments in the Fifth Circuit.  The fiscal ramifications of this ruling on tight government budgets is staggering.

2.    En banc consideration is necessary because the majority panel decision on the burden of proof issue conflicts with  *Jones v. ALCOA, Inc.,* 339 F.3d 359, 366 (5th Cir. 2008), *cert. denied,* 540 U.S. 1161 (2004); and *Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983).  Consideration by the full court is therefore necessary to secure and maintain uniformity of this Court's decisions.

# TABLE OF CONTENTS AND AUTHORITIES

Certificate of Interested Parties..................................................................... i

En Banc Statement ...................................................................................... iii

Table of Contents and Authorities ............................................................... iv

Statement of the Issues Meriting En Banc Consideration ........................... 1

Statement of the Course of Proceedings and Disposition of the Case ....... 1

Statement of Facts ....................................................................................... 3

Argument and Authorities ........................................................................... 3

       A.    Curb Ramps, Sidewalks and Parking Lots Are Not a Service, Program or Activity Under the ADA ............................................... 3

       B.    An Affirmative Defense Evidentiary Proof Burden is Not Appropriate in a Rule 12 Motion ..................................................... 12

Conclusion ................................................................................................. 14

Certificate of Service ................................................................................ 16

Appendix:  Panel's Opinions, filed July 7, 2009

## AUTHORITIES

### Cases

*Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002), *cert. denied*, 539 U.S. 958 (2003) ........................................................................................ 5, 11

*Bell Atlantic Corp. v. Twombly*, _____ U.S. _____, 127 S.Ct. 1955 (2007) .......... 10

*Carrasquillo v. City of New York*, 324 F.Supp. 2d 428 (S.D.N.Y. 2004) ............... 10

*Disabled in Action in Pennsylvania v. Southeastern Penn. Transp. Auth.*, 2006 WL 3392733 (E.D.Pa. 2006), *rev'd on other grounds*, 539 F.3d 199 (3rd Cir. 2008) ......................................................................................................... 10

*Geiger v. City of Upper Arlington*, 2006 WL 1888877 (S.D. Ohio 2006) .......... 7, 10

*Hainze v. Richards*, 207 F.3d 795 (5th Cir.), *cert. denied*, 531 U.S. 959 (2000) ....... 6

*Jensen v. Snellings*, 841 F.2d 600 (5th Cir. 1988)................................................14

*Jones v. ALCOA, Inc.*, 339 F.3d 359 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004) ................................................................................................1, 13

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982)................................................................................................3

*New Jersey Protection and Advocacy, Inc. v. Township of Riverside*, 2006 WL 2226332 (D.N.J. 2006) ................................................................................6, 7

*Rosen v. Montgomery County*, 121 F.3d 154 (5th Cir. 1997)................................6

*Tennessee v. Lane*, 541 U.S. 509 (2004) ..........................................................7, 11

*U.S. v. Retirement Services Group*, 302 F.3d 425 (5th Cir. 2002) ......................14

*Voices for Independence (VFI) v. PaDOT*, 2007 WL 2905887 (W.D.Pa. 2007)......5

*Watts v. Graves*, 720 F.2d 1416 (5th Cir. 1983)..................................1, 13, 14

*Zimmerman v. Oregon DOJ*, 170 F.3d 1169 (9th Cir. 1999) ...............................6

## Statutes

28 C.F.R. § 35.104................................................................................................11

28 C.F.R. §§ 35.149-35.151................................................................................4

28 C.F.R. § 35.150................................................................................................6, 10

28 C.F.R. Part 36..................................................................................................8

36 C.F.R. 1191 .....................................................................................................9

36 C.F.R. Part 1191.............................................................................................9

Appendix A to 28 C.F.R. part 36........................................................................8

42 U.S.C. § 12132................................................................................................3, 4, 5

42 U.S.C. § 12146................................................................................................4

42 U.S.C. § 12147 ........................................................................................4

63 Fed. Reg. 2, 013 (Jan. 13, 1998) ...........................................................9

Fed. R. App. P. 35 ........................................................................................1

Fed. R. Civ. P. 8 .........................................................................................10

Fed. R. Civ. P. 12 ................................................................................passim

*Final Report Public Rights-of Way Access Advisory Committee, dated January 2001,* www.access-board.gov/prowac/commrept/index.htm ................................8

www.usdoj.gov/crt/foia/cltr191.txt ............................................................7

## STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION

Under Fed. R. App. P. 35 (a), en banc consideration by this Court is necessary and appropriate on the following two issues decided by the panel:[1]

1.    As a question of exceptional importance, and as a matter of first impression in this Court, does the panel's ruling that all state and local curbs, sidewalks and parking lots constitute "services, programs or activities" within the meaning of Title II of the ADA:  (a) incorrectly determine the basis of Plaintiffs' discrimination claims; and (b) impermissibly extend the ADA and impose unprecedented, enormous costs and potential liability on cities?

2.    Does the panel decision placing the burden upon the City to establish evidence of the accrual of Plaintiffs' claims conflict with this Court's decisions in *Jones v. ALCOA, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161 (2004); and *Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983), in the context of a Rule 12(b)(6) dismissal motion?

### STATEMENT OF THE COURSE OF PROCEEDINGS
### AND DISPOSITION OF THE CASE

Plaintiffs' Complaint was filed against the City on July 22, 2005, alleging violations of Title II of the ADA and § 504 of the Rehabilitation Act.  Record on Appeal ("Rec."), Vol. 1, pp. 18-41.  On August 11, 2005, the City filed Defendant

---

[1] The majority panel's decisions on the applicable statute of limitations, and the accrual trigger point, are not the subject of this petition. *See* Appendix, pp. 8-14.

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 1**

City of Arlington's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims and Brief (Rec., Vol. 1, pp. 51-80). After Plaintiffs amended their complaint four times (Rec., Vol. 1, pp. 160-183; Vol. 1, pp. 212-246; Vol. 3, pp. 557-601; Vol. 4, pp. 801-852), the City filed its Third Renewed Motion to Dismiss Plaintiffs' claims. Rec., Vol. 3, pp. 679-717.[2] On March 31, 2008, the district court issued its Order Granting Third Renewed Motion to Dismiss, finding that Plaintiffs' claims were untimely under the applicable statute of limitations. Rec., Vol. 4, pp. 961-969. *See also* Final Judgment, dated March 31, 2008 (entered on April 1, 2008). Rec., Vol. 4, p. 970. After the district court denied Plaintiffs' Motion to Alter and/or Amend the Judgment of Dismissal and Memorandum of Law in Support Thereof, Plaintiffs' Notice of Appeal and Corrected Notice of Appeal were filed on June 7 and 8, 2008, respectively. Rec. Vol. 4, pp. 989-1000; Rec., Vol. 5, pp. 1001-1029.

In this Court, after briefing by the parties, this case was submitted on April 1, 2009, after oral argument. *See* Court's Docket. The majority panel opinion was issued on July 7, 2009, vacating the judgment of the district court and remanding the case. *See* Court's Docket; and attached Appendix.

---

[2] The district court considered the City's dismissal motion as directed toward Plaintiffs' Fourth Amended Complaint Rec., Vol. 4, pp. 799-852.

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 2**

## STATEMENT OF FACTS

This is an appeal from a dismissal under Fed. R. Civ. P. 12(b)(6), and no factual evidence is in the record. The only "facts" under consideration in an appeal from dismissal under Rule 12(b)(6) for failure to state a claim are those presented in Plaintiffs' complaint. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). For Plaintiffs' factual allegations, *see* Plaintiffs' Fourth Amended Complaint, and the panel's decision, at pp. 1-2. *See* Rec., Vol. 4, pp. 801-852; Appendix, pp. 1-2.

## ARGUMENT AND AUTHORITIES

A.    Curb Ramps, Sidewalks and Parking Lots Are Not a Service, Program or Activity Under the ADA

Plaintiffs brought claims under Title II of the ADA, which states:

> . . . [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, **or be subjected to discrimination by any such entity.**

42 U.S.C. § 12132 (emphasis added); Rec., Vol. 4, p. 843 (Plaintiffs' Fourth Amended Complaint, ¶ 68, alleging discrimination against the City). The ADA does not define "services, programs, or activities." The first issue in this case is whether Plaintiffs' claims of alleged technical problems with City facilities stated a discrimination claim under the ADA.

The panel's consideration of this first issue begins as follows:

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 3**

> The immediate question is whether Title II of the ADA authorizes the plaintiffs' claims, that is, whether the City's curbs, sidewalks, and parking lots are a service, program, or activity within the meaning of Title II. For reasons we explain, we decide that they are.

Appendix, p. 4. The City respectfully asserts that, of the two available bases a plaintiff may assert as a violation under Title II of the ADA, the panel focused on the wrong basis.

Under 42 U.S.C. § 12132, there are two ways a city can violate the ADA: (1) deny access to a service, program or activity, or (2) commit an act of discrimination. Plaintiffs' Complaint alleged acts of discrimination. *See, e.g.,* Rec., Vol. 4, pp. 803, 843. The district court was concerned about Plaintiffs' discrimination claims in the context of the technical facility violations asserted, and ordered Plaintiffs to re-plead. *See* Rec., Vol. 3, p. 510 ("Plaintiffs' claims are for **discrimination**, however, not for violation of §§ 35.149-35.151 themselves.") (emphasis in original). To be consistent with the rest of the panel opinion addressing an "act of discrimination" (*i.e.,* when the City constructed a new facility or altered an existing one without making it accessible, thus triggering the statute of limitations analysis), Plaintiffs' claims are, at best, correctly viewed as attempted discrimination claims, not claims of denial to a service, program or activity. Other provisions in the ADA help to illustrate this difference. *See, e.g.,* 42 U.S.C. § 12146 (discrimination occurs when constructing a new transportation facility that is inaccessible); and 42 U.S.C. § 12147 (discrimination occurs when

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 4**

altering an existing transportation facility).  Even though those two particular provisions apply to public transportation, there is no reason to justify treating the City's obligations under § 12132 differently in this case.  *See, e.g., Voices for Independence (VFI) v. PaDOT,* 2007 WL 2905887 (W.D.Pa. 2007).

Here, however, the panel decision tied Plaintiffs' claims to the other basis for alleging a violation under § 12132, *i.e.,* that the City's curb ramps, sidewalks and parking lots are "services, programs or activities."  Appendix, pp. 4-8.  To do so, the panel's decision adopts the Ninth Circuit's decision in *Barden v. City of Sacramento,* 292 F.3d 1073, 1076 (9th Cir. 2002), *cert. denied,* 539 U.S. 958 (2003). *Id.,* p. 7.  In *Barden,* the Ninth Circuit determined that "anything a public entity does" constitutes a "service, program or activity" subject to ADA protection. *Id.*  While the panel decision did not reach *Barden's* same broad conclusion, it nevertheless held that the phrase "services, programs, or activities" includes curbs, sidewalks, and parking lots. *Id.*

The panel based its decision on this issue by reasoning that it is "within the ordinary, 'everyday meaning' of [service]" for a governmental entity to provide curbs, sidewalks and parking lot facilities.  Appendix, p. 7.  The problem with that rational is that it impermissibly extends the ADA beyond what even this Court has held to be subject to ADA protections.  For example, it is also a "normal function" of government to employ people and make arrests, yet this Court has held that

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 5**

employing people and making arrests are not covered by Title II because they are not "services, programs, or "activities." *Rosen v. Montgomery County*, 121 F.3d 154 (5th Cir. 1997) (arrests); *Hainze v. Richards,* 207 F.3d 795 (5th Cir.), *cert. denied,* 531 U.S. 959 (2000) (use of force during arrest). *See also Zimmerman v. Oregon DOJ,* 170 F.3d 1169, 1174 (9th Cir. 1999)(employment).

Further, by shifting the view of Plaintiffs' claims away from "acts of discrimination," the majority panel decision means that **all** curb ramps, sidewalks and parking lots are to be made accessible, whether or not they lead to any service, program or activity, in direct contravention of the implementing regulations supporting the ADA. *See, e.g.,* 28 C.F.R. § 35.150 (a)(1) (public entities do not have an obligation to make every facility accessible). The reasoning in the case *New Jersey Protection and Advocacy, Inc. v. Township of Riverside,* 2006 WL 2226332 (D.N.J. 2006) is instructive:

> In the context of maintaining sidewalks, however, the issue is not the exclusion of individuals from the activity of maintaining sidewalks, but rather the failure to maintain the sidewalks in a certain way. Moreover, the fact that the entity provides the service of maintaining a city facility does not itself necessitate the accessibility of that facility; such a reading would render superfluous the exception provided in 28 C.F.R. § 35.150(a)(1) that relieves entities of any obligation to make every facility accessible. Accordingly, this Court deigns to find that sidewalks are, in and of themselves, programs, services, or activities for the purpose of the ADA's implementing regulations.

*New Jersey Protection,* 2006 WL 2226332, at *3 (footnote omitted). The better reasoning is that facilities are just that: facilities. *Id. See also Geiger v. City of Upper Arlington,* 2006 WL 1888877, at *3.

The majority panel opinion referenced some ADA legislative history. Appendix, pp. 7-8. The legislative history of the ADA is illustrative in other ways, as well. In 1998, the Justice Department responded to an inquiry from a Member of Congress regarding whether the ADA requires the removal of snow and maintenance of sidewalks on a city street. According to the response provided by Bill Lann Lee, the Acting Assistant Attorney General for the Civil Rights Division:

> The focus of the [ADA's accessibility] requirement is access to services, programs, and activities, *as opposed to physical structures.* Therefore, there is no general requirement that compels a public entity to ensure that all sidewalks are free of snow.

*See* www.usdoj.gov/crt/foia/cltr191.txt.

The panel decision nonetheless imposes a new general requirement under the ADA, that the City must make all of its sidewalks, curb ramps, parking spaces, and other facilities accessible to all disabled persons, whether or not they meet the ADA's remedial purposes. The United States Supreme Court implicitly held that this onerous provision was valid **only when** a deprivation of a fundamental right would result from a lack of accommodation (in that case, a right of access to judicial services). *Tennessee v. Lane,* 541 U.S. 509, 533-34 (2004). The majority panel decision, therefore, conflicts with this fundamental right requirement.

**APPELLEE'S PETITION FOR REHEARING EN BANC** - **Page 7**

The panel decision means all existing public rights-of-way must be ADA compliant, contravening Justice Department regulations.   Under the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), alterations to primary function areas (where major activities take place) trigger a "path of travel" requirement, that is, a requirement to make the path of travel from the entrance to the altered area -- and telephones, restrooms, and drinking fountains serving the altered area -- accessible (Appendix A to 28 C.F.R. part 36, §4.1.6(2)).   The ADAAG contains no corresponding technical requirements for elements of the public rights-of-way such as sidewalks.   *See* Appendix A to 28 C.F.R. part 36, § 14 (reserved).

> Currently, the board's guidelines focus mainly on facilities on sites. While they address certain features common to public sidewalks, such as curb ramps, further guidance is necessary to address conditions unique to public rights-of-way.  Various constraints posed by space limitations at sidewalks, roadway design practices, slope, and terrain raise valid questions on how and to what extent access can be achieved.

*Final Report Public Rights-of Way Access Advisory Committee, dated January 2001.   See* www.access-board.gov/prowac/commrept/index.htm.   The majority panel opinion now requires new accessibility requirements on all city facilities in the public right-of-way, despite any physical property constraints.

Another problem is that there are no regulations applicable to public rights-of-way. *See* 36 C.F.R. 1191 (Final Rule) (standards for public rights-of-way are listed as "reserved"). Comment 14 sheds light on this intentional omission:

> Section 14 of the interim rule contained new construction provisions which were **not** intended to apply to existing facilities in the public rights-of-way. With respect to alterations, section 14 contained less stringent scoping and technical provisions for alterations to established rights-of-way where there is site infeasibility. . . . The guidelines contained in section 14 of the interim rule have been adopted by the State of Alabama and are being used to guide policies on pedestrian accessibility in the States of California, New Jersey and Florida.

63 Fed. Reg. 2, 013 (Jan. 13, 1998) (emphasis added). Texas is not included in those standards. The original regulation (at 36 C.F.R. Part 1191, Interim Final Rule) provided, in the definition for "Continuous Passage," the following:

> Although public sidewalks are subject to technical provisions similar to those that apply to accessible routes, public sidewalks are not required to meet guidelines for accessible routes unless the public sidewalk is used to provide the required accessible route connecting accessible elements on a site.

As a result, prior to the panel decision in this case, sidewalks in the public rights-of-way were not generally and globally required to be accessible. The panel decision now generally requires that all existing sidewalks in the public right-of-way be generally accessible, whether or not they lead, like the famous Alaskan bridge, "to nowhere."

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 9**

In other words, since Plaintiffs' discrimination claims are based upon alleged technical violations of regulations, rather than alleged exclusion from City services, programs or activities, Plaintiffs' allegations should have been held to fail to state a plausible claim under Fed. R. Civ. P. 8. *Bell Atlantic Corp. v. Twombly,* _____ U.S. _____, 127 S.Ct. 1955, *1965*, 1974 (2007). *See, e.g., Carrasquillo v. City of New York,* 324 F.Supp. 2d 428, 443 (S.D.N.Y. 2004) (plaintiffs' alleged difficulty in attending a prison activity, rather than exclusion from it, found insufficient to state an ADA claim); *Disabled in Action in Pennsylvania v. Southeastern Penn. Transp. Auth.,* 2006 WL 3392733 (E.D.Pa. 2006), at **11-29 (no private right of action to enforce agency regulations directed at public entity under ADA)[3]; and *Geiger v. City of Upper Arlington,* 2006 WL 1888877 at *1 (S.D. Ohio 2006) (ADA does not require municipalities to comply with structural specifications when making improvements to sidewalks).

Plaintiffs' discrimination claims did not comply with the remedial structure of the ADA, as set forth in the Justice Department's regulations. The regulations provide that for existing facilities (those that were constructed prior to the effective date of the ADA), a public entity is to operate "each service, program, or activity so that the service, program, or activity, **when viewed in its entirety**, is readily accessible to and usable by individuals with disabilities." *See* 28 C.F.R. § 35.150

---

[3] The Pennsylvania district court's decision was reversed on other grounds. 539 F.3d 199 (3rd Cir. 2008) (statute of limitations accrued upon completion of alterations).

<u>APPELLEE'S PETITION FOR REHEARING EN BANC</u> - **Page 10**

(a) (emphasis added).    The term facility means "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, **walks, passageways, parking lots,** or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 35.104 (emphasis added).  Plaintiffs did not allege that the City's **entire** program (or service or activity) of sidewalks was inaccessible, nor did they allege that they were excluded from or denied access to any City service, program, or activity such as the ability to vote, serve on a jury, attend a City Council meeting, or similar service, program, or activity.  Rec., Vol. 4, pp. 801-852. *Cf. Tennessee v. Lane,* 541 U.S. at 524-25.  As a result, the panel decision creates an issue of substantial importance because it precisely creates new potential liability in the Fifth Circuit, where none existed before, under the ADA and the Rehabilitation Act.

In sum, Plaintiffs' Amended Complaint should have been dismissed because Plaintiffs failed to allege that the City's entire "service, program or activity" of sidewalk, curb ramps, parking spaces, etc., were inaccessible.  Indeed, Plaintiffs alleged that **only parts** of these "programs, activities and services" of the City were inaccessible, which was insufficient to state a discrimination claim under either Title II of the ADA, or Part 35 of the Code of Federal Regulations, or § 504 of the Rehabilitation Act. *See,* 28 C.F.R. § 35.150.  The majority panel opinion

<u>**APPELLEE'S PETITION FOR REHEARING EN BANC**</u> - **Page 11**

tied Plaintiffs' discrimination claims to the wrong basis of liability in finding that City facilities are a "service, program or activity." The effect of the majority panel decision is to impose on the City potentially broad and extremely costly liability for **all** curb ramps, sidewalks and parking lots (and potentially all government infrastructure), not just those that provide an accessible route to a city service, program or activity. Every state and local government in the Fifth Circuit is affected by the panel's incorrect decision.

B.     <u>An Affirmative Defense Evidentiary Proof Burden is Not Appropriate in a Rule 12 Motion.</u>

The majority panel opinion determined that the two (2) year statute of limitations, applicable in Texas, is applicable to Plaintiffs' claims, and that accrual of those claims begins with construction of the alleged defective facility. Appendix, pp. 8-14. The City does not dispute those aspects of the panel opinion. The other issue in the panel opinion the City requests the en banc court to review, however, is where the panel held that it was the City's burden to establish the time when Plaintiffs' cause of action accrued. Appendix, pp. 14-15. The panel determined that a plea of limitations is an affirmative defense, thereby applying affirmative defense standards to the City's dismissal motion under Fed. R. Civ. P. 12 (b)(6) (which motion was filed instead of answering). *See* Appendix, pp. 14-15. That portion of the panel decision conflicts with other decisions of this Court, in

<u>**APPELLEE'S PETITION FOR REHEARING EN BANC**</u> **- Page 12**

the context of a motion to dismiss grounded on Rule 12, and en banc consideration is necessary to secure and maintain uniformity of this Court's decisions.

Prior decisions of this Court have held that a statute of limitations defense is appropriate in the context of a Rule 12 motion to dismiss. *See Jones,* 339 F.3d at 366 ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted). *See also Watts,* 720 F.2d at 1423 (statute of limitations may serve as a proper ground for dismissal under Rule 12(b)(6)). Going through the answer and summary judgment process to assert limitations defenses, therefore, is not always required. *Id.* The panel decision conflicts with *Jones* and *Watts.*

There are other problems with the majority panel's decision in this regard. First, Plaintiffs did not make this burden of proof argument to the district court, either in response to the City's dismissal motion or in their post-judgment motion to alter or amend judgment. *See* Rec., Vol. 4, p. 873; 989-995. Plaintiffs simply asserted that the statute of limitations issue is "an issue for summary judgment or trial, if at all, but it is not a basis upon which to dismiss the claim pursuant to Fed. R. Civ. P. 12.B (sic)." Rec., Vol. 4, p. 873.

Second, the cases cited by Plaintiffs in this appeal all were cases that did not review a dismissal motion under Rule 12, but instead reviewed district court

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 13**

rulings on summary judgment motions. *See U.S. v. Retirement Services Group,* 302 F.3d 425, 430 (5ᵗʰ Cir. 2002); *Jensen v. Snellings,* 841 F.2d 600, 606 (5ᵗʰ Cir. 1988); *Watts,* 720 F.2d at 1423. In other words, in each of Plaintiffs' cited cases, the defendants had answered the complaint, discovery had occurred, and motions for summary judgment were asserted, with evidence. *Id.* In this case, the panel decision overlooked the fact that the City has not filed an answer, nor did the City file any evidence as part of its Rule 12 dismissal motion. Rec., Vol. 3, pp. 679-717. Third, Plaintiffs' own allegations established that the discriminatory acts they asserted all occurred outside the two year limitations period. *See* Rec., Vol. 4, pp. 803-804; 815-841.

## CONCLUSION

Plaintiffs alleged discrimination based upon various technical violations without specifying when construction of those alleged defective facilities occurred. The panel decision unnecessarily decided that curb ramps, sidewalks and parking lots are "services, programs or activities" supporting Plaintiffs' discrimination claims. The ADA provides for an administrative remedy with the Justice Department for technical violations, rather than burdening the federal court system with litigation over sidewalk slopes or cracks, parking lot stripes, and other specific administrative infrastructure details related to ADA and Rehabilitation Act standards. En banc review of this case is warranted to address the far-reaching

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 14**

issues of first impression in this case, issues important to every state and local government in the Fifth Circuit, because the potential liability and fiscal ramifications of the panel's decision cannot be overstated. En banc review is also warranted to ensure uniformity of this Court's decisions under Fed. R. Civ. P. 12.

WHEREFORE, PREMISES CONSIDERED, Appellee City of Arlington, Texas, prays that the en banc Court rehear this case, affirm the district court's judgment, and award such other relief to which the City is justly entitled.

Respectfully submitted,

By: _____
      Edwin P. Voss, Jr.
      State Bar No. 20620300
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas 75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

      Denise V. Wilkerson
      Assistant City Attorney
      State Bar No. 20534100
City of Arlington
P.O. Box 90231
Arlington, Texas 76004-3231
817-459-6878 (Telephone)
817-459-6897 (Telecopier)

ATTORNEYS FOR APPELLEE
CITY OF ARLINGTON, TEXAS

**APPELLEE'S PETITION FOR REHEARING EN BANC - Page 15**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two paper copies of this document was served by certified mail, return receipt requested, upon Mr. Miguel M. de la O, de la O, Marko, Magolnick & Leyton, 3001 S.W. 3rd Avenue, Miami, Florida 33129, lead appellate counsel for Plaintiffs-Appellants, and upon Mr. John M. Nevins, The Nevins Law Firm, 7600 San Jacinto Place, Suite 200, Plano, Texas 75024, Plaintiffs-Appellants' local counsel, on the 17th day of July, 2009.

By: _____
    Edwin P. Voss, Jr.

## APPENDIX

Panel Opinions (majority, and concurring/dissenting), dated July 7, 2009
(as sent to the parties)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2009

Charles R. Fulbruge III
Clerk

No. 08-10630

———————

RICHARD FRAME; WENDELL DECKER; SCOTT UPDIKE; J N, a minor, by
his next friend and mother Gabriela Castro; MARK HAMMAN; JOEY SALAS

Plaintiffs - Appellants

v.

CITY OF ARLINGTON, A Municipal Corporation

Defendant - Appellee

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiffs are persons with disabilities who depend on motorized wheelchairs for mobility. They allege that the City of Arlington, by failing to make the City's curbs, sidewalks, and certain parking lots ADA-compliant, has violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act. The district court dismissed their complaint on the basis that their claims were barred by the applicable two-year statute of limitations. This appeal raises more than one issue of first impression—at least for this court. Initially, we must decide whether Title II of the ADA authorizes the plaintiffs' claims; specifically, whether the City's curbs, sidewalks, and parking lots constitute a service,

program, or activity within the meaning of Title II. Because we decide Title II authorizes the plaintiffs' claims, we next ask whether those claims are subject to a statute of limitations and, if so, when the claims accrued. We hold that the plaintiffs' claims are subject to a two-year statute of limitations, and that they accrued upon the City's completion of any noncompliant construction or alteration. We further conclude, however, that it was the City's burden to prove accrual and expiration of any limitations period. Because the district court erred in requiring the plaintiffs to prove that their claims had not expired, we must remand for further proceedings.

I.

This appeal comes to us from the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We therefore accept the factual allegations of the plaintiffs' complaint as true. *See, e.g., Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The plaintiffs filed their complaint in the district court on July 22, 2005, and thereafter amended it three times. Accordingly, for facts we refer to the plaintiffs' final complaint, as amended.

The plaintiffs are individuals who reside in Arlington who have mobility impairments that require that they use motorized wheelchairs. They point to more than one hundred curbs and poorly maintained sidewalks in Arlington that they allege make their travel impossible or unsafe. They also point to at least three public facilities lacking adequate handicap parking. Count 1 of the plaintiffs' complaint alleges violations of Title II of the ADA. *See* Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.* (prohibiting public entities from discriminating on the basis of disability).[1] Count 2 of the plaintiffs' complaint alleges violations

---

[1] Count 1 also alleges that the City has violated 28 C.F.R. § 35.150 by failing to implement a plan to transition its curbs, sidewalks, and parking lots to ADA compliance. 28 C.F.R. § 35.150 is a regulation promulgated by the Attorney General which requires that public entities develop transition plans to achieve compliance with Title II. *See* ADA Accessibility Guidelines, 28 C.F.R. § 35.150(d)(1) (requiring public entities to draft transition

No. 08-10630

of Section 504 of the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of disability. *See* Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The plaintiffs do not seek monetary damages; they only ask for an injunction requiring the City to bring its curbs, sidewalks, and parking lots into ADA compliance.

The City of Arlington moved to dismiss the complaint, asserting three grounds for dismissal: (1) that the claims were barred by the applicable two-year statute of limitations; (2) that the plaintiffs lacked standing to invoke Title II, the ADA Accessibility Guidelines, or Section 504 of the Rehabilitation Act; and (3) that the alleged facts did not state a legal claim of discrimination.

The district court granted the City's motion on the ground that the plaintiffs' claims were barred by the applicable two-year statute of limitations. The district court held that the plaintiffs' claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs' complaint did not point to dates of noncompliant construction or alteration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs' claims.

On appeal, the plaintiffs argue that their claims accrued on the date individual plaintiffs encountered a noncompliant barrier—not on the date the City completed a noncompliant construction or alteration. In the alternative, the plaintiffs argue that statutes of limitation do not apply to claims for injunctive relief; that the noncompliant curbs, sidewalks, and parking lots are continuing

---

plans). The district court dismissed, citing *Alexander v. Sandoval*, 532 U.S. 275 (2001), the plaintiffs' claims under 28 C.F.R. § 35.150 because it concluded the plaintiffs had no private right of action to enforce that regulation. *See id.* at 291 (implementing regulation, on its own, cannot create private right of action); *see also Iverson v. City of Sandusky*, 452 F.3d 94, 99-100 (1st Cir. 2006) (no private right of action to enforce 28 C.F.R. § 35.150); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913-15 (6th Cir. 2004) (same). The plaintiffs do not appeal that ruling and therefore we do not address it.

3

No. 08-10630

violations of the ADA that relieve them of the limitations bar; and that dismissal was improper because the City, and not the plaintiffs, had the burden to establish when the plaintiffs' claims accrued and the limitations period expired.

We consider each of the plaintiffs' arguments separately. But before we reach the limitations and accrual issues, we resolve whether Title II otherwise authorizes the plaintiffs' claims.

## II.

We review a Rule 12(b)(6) dismissal *de novo*. *See, e.g., Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2007). "The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (citing *Sloan v. Sharp*, 157 F.3d 980, 982 (5th Cir. 1998)). The interpretation of a statute is a question of law we also review *de novo*. *See, e.g., Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

## A.

The immediate question is whether Title II of the ADA authorizes the plaintiffs' claims, that is, whether the City's curbs, sidewalks, and parking lots are a service, program, or activity within the meaning of Title II. For reasons we explain, we decide that they are.

The ADA was passed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).[2] The focus of the instant appeal is on Title

---

[2] The ADA was modeled after the Rehabilitation Act, which prohibits recipients of federal funding from discriminating against persons on the basis of their disability. *See* 29 U.S.C. § 794 ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance."). The ADA expressly provides that the remedies, procedures, and rights available under the Rehabilitation Act also apply to the ADA, and thus jurisprudence interpreting either statute is applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000), *cert. denied*, 531 U.S. 959 (2000). For simplicity's sake, we refer only to the ADA claim.

4

II of the ADA, which prohibits public entities from discriminating against individuals on the basis of disability. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Title II is enforceable through a private cause of action, *see, e.g., Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002), and we have held that to make a prima facie case under Title II a plaintiff must show: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). There is no dispute that the City is a public entity, or that the plaintiffs here have qualifying disabilities.[3] There is, however, a dispute over whether curbs, sidewalks, and parking lots are encompassed within services, programs, or activities for which a public entity has liability under Title II.

Title II does not define "services, programs, or activities." Although we have not decided whether curbs, sidewalks, or parking lots fall within Title II's coverage, other circuits have interpreted "services, programs, or activities" broadly.

For example, the Ninth Circuit has specifically held that public sidewalks are a service, program, or activity within the meaning of Title II, by reasoning that "services, programs, or activities" can be construed as "'anything a public

---

[3] A public entity is "any [s]tate or local government" or "any department, agency, special purpose district, or other instrumentality of a [s]tate or [s]tates or local government." 42 U.S.C. § 12131. A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1).

entity does.'" *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (quoting *Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997), *aff'd*, 524 U.S. 206 (1998))). The focus of its inquiry, the court wrote, was not on whether a sidewalk can be characterized as a service, program, or activity, but on whether it is "'a normal function of a government entity.'" *Id.* (quoting *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999) (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44 (2d Cir. 1997))). The court concluded that maintaining public sidewalks is "without a doubt something that the [City] 'does,'" and public sidewalks, therefore, fall within the scope of Title II. *Id.* (quotation marks and citation omitted).

The Sixth Circuit has also broadly held that "the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). Although that court has not specifically decided that sidewalks constitute "services, programs, or activities" within the meaning of Title II, it has held that a plaintiff has a private cause of action under Title II to enforce 28 C.F.R. § 35.151, a regulation that establishes accessibility standards for curbs and sidewalks. *Ability Ctr. of Greater Toledo*, 385 F.3d at 906-07. The plaintiffs in that case complained that the City of Sandusky failed to comply with 28 C.F.R. § 35.151's accessibility standards when it replaced public curbs and sidewalks. *Id.* at 903. The court held that the plaintiffs had a private cause of action to enforce 28 C.F.R. § 35.151 because the regulation effectuates a mandate of Title II; Title II, it reasoned, not only prohibits intentional discrimination, but also requires that public entities make certain accommodations in the course of providing public services including, in that case, the maintenance of public sidewalks. *Id.* at 906-07.

6

No. 08-10630

Finally, the Second and Third Circuits have also read "services, programs, or activities" broadly. The Second Circuit has called the language "a catch-all phrase that prohibits all discrimination by a public entity, regardless of context," and has counseled against "hair-splitting arguments" over what falls within its reach. *Innovative Health Sys.*, 117 F.3d at 45. The Third Circuit has similarly held the language "is intended to apply to anything a public entity does." *Yeskey*, 118 F.3d at 171 (quotation marks and citation omitted).

It is not necessary for us to conclude, as the Ninth Circuit did, that Title II's "services, programs, or activities" includes "anything a public entity does." It is enough for present purposes that we agree that "services, programs, or activities" is at least broad enough to include curbs, sidewalks, and parking lots. Streets and sidewalks, as well as public parking areas, are reasonably understood to be services within the meaning of Title II. Absent a statutory definition or definitive statutory clue, a word "must be given its ordinary, 'everyday meaning.'" *See United States v. Hildenbrand*, 527 F.3d 466, 476 (5th Cir. 2008) (quoting *Watson v. United States*, 128 S.Ct. 579, 583 (2007)). Among the definitions for "service" is "a facility supplying some public demand." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1137 (11th ed. 2003). When, for instance, a public entity provides a sidewalk, or its accompanying curbs, or public parking lots, it provides "a facility supplying some public demand." Because providing curbs, sidewalks, and parking lots is a service within the ordinary, "everyday meaning" of that word, we hold that those facilities also constitute a "service" within the meaning of Title II.

This understanding is consistent with the legislative history of the ADA, which indicates that Congress envisioned that the ADA would require that local and state governments maintain disability-accessible sidewalks. *See* H.R.Rep. No. 101-485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 ("The employment, transportation, and public accommodation sections of this Act

7

would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets."). In the light of that legislative intent, along with other circuits' broad interpretation and our own appreciation of the plain meaning of the word services, we conclude that curbs, sidewalks, and parking lots are "services, programs, or activities" within the meaning of Title II. Accordingly, Title II authorizes the plaintiffs' claims.

### III.

Now we are prepared to address whether the plaintiffs' claims are nevertheless time-barred. Neither Title II of the ADA nor the Rehabilitation Act provides a limitations period, and the general federal statute of limitations does not apply to either statute.[4] We have previously held that the Texas two-year statute of limitations for personal injury claims applies in Title II cases filed in Texas federal courts. *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683-84 (5th Cir. 1998); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp. 2007). The district court therefore applied the correct statute of limitations. The plaintiffs argue, however, that the district court erred in ruling their claims accrued, and the statute began to run, on the date the City completed any noncompliant construction or alteration, instead of on the date the plaintiffs encountered a noncompliant barrier. The plaintiffs argue in the alternative that the statute of limitations does not apply to their claims because they seek only injunctive relief, and that noncompliant curbs, sidewalks, and parking lots are continuing violations of the ADA that relieve them of the limitations bar. We

---

[4] Title II adopts the remedies, procedures, and rights of the Rehabilitation Act. 42 U.S.C. § 12133. The limitations period in Rehabilitation Act cases is governed by 42 U.S.C. § 1988(a). That statute directs courts to apply federal law if it provides a limitations period or, if it does not, apply common law, as modified by state law, if it is not inconsistent with the Constitution or laws of the United States. *See, e.g., Holmes v. Texas A&M Univ.*, 145 F.3d 681, 683-84 (5th Cir. 1998) (citing *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992)). For Title II claims courts borrow the state statute of limitations from the most analogous state law claim.

will first address the plaintiffs' alternative arguments before we address the issue of accrual. We conclude that neither of the plaintiffs' alternative arguments succeeds here.

A.

First, we reject the plaintiffs' assertion that the statute of limitations does not apply to their claims because they seek only injunctive relief. The plaintiffs cite *Voices for Independence v. Pennsylvania Department of Transportation*, 2007 WL 2905887 (W.D. Pa.), a district court opinion that held a statute of limitations did not apply in an ADA case seeking only equitable relief. *Id.* at \*16-17. That opinion, in addition to being nonbinding, is also unpersuasive in the light of the fact that courts regularly apply statutes of limitation to claims under Title III of the ADA, for which only injunctive relief is available.[5] *See, e.g., Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054-56 (8th Cir. 2003) (applying Minnesota's six-year statute of limitations to Title III claim for injunctive relief); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 n.2 (9th Cir. 2002) (holding ongoing violation brought Title III claim for injunctive relief within California's one-year limitations period); *Sexton v. Otis Coll. of Art & Design Bd. of Directors*, 129 F.3d 127, 127 (9th Cir. 1997) (applying California's one-year statute of limitations to Title III claim for injunctive relief); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (applying Illinois's two-year statute of limitations to Title III claim for injunctive relief). We ourselves have recently held that statutes of limitations apply to § 1983 actions that seek only injunctive relief. *See Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). We decline to treat the plaintiffs' Title II claims differently.

---

[5] Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000, for which there is only injunctive relief. 42 U.S.C. § 12188(a); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (Title II of the Civil Rights Acts of 1964 provides injunctive relief only).

No. 08-10630

B.

We also reject the plaintiffs' characterization of noncompliant curbs, sidewalks, and parking lots as continuing violations that bring their claims within the limitations period. The continuing violations doctrine, which typically arises in the context of employment discrimination, relieves a plaintiff of a limitations bar if he can show a series of related acts to him, one or more of which falls within the limitations period. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). We hesitate to extend that doctrine here, where the alleged violations are not related. A noncompliant curb, for instance, bears no relation to a noncompliant parking lot on the other side of the City. Furthermore, the concept of a continuing violation plainly is inconsistent with our ultimate holding in this case–which is that the noncompliant construction of a sidewalk constitutes the triggering accrual event for statute of limitations purposes.

In sum, the two-year statute of limitations applies to the plaintiffs' Title II claims, and the continuing violations doctrine does not.

IV.

We now turn to the crucial issue in this appeal, which also is one of first impression: whether the plaintiffs' claims accrued on the date the City completed a noncompliant construction or alteration, or on the date the plaintiffs encountered a noncompliant barrier. The district court held that the plaintiffs' claims accrued, and the two-year limitations period began to run, on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Because the plaintiffs' complaint did not allege dates of noncompliant construction or alteration within the two years preceding its filing date, July 22, 2005, the district court dismissed the plaintiffs' claims.

For reasons we explain, we agree with the City that the plaintiffs' claims accrued upon the completion of a noncompliant construction or alteration.

10

No. 08-10630

However, we agree with the plaintiffs that the City had the burden to prove its affirmative defense that the limitations period had expired with respect to each of the plaintiffs' claims.

A.

Although we borrow the statute of limitations for plaintiffs' Title II claims from state law, federal law governs the claims' accruals. *Jenson v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988). A claim ordinarily accrues when a plaintiff has "'a complete and present cause of action'" or, stated differently, "when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (citations omitted)); *Walker*, 550 F.3d at 414. A statute may specify an accrual date by "explicit command." *See TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001). An accrual date may also be implied by "the structure and text of the particular statute." *Id.* at 27; *Disabled in Action of Penn. v. Southeastern Penn. Transp.*, 539 F.3d 199, 209 (3d Cir. 2008) (structure and text of 42 U.S.C. § 12147(a) imply that claims brought under Title II to compel ADA compliance at public transportation facilities accrue upon the completion of alterations to facilities). Title II, however, neither explicitly commands, nor implies, an accrual date for the plaintiffs' claims.

In the absence of either explicit or implicit statutory guidance, the plaintiffs urge us to apply the discovery rule, under which a claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action. *See, e.g., Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006). Under the discovery rule, the plaintiffs' claims would have accrued on the date individual plaintiffs encountered a noncompliant curb, sidewalk, or parking lot.

The City urges a rule that instead attaches accrual to the date a noncompliant construction or alteration is complete. That rule focuses on the discriminatory act, instead of discovery of the discriminatory effect. *See*

11

*Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) ("the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful" (citing *Del. St. Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). The City argues that attaching accrual to an individual plaintiff's discovery effectively would eliminate the applicability of any statute of limitations in like ADA cases, and would therefore subject municipalities to unlimited and continuing liability.

We think the City's argument is more persuasive. First, we note that there is no default federal discovery rule, and nothing requires that we apply it in this case. The United States Supreme Court has declined to adopt a general federal discovery rule, *TRW, Inc.*, 534 U.S. at 27 ("[L]ower federal courts 'generally apply a discovery accrual rule when a statute is silent on the issue.' But we have not adopted that position as our own." (quotation marks and citations omitted)); *see also id.* at 37 (Scalia, J., concurring) ("injury-discovery rule" is "bad wine of recent vintage"), and has limited its own use of the discovery rule to cases alleging fraud or medical malpractice. *Id.* (citing *Bailey v. Glover*, 21 Wall. 342, 347-50 (1875) (fraud); *Urie v. Thompson*, 337 U.S. 163, 169-71 (1949) (latent medical injury claims under Federal Employers' Liability Act); *Kubrick*, 444 U.S. at 120 (medical malpractice claims under Federal Tort Claims Act)). Of course, what fraud and medical malpractice share in common is the risk that their injuries cannot be discovered until some time after the injurious act has passed. For such latent injuries "the cry for a discovery rule is loudest." *See, e.g., Rotella v. Wood*, 528 U.S. 549, 555 (2000). Here, however, the alleged ADA violations are not latent. The fact that a sidewalk does not have a curb cut, for instance, is not hidden, and that an individual plaintiff may not encounter the sidewalk within the limitations period does not somehow make the missing curb cut concealed from potential plaintiffs. *See Disabled in Action of Penn.*, 539 F.3d at 217 n.16 (expressing hesitation in applying discovery rule to plaintiffs' Title II claim alleging city's subway station did not

include elevators because there was "nothing latent" about "the fact that newly renovated subway stations do not include elevators"). We therefore think it is inappropriate to apply a discovery rule here.

Second, although it is true that we have applied the discovery rule in ADA cases alleging employment discrimination, *see, e.g., Holmes*, 145 F.3d at 684; *Burfield v. Brown, Moore & Flint*, 51 F.3d 583, 589 (5th Cir. 1995), the discovery date in those cases coincided with the date of the alleged discriminatory act. In *Burfield*, for example, we held that the plaintiff's claim accrued on the date he received official notice of termination from his employer. *Burfield*, 51 F.3d at 589. In *Holmes*, we held that the plaintiff's claim accrued on the date he first received notice of termination, not on the date his employer later reaffirmed termination. *Holmes*, 145 F.3d at 684-85. Because the dates of the plaintiff's discovery and of the alleged discriminatory act (termination) were the same, those cases offer no rationale or guidance in the context of our case. Under the facts of those cases, for instance, both the plaintiff and his defendant-employer are aware that the limitations period will commence to run on a definite and singular date; it makes no difference either to the plaintiff or the defendant whether the discovery rule is applied because the result is the same. The discovery rule applied to the facts of this case, however, would forever deny the City a definite limitations period, because every future plaintiff's discovery of a noncompliant sidewalk would reset the limitations clock.

We come to our final point, and that is consideration of the policies underlying statutes of limitations. Statutes of limitations exist to protect defendants against stale claims. *See, e.g, Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) ("The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."). If the discovery rule were applied in

13

this case, hereafter every new potential plaintiff would constantly retrigger the public entity's liability for any noncompliant sidewalk, without regard to the publically known date of its completion. As the City has pointed out, the effect would be an evisceration of the statute of limitations defense in like ADA cases and unlimited exposure to liability. We think the wiser, more reasonable, and—in the words of *Order of Railroad Telegraphers*– more just approach, is a rule under which a public entity is liable for a noncompliant construction or alteration, but only during a definite and single limitations period.

Accordingly, we hold that the plaintiffs' claims accrued on the date the City completed the construction or alteration of any noncompliant curb, sidewalk, or parking lot. Under this rule, plaintiffs may hold a public entity liable for construction or alterations that do not comply with the ADA, but only within the time period specified by the applicable statute of limitations. This holding, however, is not the end of our analysis.

B.

Finally, we must consider whether outright dismissal of the complaint was improper, which depends upon who had the burden to establish the expiration of the limitations period. As a practical matter, the City, and not the plaintiffs, is in the best position to prove accrual. The plaintiffs could not point to dates of construction or alteration within the two years preceding the complaint's filing date, July 22, 2005, without having engaged in discovery with the City. Regardless, it is the City's burden to prove accrual. Under Federal Rule of Civil Procedure 8, the party that asserts an affirmative defense, including the expiration of a limitations period, bears the burden of proof. FED. R. CIV. P. 8 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations[.]"); *see also In re Hinsley*, 201 F.3d 638, 644-45 (5th Cir. 2000) (Under Texas law, "[a] party asserting limitations must establish the applicability of the limitations statute,

14

No. 08-10630

but must, as well, prove when the opponent's cause of action accrued[.]" (quoting *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App. 1984, writ refused n.r.e.)). The district court erred in burdening the plaintiffs with proving dates of construction or alteration. The district court's dismissal on the basis that the plaintiffs had not alleged accrual within the two years preceding July 22, 2005, was therefore improper. We therefore must vacate the judgment of dismissal and remand. The City will be required to establish its affirmative defense that the plaintiffs' claims have expired in a manner consistent with this opinion.

V.

To summarize, we hold that curbs, sidewalks, and parking lots constitute a service, program, or activity within the meaning of Title II of the ADA, and that the plaintiffs have established claims under Title II. Although the district court correctly held both that the plaintiffs' claims were subject to a two-year statute of limitations, and that they accrued on the date the City completed any noncompliant construction or alteration, it improperly burdened the plaintiffs with proving accrual within the two years preceding the filing of their complaint. We therefore VACATE the district court's judgment of dismissal and REMAND for such further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

15

No. 08-10630

PRADO, Circuit Judge, concurring in part and dissenting in part:

In holding that the plaintiffs' cause of action for their Americans with Disabilities Act ("ADA") claim accrues when the City completes the noncompliant construction, today's majority ignores the plain text of the statute, fails to acknowledge the conflict it creates with traditional rules of standing, and creates a rule at odds with the ADA's broad remedial purpose. I recognize the merits of the majority's position and sympathize with the majority's goal of ensuring that the City is not liable for stale claims. Nevertheless, I conclude that the better rule—and the one that best comports with the text and purpose of the ADA—is that a cause of action accrues when a plaintiff suffers an injury under the Act based on that plaintiff's actual (as opposed to conjectural) inability to traverse the noncompliant sidewalk or other facility. Therefore, with great respect for my colleagues, I must dissent.[1]

I.

The main issue in this case is the purely legal question of when a plaintiff's claim for injunctive relief under Title II of the ADA accrues.[2] There are two possibilities: the claim accrues either (1) when the City completes the inaccessible construction or alteration or (2) when the plaintiff actually encounters the noncompliant sidewalk or other facility.

In choosing the earlier accrual date, the majority makes a significant legal misstep: it fails to identify precisely when the plaintiffs *in this case* suffered an injury. That, to me, is the crux of the issue. Comporting with our general

---

[1] I concur in Parts I and II of the court's opinion.

[2] The majority concludes that a statute of limitations applies to a claim for injunctive relief under Title II of the ADA. *But see Voices for Independence v. Pa. Dep't of Transp.*, No. 06-78, 2007 WL 2905887, at *16 (W.D. Pa. Sept. 28, 2007) ("Defendants' statute of limitations defense is somewhat misplaced in light of the fact that Plaintiffs are seeking only equitable relief here."). Because I believe that even if a statute of limitations applies, it would begin to run only once the plaintiff actually encounters a noncompliant sidewalk or other facility, I merely assume the applicability of a statute of limitations to claims for injunctive relief. I would leave the full analysis of this issue for another day.

approach to claim accrual, a plaintiff's claim accrues when the plaintiff suffers an injury. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (noting that "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured'" (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). Under the text of the ADA provision at issue, an injury occurs when the plaintiff actually suffers exclusion from or denial of a service, program, or activity of a public entity because of a disability. *See* 42 U.S.C. § 12132. The majority's discussion of the discovery rule—which can postpone the running of a statute of limitations for a prior injury—is thus misplaced and unnecessary. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 214 (3d Cir. 2008) ("[T]he district court erred in applying the discovery rule to establish when [the plaintiffs'] claims accrued before first determining, per the terms of § 12147(a), when [the plaintiffs'] alleged injuries occurred. These inquiries are analytically distinct."). Instead, we should focus on when the plaintiffs in this case actually suffered an injury under the ADA.

As the majority notes, "[a] claim ordinarily accrues when a plaintiff has 'a complete and present cause of action' or, stated differently, when 'the plaintiff can file suit and obtain relief.'" Maj. Op. at 11 (quoting *Wallace*, 549 U.S. at 388). Only congressional guidance can allow us to deviate from this general rule. Indeed, the Supreme Court has admonished that "[w]hile it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). As the Supreme Court has further explained, "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not

17

become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

A plaintiff does not have a complete and present cause of action and cannot file suit and obtain relief until, inter alia, he or she has standing, which in turn requires the plaintiff to suffer an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, an essential question (and one I think the majority overlooks) is when these particular plaintiffs suffered an injury in fact.

One need only look to the text of the ADA to answer this question. The provision at issue, 42 U.S.C. § 12132, provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The focus of the statute is on an individual with a disability *being excluded from or denied* the benefits of services, programs, or activities. Although the City's wrongful construction is a general discriminatory act against all disabled people, a particular disabled person would not suffer an injury in fact until he or she encounters that discriminatory exclusion or denial. Simply put, there cannot be an injury under the ADA until the plaintiff actually suffers the exclusion or denial that the statute prohibits. Thus, to suffer an injury under Title II of the ADA, the qualified individual must have *actually encountered* the discrimination or *actually be deterred* from visiting the public accommodation because of exclusion from or denial of the benefits of a service, program, or activity. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has *actually* become aware of discriminatory conditions existing at a public accommodation, *and* is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." (emphasis

18

added)); *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) ("In the context of the ADA, awareness of discriminatory conditions, *and* the avoidance of a public accommodation because of that awareness, is injury in fact." (emphasis added)). A plaintiff would not have standing to bring suit against the City here unless that plaintiff had actually encountered the noncompliant sidewalk or other facility. Under the general rule for statutes of limitations, then, the claim does not accrue until this point.

Of course, Congress can specify precisely when the claim will accrue. The Third Circuit recently resolved a case involving a different provision of the ADA under such a scenario. *See Disabled in Action*, 539 F.3d 199. In that case, the public entity, the Philadelphia subway system, planned to make alterations to one of its subway stations but was not going to include an elevator. *Id.* at 205. A nonprofit group that seeks to eliminate discrimination against disabled people brought suit more than two years after learning of the subway system's plans but less than two years after the completion of the construction. *Id.* at 206. The parties agreed that the applicable statute of limitations was two years; thus, if the plaintiffs' cause of action accrued when they learned of the public entity's plans, their suit was untimely, but if it accrued at the completion of construction, then their suit fell within the statute of limitations. *Id.* at 208. The Third Circuit accepted the plaintiffs' argument that their claim did not accrue until the subway system had actually finished the construction without an elevator.[3] *Id.* at 209. The court based its decision on the language of the relevant statute, which provides that a public entity discriminates if it makes alterations to its

---

[3] The court did not discuss the issue in this case: whether the statute of limitations might accrue at some point *after* the public entity completes the construction. Indeed, the court's ruling allowed the plaintiffs' suit to proceed, so they did not need to seek the same rule that the plaintiffs do here.

No. 08-10630

transportation system that, *upon the completion of such alterations*, are inaccessible. *Id.* at 209-10 (citing 42 U.S.C. § 12147(a)). That is, the court construed the statute's language as stipulating when the injury occurred and therefore the cause of action accrued: "upon the completion of such alterations." *Id.* (citing 42 U.S.C. § 12147(a)).

Here, the plaintiffs assert a violation of a different portion of the ADA, 42 U.S.C. § 12132, which is the general prohibition against discrimination in the services, programs, or activities of a public entity. As the majority correctly explains, this includes the provision of accessible sidewalks. Based on a regulation implementing the ADA's mandates, a public entity must include curb cuts when undertaking new construction or alterations to a sidewalk. *See* 42 U.S.C. § 12134(a); 28 C.F.R. § 35.151(e)(1). Specifically, with respect to construction or alterations commenced after January 26, 1992, "Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway." 28 C.F.R. § 35.151(e)(1).

Notably, neither 42 U.S.C. § 12132 nor 28 C.F.R. § 35.151(e)(1) includes language suggesting that the injury occurs upon completion of the construction or alteration. Instead, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. One aspect of possible discrimination is a newly-constructed or altered sidewalk that does not include a curb cut. 28 C.F.R. § 35.151(e)(1). Much like the text of the statute informed the Third Circuit's decision in *Disabled in Action*, so too should the text of the ADA's general prohibition against discrimination inform our analysis. We should vary from the typical rule for claims accrual only for a particularly compelling reason, such as if the text or context of the statute at issue so compels. *See Bay Area Laundry*, 522 U.S. at 201. But that is not the

20

No. 08-10630

case here. Indeed, the policies behind the ADA, as I discuss below, counsel us to adhere to the general rule in this case.

Construing the plaintiff's injury as occurring when that plaintiff actually encounters a noncompliant sidewalk or other facility makes logical and legal sense. A plaintiff who simply *might* suffer an injury in the future based on the public entity's wrongful act does not have standing if the individual has no knowledge that he or she is being denied access because of a lack of a curb cut on a sidewalk. For example, a disabled person who lives on the other side of town from the noncompliant sidewalk, does not learn of the noncompliant sidewalk, and will never encounter this sidewalk has not suffered an injury in fact under the ADA and would not have standing to file suit. Standing is necessarily founded upon an actual injury, and in the context of 42 U.S.C. § 12132, an injury occurs when the disabled individual actually attempts to use (or is deterred from using) the noncompliant sidewalk. *See HIP (Heightened Independence & Progress), Inc. v. Port Auth. of N.Y. & N.J.*, No. 07-2982, 2008 WL 852445, at *4 (D.N.J. Mar. 28, 2008) ("The re-opening of the Grove Street PATH Station, alone, did not injure Plaintiffs. Only after Plaintiffs' members attempted to use the Grove Street PATH Station, and realized that it was not accessible to disabled persons, was an injury sustained.").

It follows that the actual denial of access constitutes a plaintiff's injury under the ADA; only then can a plaintiff have a "complete and present cause of action" to "file suit and obtain relief." That is, based upon the statutory prohibition in the text of the ADA, the actual—as opposed to conjectural—denial of access triggers the running of the statute of limitations, particularly when the plaintiff is seeking only injunctive relief. *See James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (noting that to have standing to seek injunctive relief, a plaintiff must show that he or she is "likely to suffer *future injury* by the

21

No. 08-10630

defendant and that the sought-after relief will prevent that future injury" (emphasis added)).

The majority proceeds, however, as if a disabled person suffers an injury—and therefore has a complete and present cause of action—once the City finishes the construction. According to the majority, the City's wrongful act triggers the statute of limitations. But 42 U.S.C. § 12132 focuses not on the City, but on a qualified individual who is being excluded from or denied the benefits of a service, program, or activity. Indeed, the majority acknowledges that to prove a prima facie case under Title II of the ADA, the plaintiff must show that, inter alia, he or she is *"being denied* the benefits of services, programs, or activities." Maj. Op. at 5 (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)) (emphasis added). The use of the gerund "being" signifies that the plaintiff must show that he or she is suffering a *present or future* injury to obtain injunctive relief. If the plaintiff never encounters the noncompliant sidewalk (or is not actually deterred from accessing it), then he or she is not *being* excluded from or denied the benefits of anything. *See HIP (Heightened Independence & Progress), Inc.*, 2008 WL 852445, at *4.

It is not as if the City's construction injured the plaintiff but the plaintiff did not understand the effects of the City's wrongful act or recognize the injury; instead, the plaintiff does not suffer an injury at all until he or she physically encounters, or actually learns of and is deterred from attempting to access, a noncompliant sidewalk. A lack of accessibility in the abstract is not enough for a disabled plaintiff to have standing, as that would be a conjectural harm. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *cf. Pickern*, 293 F.3d at 1136-37. Put differently, a denial of access is not a later consequence of an injury but rather is the injury itself. The plaintiffs here recognized this when they described the injury in their complaint as the "frequent[] deni[al of] the full and equal use and enjoyment of Arlington's pedestrian rights-of-way while

22

No. 08-10630

conducting daily activities." The complaint also details the specific barriers to access each plaintiff suffers every day and affirms the plaintiffs' desire to travel to various inaccessible destinations in the future.

The majority fails to recognize that the City's wrongful act and the plaintiffs' injury occur at different points in time. Although the majority rejects the Western District of Pennsylvania's analysis in *Voices for Independence* as unpersuasive, that decision correctly separated the wrongful act from the plaintiff's injury. Under the same facts as here, the court stated,

> While we agree with Defendants that it is acts of "new construction" and/or "alterations" which trigger a public entity's *duty* to install the requisite curb cuts and, while we further agree that the failure to install the required curb cuts constitutes *an act of discrimination* under Title II of the ADA, we conclude that Defendants' statute of limitations argument misses the mark. The issue of when a defendant's duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiff's injury arises or when his cause of action begins to accrue.

2007 WL 2905887, at *13. We should not conflate the City's wrongful act with the plaintiffs' injury stemming from that wrongful act. These are two separate and distinct concepts. Although a wrongful act and an injury often occur at the same time, they are not concurrent here. The City acts unlawfully when it builds a noncompliant sidewalk, but the individual plaintiffs are not injured until they actually suffer the barrier to access. Because there is a private right of action to vindicate one's rights under Title II of the ADA, and because a plaintiff must actually be excluded from or denied the benefits of the sidewalks or other facilities to suffer an injury and therefore have a cause of action under the text of the statute, we must separate the initial wrongful act from the plaintiff's injury.[4]   It follows that the date on which the City constructed a

_____

[4] Consider, for example, the Alabama Supreme Court's decision in *Ramey v. Guyton*, 394 So. 2d 2 (Ala. 1980). In that case, the defendant, a doctor, prescribed birth control pills to the plaintiff. *Id.* at 3. About a year after the plaintiff's visit to the doctor, she suffered a

23

No. 08-10630

sidewalk without a curb cut has no bearing on the accrual of the cause of action. The focus of our analysis should be on when the plaintiffs actually suffered the denial of access that the text of the ADA prohibits.

In sum, under our general rule for statutes of limitations, a plaintiff's claim does not accrue until he or she has a complete and present cause of action. A plaintiff does not have a complete and present cause of action unless the plaintiff has standing, which in turn requires the plaintiff to suffer an injury in fact. Under Title II of the ADA, a plaintiff does not suffer an injury in fact until he or she suffers actual exclusion from the inaccessible services, programs, or activities. It follows that the statute of limitations did not begin to run in this case until the plaintiffs actually encountered the noncompliant sidewalk or other facility.

II.

There is no compelling reason to deviate from our general rule for claim accrual in this case. In fact, the policy considerations cut in favor of ruling that the plaintiffs' request for injunctive relief to correct the ADA noncompliance accrues when the plaintiffs actually suffer the injury. In weighing the relevant policies in this case, the majority fails to consider the ADA's "broad mandate" and "sweeping purpose" of eradicating discrimination against disabled people in public accommodations. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 239 (5th Cir. 2005) (discussing the "ADA's broad prohibitions of discrimination in public services and accommodations").

---

stroke, which she claimed stemmed from the doctor's alleged negligent act in prescribing the birth control pills. *Id.* The Alabama Supreme Court ruled that the plaintiff's cause of action accrued on the date of her stroke, not on the date the doctor prescribed the birth control pills. *Id.* As the court stated, "the negligent act and the resultant harm did not coincide. Thus, the accrual date of the cause is delayed to the date when the injury occurred." *Id.* at 4. The same principle holds true here: the date of the wrongful act (improper construction) and the date of the plaintiffs' injury (encountering the inaccessibility) are not the same.

24

The majority focuses on the policies underlying statutes of limitations, but it wholly ignores both the policies underlying the ADA and the consequences of its decision. Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). With respect to curb cuts—which is the focus of the plaintiffs' complaint—Congress noted that "[t]he employment, transportation, and public accommodation sections of this Act would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." H.R. REP. NO. 101-485, at 84 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 367. By cutting off a plaintiff's ability to sue two years after the City completes the construction or alteration, the majority leaves many disabled people with no ability to vindicate their rights. In essence, the City can avoid all liability and maintain noncompliant sidewalks if it successfully avoids a lawsuit for two years after completing the construction or alteration. The City could then have what amount to "illegal" sidewalks in perpetuity. A newly disabled person, or a disabled person who just moves to the City, would have no recourse but to suffer through the ADA violation. This result runs directly counter to the ADA's sweeping remedial purpose. *See PGA Tour, Inc.*, 532 U.S. at 675.

Ruling that the cause of action accrues upon the completion of the construction places upon disabled people an affirmative duty to go out and find all noncompliant sidewalks just after construction or face having to live with sidewalks without curb cuts possibly forever (or at least until the City makes additional improvements or alterations to those sidewalks). As the court in *Voices for Independence* noted, "Defendants would have us place an affirmative burden on disabled persons such as the Plaintiffs to navigate and seek out defective curb cuts far and wide in order to file suit within two years of their installation. Such a result strikes this Court as unduly burdensome and

25

No. 08-10630

contrary to the remedial purposes of the statute." 2007 WL 2905887, at *15. Such a duty simply perpetuates the conditions that Congress condemned nineteen years ago when it enacted the ADA. As Congress noted,

> [H]istorically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.

42 U.S.C. § 12101(a)(2).

There are certainly policy considerations that cut the other way. If the court measures the limitations period from the time that any potential plaintiff encounters the ADA violation (i.e., suffers a denial of access), then the City could be subject to liability many years after constructing the sidewalk. Indeed, there would likely be no shortage of plaintiffs seeking to redress the ADA violation, thereby mitigating the effect of any statute of limitations for all practical purposes.

Two key facts, however, temper this concern. First, the City's wrongful conduct causes legal injuries to disabled people every day.[5] Of course, the statute of limitations might run as to any particular plaintiff who does not file suit within two years of encountering a noncompliant sidewalk. A statute of limitations should not, however, cut off a plaintiff's ability to redress a new injury to that plaintiff, even if that new injury originated from prior wrongful conduct. That is, as I discuss above, wrongful conduct does not become actionable until a plaintiff suffers an injury based on that conduct. Thus, the City's policy argument is less convincing because it is essentially asserting that

---

[5] The majority's discussion of the plaintiffs' continuing violation argument is circular. The majority rejects the plaintiffs' continuing violation theory largely based on its resolution of the plaintiffs' accrual argument. But in rejecting the accrual argument, the majority necessarily assumes that the plaintiffs are not suffering injuries each time they encounter a prohibited denial of access. The text of the ADA and the standing issues I discuss above support neither contention. Regardless, given the disposition I advocate, the court need not decide whether the continuing violation doctrine applies in this instance.

26

No. 08-10630

if it successfully evades litigation for two years, it is exempt from complying with the ADA altogether, even though disabled people continue to suffer injuries based on the City's wrongful conduct.

Second, the City can avoid all future liability by simply fixing the original unlawful construction. The City is not liable forever; it is responsible only for correcting the deficient construction or alteration.[6] Precisely defining when the injury occurs therefore answers, or at least outweighs, the majority's main policy concerns. The broad remedial goal of the ADA—the eradication of public discrimination against disabled people—therefore supports a ruling that a plaintiff suffers an injury when he or she actually encounters a prohibited denial of access to a public entity's services, programs, or activities.

---

[6] In balancing the consequences of our decision, I recognize that one implication of my analysis is that under the reasoning of the rule I propose, it is possible that a city might be liable for money damages many years after improperly constructing non-ADA compliant facilities. This case does not present that question, however, as the plaintiffs conceded at oral argument that they are seeking only injunctive relief. The court therefore need not reach that issue.

Regardless, monetary damages under the ADA are likely less common than injunctive relief, as they are available only for intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination."). It would require an extraordinary situation to find that a city intentionally discriminated against disabled people by failing to include curb cuts in the sidewalks. The purposes of monetary damages and injunctive relief in the ADA context are thus different: monetary damages compensate an individual plaintiff for a defendant's prior intentional act of discrimination, whereas injunctive relief vindicates the rights of a disabled person stemming from an ongoing injury. *See Texas v. Lesage*, 528 U.S. 18, 22 (1999) (per curiam) (criticizing this court for failing to distinguish between a retrospective claim for damages and a forward-looking claim for injunctive relief). Additionally, although the Supreme Court recently held that a plaintiff can receive monetary damages under the ADA for conduct that violates the Fourteenth Amendment, it left open whether damages are available for Title II violations that do not violate the Constitution. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). It might be that the imposition of monetary damages requires both intentional conduct and a violation of constitutional rights. Accordingly, the class of cases in which money damages will be available for ADA violations is likely quite small, tempering any concerns I might initially have had about a city's ongoing fiscal liability.

27

No. 08-10630

We must choose between two options, neither of which is ideal. Either we must give stronger credence to the policies behind statutes of limitations, thereby eschewing the broad goals of the ADA, or we must forego the City's desire to strictly cut off its liability to allow disabled people to vindicate their rights. The majority chooses the former; the text of the ADA, the analysis of when a plaintiff actually suffers an injury, and the purposes behind the Act compel me to choose the latter.

### III.

This case presents us with a difficult choice. With immense respect for the majority's position, I think that the better, legally correct, and more pragmatic answer is to allow a plaintiff to bring suit for injunctive relief within two years of his or her injury, that is, within two years of when the plaintiff was unable to access or was deterred from attempting to access a noncompliant sidewalk or other facility. The contrary result countenances a public entity's decision to construct or alter a sidewalk without curb cuts, allowing this ADA violation to go uncorrected forever so long as no one brings suit within two years of the construction or alteration.

Implicit in the majority's decision is an assumption that, most of the time, a plaintiff will exist who can file suit within two years of the City's completion of the construction or alteration. Although that may be true in many situations, it is not always the case. This fact undermines the majority's conclusion, demonstrating the negative consequences stemming from the court's ruling.

Consider the following hypothetical: Suppose that a city is developing an area of town where no one lives. In the initial stages of the development, the city constructs sidewalks but mistakenly fails to include curb cuts. Two years and one month later, the city completes the development and people begin moving in. At that point, a disabled person would suffer an injury based upon his or her inability to access the sidewalks and navigate around the neighborhood. Given

28

that there was no one who could have asserted an ADA claim within two years of the completion of the construction—because a disabled person would not have standing until he or she moves into the development and actually suffers a denial of access—no one would ever be able to sue to seek redress for this clear ADA violation. Such a result does not square with the conception of an "injury" under Title II of the ADA or Congress's goal in enacting this statute. We do not want to foreclose a lawsuit from an individual acting as a "private attorney general" to require the city to *correct* the ADA noncompliance. The city should not be "off the hook" for continued ADA compliance two years after completing the construction merely because there were no possible plaintiffs within that period. Moreover, the city can cut off its liability by simply curing the defect. Thus, carefully defining when the plaintiff suffers an injury for purposes of injunctive relief reconciles the problems inherent in the majority's analysis.

Because the majority's decision is inconsistent with the general rule of claim accrual, the conception of an injury under the text of the ADA for purposes of standing, and the broad goals of the Act, I respectfully dissent.