IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Nos. 08-10630, 08-10631

_____

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,              Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                       Defendant-Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

_____

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF**

> Edwin P. Voss, Jr.
> State Bar No. 20620300
> BROWN & HOFMEISTER, L.L.P.
> 740 East Campbell Road, Suite 800
> Richardson, Texas  75081
> 214-747-6100 (Telephone)
> 214-747-6111 (Telecopier)
>
> Denise V. Wilkerson
> Assistant City Attorney
> State Bar No. 20534100
> City of Arlington
> P.O. Box 90231
> Arlington, Texas 76004-3231
> 817-459-6878 (Telephone)
> 817-459-6897 (Telecopier)
>
> Attorneys for Appellee
> City of Arlington

April 1, 2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

Nos. 08-10630, 08-10631

———————————————

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,     Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                    Defendant-Appellee.

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case.  These representations are made in

order that the Judges of this Court may evaluate possible disqualification or

recusal.

| Name | Interest |
|---|---|
| Richard Frame | Plaintiff-Appellant |
| Wendell Decker | Plaintiff-Appellant |
| Scott Updike | Plaintiff-Appellant |
| JN, by his next friend and mother, Gabriela Castro | Plaintiff-Appellant |
| Mark Hamman | Plaintiff-Appellant |
| Joey Salas | Plaintiff-Appellant |

i

| | |
|---|---|
| Miguel M. de la O | Trial and Appellate Counsel for Plaintiffs-Appellants |
| Charles D. Ferguson | Trial Counsel for Plaintiffs-Appellants |
| John M. Nevins | Local Trial Counsel for Plaintiffs-Appellants |
| John L. Freeman | Former Local Trial Counsel for Plaintiffs-Appellants |
| City of Arlington, Texas | Defendant-Appellee |
| Edwin P. Voss, Jr. | Trial and Appellate Counsel for Defendant-Appellee |
| Denise V. Wilkerson | Trial and Appellate Counsel for Defendant-Appellee |
| Kent S. Hofmeister | Trial Counsel for Defendant-Appellee |
| Sidney C. Stahl | Mediator |
| United States of America | *Amicus Curiae* supporting Appellants |
| Thomas E. Perez, Assistant Attorney General | Counsel for *Amicus Curiae* United States, Department of Justice |
| Samuel R. Bagenstos, Principal Deputy Assistant Attorney General | Counsel for *Amicus Curiae* United States, Department of Justice |
| Jessica Dunsay Silver, Assistant U.S. Attorney | Counsel for *Amicus Curiae* United States, Department of Justice |
| Dirk C. Phillips, Assistant U.S. Attorney | Counsel for *Amicus Curiae* United States, Department of Justice |
| American Association of Retired Persons ("AARP") | *Amicus Curiae* supporting Appellants |

ii

| | |
|---|---|
| Mary Ellen Signorille | Counsel for *Amicus Curiae* AARP |
| Julie Nepveu | Counsel for *Amicus Curiae* AARP |
| Michael Schuster | Counsel for *Amicus Curiae* AARP |
| Texas Municipal League ("TML") | *Amicus Curiae* supporting Appellee |
| International Municipal Lawyers Association ("IMLA") | *Amicus Curiae* supporting Appellee |
| Scott N. Houston | Counsel for *Amicus Curiae* TML and IMLA |

 /s/ Edwin P. Voss, Jr.
EDWIN P. VOSS, JR.
Counsel of Record for Defendant-Appellee

# **TABLE OF CONTENTS**

Certificate of Interested Parties ................................................................ i

Table of Contents ......................................................................... iv

Table of Authorities ........................................................................ v

I.  Statement of the Issues ............................................................. 1

II.  Statement of Appellate Proceedings ......................................... 6

III.  Statement of Facts ..................................................................... 7

IV.  Summary of Argument ............................................................... 7

V.  Argument and Authorities - The District Court Correctly Granted the City's Motion to Dismiss ......................................................... 8

    A.  Appellate Standard of Review ............................................ 8

    B.  The Legal Standard for Motions to Dismiss Under Rule 12 ............... 9

    C.  Plaintiffs' Discrimination Claims – Back to Basics ........................... 9

    D.  Plaintiffs' Alleged Violations of the ADA or Rehabilitation Act Occurred Prior to July 22, 2003, and Were Barred by the Statute of Limitations ....................................................... 29

    E.  The Affirmative Defense Requirement is Not Applicable ................ 31

    F.  Plaintiffs Lack Legal Standing to Bring This Action ....................... 33

    G.  Plaintiffs Failed to Establish Discrimination .................................. 34

    H.  The Arguments by *Amicus Curiae* Are Not Controlling .................. 36

        1.  Brief by *Amicus Curiae* United States of America .................. 36

        2.  Brief by *Amicus Curiae* AARP ............................................. 40

VI.  Conclusion .................................................................................. 42

Certificate of Service ...................................................................... 46

Certificate of Compliance .............................................................. 47

Certificate Regarding Privacy Redactions and Virus Scanning ............................. 48

# TABLE OF AUTHORITIES

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004)......................................................................................17, 18

*Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F.Supp.2d 1357 (S.D. Fla. 2001)..............................................................................................21, 25

*Alford v. City of Cannon Beach*, 2000 WL 33200554 (D. Or., Jan. 17, 2000) .......26

*Am. Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124 (11th Cir. 2010)..............................................................................................16, 40

*Ass'n For Disabled Ams. v. City of Orlando*, 153 F.Supp.2d 1310 (M.D. Fla. 2001)......................................................................................20

*Aswegan v. Bruhl,* 113 F.3d 109 (8th Cir.), *cert. denied,* 522 U.S. 956 (1997) .......27

*Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002), *cert. denied,* 539 U.S. 958 (2003) ................................................................................passim

*Barnett v. U.S. Air, Inc.*, 157 F.3d 744 (9th Cir. 1998) ...........................................12

*Brown v. County of Nassau*, 736 F.Supp.2d 602 (E.D.N.Y. 2010) ........................20

*Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996), *reh'g denied,* 91 F.3d 299 (7th Cir. 1996) ...................................................................................27

*Canfield v. Isaacs,* 523 F.Supp.2d 885 (N.D. Ind. 2007) ......................................28

*Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994).....................................................34

*Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 970 F. Supp. 352 (S.D.N.Y. 1997)...............................................................................19

*Coolbaugh v. Louisiana,* 136 F.3d 430 (5th Cir. 1998)...........................................40

*Copeland v. Wasserstein, Perella & Co., Inc.,* 278 F.3d 472 (5th Cir. 2002)...........9

*Deck v. City of Toledo*, 56 F.Supp.2d 886 (N.D. Ohio 1999) .........................17, 18

*Disability Advocates, Inc. v. Paterson,* 598 F.Supp.2d 289 (E.D.N.Y. 2009) ........28

*Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth.,* 539 F.3d 199 (3rd Cir. 2008) ............................................................................41

*Everson v. Board of Educ.*, 330 U.S. 1 (1947) ..................................36, 37

*Filush v. Town of Weston,* 266 F.Supp.2d 322 (D. Conn. 2003)............................27

*Florida v. United States Dep't of Health & Human Services,* 2011 WL 285683, at *21-22 (S.D. Fla. Jan. 31, 2011) ......................................................41

*Frame v. City of Arlington*, 616 F.3d 476 (5th Cir. 2010), *vacated,* 632 F.3d 177 (5th Cir. 2011) ..................................................................passim

*Greer v. Richardson Indep. Sch. Dist.*, ___ F.Supp.2d ___, 2010 WL 3025530 (N.D. Tex., Aug. 2, 2010) ....................................21, 22, 24, 27

*Hale v. King,* 624 F.3d 178 (5th Cir. 2010) ............................................35

*Holmes v. Texas A&M University,* 145 F.3d 681 (5th Cir. 1998) ........................9, 31

*Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1124 (D. Or. 1998)..............................................................................25

*Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997)...............................................................................38

*Iverson v. City of Boston,* 452 F.3d 94 (1st Cir. 2006)............................................26

*Jensen v. Snellings,* 841 F.2d 600 (5th Cir. 1988)..................................................32

*Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998) ........................................38

*Jones v. ALCOA, Inc.,* 339 F.3d 359 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161 (2004)..............................................................................32, 33

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045 (5th Cir. 1982)............................................................................7

*Kinney v. Yerusalim*, 9 F.3d 1067 (3d Cir. 1993) ..................................................18

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008)..............................................5, 7

*Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383 (5th Cir. 2008)..........................8

*Loye v. County of Dakota,* 647 F.Supp.2d 1081 (D. Minn. 2009), *aff'd.*, 625 F.3d 494 (8th Cir. 2010) .................................................................................28

*Motient Corp. v. Dondero*, 529 F.3d 532 (5th Cir. 2008)...........................................9

*New Jersey Protection & Advocacy, Inc. v. Township of Riverside,* No. 04-5914, 2006 WL 2226332 (D.N.J. Aug. 2, 2006)..................................................27

*Pace v. Bogalusa City School Board,* 403 F.3d 272 (5th Cir. 2005).........................13

*Parker v. Universidad de P.R.*, 225 F.3d 1 (1st Cir. 2000) ..............................23, 24

*Pascuiti v. New York Yankees*, 87 F.Supp.2d 221 (S.D.N.Y. 1999).......................20

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ...................................25

*Reickenbacker v. Foster,* 274 F.3d 974 (5th Cir. 2001)............................................40

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001)......................................................19

*Soto v. City of Newark,* 72 F.Supp.2d 489 (D.N.J. 1999)........................................28

*Speciner v. NationsBank, N.A.*, 215 F.Supp.2d 622 (D. Md. 2002) .......................17

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...............................................21, 22, 28, 35

*Thompson v. Davis,* 295 F.3d 890 (9th Cir. 2002), *cert. denied,* 538 U.S. 921 (2003)..........................................................................................................28

*U.S. v. Retirement Services Group,* 302 F.3d 425 (5th Cir. 2002) ..........................32

*United States v. Martinez,* 263 F.3d 436 (5th Cir. 2001).........................................34

*United States v. Morrison*, 529 U.S. 598 (2000) .....................................................41

*Villanueva v. CNA Ins. Co.,* 868 F.2d 684 (5th Cir. 1989)......................................34

*Virginia v. Sebelius*, 728 F.Supp.2d 768 (E.D. Va. 2010)......................................42

*Watts v. Graves,* 720 F.2d 1416 (5th Cir. 1983)...............................................32, 33

*Webb v. Investacorp., Inc.,* 89 F.3d 252 (5th Cir. 1996) ........................................34

*Yeskey v. Com. of Pa. Dep't of Corrections*, 118 F.3d 168 (3d Cir. 1997) .............38

*Zimmerman v. Oregon Dep't. of Justice,* 170 F.3d 1169 (9th Cir. 1999), *cert. denied,* 531 U.S. 1189 (2001)...............................................................................27

*Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041 (9th Cir. 1999) ................12, 13

**Statutes**

28 C.F.R. § 35.149 ........................................................................................39

28 C.F.R. § 35.150 ....................................................................................passim

28 C.F.R. § 35.151 ...........................................................................14, 16, 18, 29

28 C.F.R. § 36.304 ........................................................................................24

28 C.F.R. part 35, Appendix A ........................................................................24

28 C.F.R. part 36, § 14, Appendix A ................................................................21

29 U.S.C. § 794 .............................................................................................9

42 U.S.C. § 12101 .........................................................................................14

42 U.S.C. § 12131 .........................................................................................13

42 U.S.C. § 12132 .........................................................................................10

42 U.S.C. §§ 12131 *et seq.*.............................................................................9

Fed. R. App. P. 28 .....................................................................................6, 34

Fed. R. App. P. 32 .........................................................................................47

Fed. R. Civ. P. 12 ....................................................................................passim

Tex. Civ. Prac. & Rem. Code, § 16.003 ............................................................31

**Other Authorities**

http://en.wikipedia.org/wiki/Americans_with_Disabilities_Act_of_1990
(cite last visited March 29, 2011)...................................................................43

Case: 08-10630   Document: 154-1   Page: 10   Date Filed: 04/01/2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

Nos. 08-10630, 08-10631

———————————————————

RICHARD FRAME; WENDELL DECKER;
SCOTT UPDIKE; JN, by his next friend and mother
Gabriela Castro; MARK HAMMAN; JOEY SALAS,        Plaintiffs-Appellants,

v.

CITY OF ARLINGTON,                                      Defendant-Appellee.


### APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF

Pursuant to the Order of this Court, dated January 26, 2011, directing this case to be reheard *en banc*, Defendant-Appellee City of Arlington, Texas (hereafter "the City," "Appellee" or "Defendant," where appropriate) respectfully submits the following supplemental brief.

### I.

### STATEMENT OF THE ISSUES

On page 1 of the Supplemental *En Banc* Brief of Appellants, filed February 28, 2011 ("Appellants' Supplemental Brief"), Appellants Richard Frame, Wendell Decker, Scott Updike, J.N., a minor, by his next fried and mother, Gabriela Castro, Mark Hamman, and Joey Salas ("Appellants" or "Plaintiffs"), attempt to add a new and phantom issue in this case, as follows:

> **Whether the trial court**, consistent with Congress' intent, Department of Justice ("DOJ") interpretations, and numerous precedents, **correctly ruled that the sidewalks of Arlington, Texas are a "service, program, or activity"** within the meaning of Title II of the ADA.

Appellants' Supplemental Brief, p. 1 (bold emphasis added).  This issue is new because it has never before been asserted in this appeal that the district court ruled in favor of Plaintiffs.  *See, generally*, Initial Brief of Appellants, filed October 3, 2008; Reply Brief of Appellants, filed December 9, 2008; Appellants' Petition for Rehearing *En Banc*, filed July 22, 2009; Appellants' Response to Appellee's Petition for Rehearing *En Banc*, filed August 28, 2009; and Appellants' Petition for Rehearing En Banc, filed September 7, 2010.  This issue is a phantom because **the district court did not rule that the City's sidewalks are a "service, program, or activity."**  *See* Record on Appeal ("Rec."), Vol. 4, pp. 961-970 ("Order Granting Third Renewed Motion to Dismiss" and "Final Judgment"); Rec. Vol. 5, p. 1015 ("Order Denying Motion to Alter or Amend the Judgment").[1]

Throughout Appellants' Supplemental Brief, Plaintiffs repeatedly attempt to mislead this Court about the district court's ruling in this case: (1) ". . . though [the trial court] held that providing and maintaining sidewalks is a City service and thus subject to the provisions of Title II." Appellants' Supplemental Brief, p. 2; (2) ". . .

---

[1]  Both orders are referenced because Plaintiff's (sic) Notice of Appeal, filed June 17, 2008, appealed from the District Court's Order Denying Motion to Alter or Amend the Judgment, and Plaintiff's (sic) Corrected Notice of Appeal, filed June 18, 2008, appealed from the District Court's Order Granting Third Renewed Motion to Dismiss and Final Judgment.  *See* Rec. Vol. 5, pp. 1016 -1019.

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 2**

[the trial court's] conclusion that all of the City's sidewalks are a 'program, service or activity' subject to regulation by Title II." *Id.*; (3) ". . . the trial court's holding that providing and maintaining sidewalks is a service under Title II." *Id.*; (4) ". . . Plaintiffs . . . now find themselves defending the trial court's ruling on this issue." *Id.*, p. 3; (5) "The trial court correctly held that Title II requires the City to construct accessible sidewalks, regardless of where they lead." *Id.*, p. 4; and (6) ". . . Plaintiffs urge this Court to [affirm the trial court's] ruling that sidewalks are services within the meaning of Title II." *Id.*, at p. 17. Not surprisingly, Plaintiffs do not cite any part of the record, or any language from the district court's Orders, to support their belief that the district court ruled in their favor on this issue. *Id.* The City objects to Plaintiffs' attempt to misstate the record in this case, and this Court should soundly reject that attempt.

Plaintiffs' next stated issue concerns whether the district court committed error in determining that the accrual of Plaintiffs' cause of action occurred when the City's sidewalk, curb ramp, or other facility was constructed or altered, rather than when the allegedly inaccessible facility was allegedly encountered by Plaintiffs after more than two (2) years after the construction but within the limitations period prior to when suit was filed. *Compare* Appellants' Supplemental Brief, p. 1, *with* the District Court's Order Granting Third Renewed Motion to Dismiss, Rec., Vol. 4, p. 967 ("Although Plaintiffs allege that they have

attempted to use these roadways and sidewalks during the limitations period, their discrimination cause of action accrued when the improvements took place."). Included in Plaintiffs' issue, however, is the assumed premise that an allegation of "inaccessible sidewalks and streets" (the technical deficiencies alleged in the Fourth Amended Complaint) is sufficient in and of itself to state a claim under Title II. Appellants' Supplemental Brief, p. 1. Plaintiffs' attempt to artfully slip that assumed premise into their stated issue in this appeal should be rejected, since it runs contrary to Plaintiffs' pleadings in this case.

This case is brought by seven (7) individual Plaintiffs, and is not a class action lawsuit. *See, generally*, the Fourth Amended Complaint. Rec., Vol. 4, pp. 801-852. Plaintiffs allege harm arising out of their alleged use or attempted use of certain "defective" streets, sidewalks and other City facilities in Arlington; Plaintiffs do not complain about "all of the City's sidewalks," or assert that "all sidewalks must be accessible" in Arlington. *Compare* Rec., Vol. 4, pp. 807-842, *with* Appellants' Supplemental Brief, pp. 3 and 6. Indeed, it is Appellants' stated position now that, in the City, "all sidewalks must be [ADA] compliant." Appellants' Supplemental Brief, p. 12. Such a broad, overreaching attempt to re-cast this case, and Plaintiffs' pleadings, in a manner that reads differently than what was pleaded to the district court should be rejected by this Court, particularly where this appeal arises out of the district court's dismissal under Rule 12(b)(6) of

the Federal Rules of Civil Procedure (in which the focus is only on whether a plaintiff has stated a claim for relief in the complaint). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (in review of motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), court accepts the factual allegations of the plaintiff's complaint as true).

Contrary to the issues presented in Appellants' Supplemental Brief, at p. 1, the City submits that the issue presented by this appeal is correctly stated as follows:

> Whether the district court was correct in dismissing Plaintiffs' claims under the ADA and the Rehabilitation Act for failure to state a claim upon which relief could be granted, under Rule 12(b)(6), by ruling that Plaintiffs' claims were barred by the applicable statute of limitations because Plaintiffs' claims accrued when the subject facility improvements were constructed, which Plaintiffs alleged occurred outside of the applicable limitations period.

*See* Rec., Vol. 4, pp. 967-68. The City asserts that the district court's judgment should be affirmed on that ground. The City further asserts that the district court's judgment should be affirmed on the other grounds asserted in its dismissal motion, as well: (1) Plaintiffs lacked standing to bring their various claims; (2) Plaintiffs' allegations do not establish discrimination under the ADA or Rehabilitation Act; and (3) application of the ADA and Rehabilitation Act to the City in the manner sought by the Plaintiffs renders the ADA and Rehabilitation Act unconstitutional.

APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 5

**II.**

**STATEMENT OF APPELLATE PROCEEDINGS**

Plaintiffs' statement of appellate proceedings is somewhat correct as to the recitation of the procedural history of this case, but inappropriately contains Plaintiffs' argument regarding the prior panel decisions, and asserts that this appeal concerns Plaintiffs' complaint against "all of the City's sidewalks." *See* Appellants' Supplemental Brief, pp. 1-3; Fed. R. App. P. 28(a)(6). For example, Plaintiffs assert that the district court ruled that: (1) "providing and maintaining sidewalks is a City service," (2) "all of the City's sidewalks are a 'program, service or activity,'" and (3) "providing and maintaining sidewalks is a service under Title II." Appellant's Supplemental Brief, p. 2. To reiterate from pages 2-3 of this supplemental brief, above, the district court made no such rulings. Rec., Vol. 4, pp. 961-970; Vol. 5, p. 1015. Notwithstanding Plaintiffs' statement, the appellate proceedings in this case are discernable from this Court's Docket.

The majority opinion for the panel of this Court that issued the second opinion is this appeal accurately summarized the allegations and procedural posture of this case. *See Frame v. City of Arlington*, 616 F.3d 476, 480-81 (5th Cir. 2010), *vacated,* 632 F.3d 177 (5th Cir. 2011). This is an appeal from the grant of the City's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.

## STATEMENT OF FACTS

The only "facts" under consideration in an appeal from dismissal under Rule 12(b)(6) for failure to state a claim are those presented in Plaintiffs' complaint. *Lane*, 529 F.3d at 557; *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). For Plaintiffs' factual allegations, *see* the Fourth Amended Complaint. Rec., Vol. 4, pp. 801-852.

## IV.

## SUMMARY OF ARGUMENT

The questions presented here concern whether the pleadings of the individual Plaintiffs state a privately enforceable claim under the Americans with Disabilities Act ("ADA"). Stated another way: When does a crack in a sidewalk or a missing curb ramp create an ADA cause of action for an individual in a wheelchair against a city? By this lawsuit, Plaintiffs attempt to impose technical ADA regulation standards on sidewalks and other structures in the public right-of-way, where no City services, programs, or activities are offered, without a statute of limitations ever applying to such claims. Neither the ADA nor the Rehabilitation Act authorize such attempt.

While the City has a duty to provide accessibility to its programs, and a duty to construct accessible facilities when altering existing facilities or constructing

new ones, Plaintiffs' complaint did not include a single specific allegation of a construction or alteration date triggering the City's duty within the applicable limitations period. Plaintiffs also did not allege a problem with overall program accessibility vis-à-vis existing facilities. It is undisputed that the applicable statute of limitations for ADA and Rehabilitation Act claims is two (2) years in Texas. Plaintiffs failed to allege any ADA violation by the City of Arlington that occurred within two (2) years prior to filing Plaintiffs' complaint. Plaintiffs also failed to allege an inability to access a City program due to deficient existing facilities within the limitations period. As a result, Plaintiffs' claims under the ADA and the Rehabilitation Act were untimely. Plaintiffs have also waived, in this *de novo* appeal, any issue as to the other grounds asserted in the City's Rule 12(b)(6) dismissal motion. The district court's judgment should be affirmed.

## V.

### ARGUMENT AND AUTHORITIES

### THE DISTRICT COURT CORRECTLY GRANTED THE CITY'S MOTION TO DISMISS

A.    Appellate Standard of Review.

In an appeal from a judgment of dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court's review is *de novo. Frame,* 616 F.3d at 481 (citing *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2008)); *Copeland v. Wasserstein, Perella & Co., Inc.,* 278 F.3d 472, 477 (5th Cir.

2002); *Holmes v. Texas A&M University,* 145 F.3d 681, 683 (5th Cir. 1998).  In reviewing a dismissal for failure to state a claim, this Court uses the same standard used by the district court, *i.e.,* whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.  *Copeland,* 278 F.3d at 477.  This Court will affirm an order granting dismissal under Rule 12(b)(6) if it appears that no relief could be granted under any set of facts that could be proven consistent with the plaintiff's allegations.  *Holmes,* 145 F.3d at 683.

This appeal also involves the interpretation of statutes, *i.e.*, Title II of the ADA (42 U.S.C. §§ 12131 *et seq.*, prohibiting public entities from discriminating on the basis of disability); and Section 504 of the Rehabilitation Act (29 U.S.C. § 794, prohibiting recipients of federal funding from discriminating against persons on the basis of disability).[2] The interpretation of a statute is a question of law that this Court also reviews *de novo*.  *Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

B.      The Legal Standard for Motions to Dismiss Under Rule 12.

Appellants' Supplemental Brief does not address this standard.  The City's briefing on this issue is found in the Brief of Appellee, pp. 6-8.

C.      Plaintiffs' Discrimination Claims – Back to Basics.

---

[2] Plaintiffs also alleged that the City violated 28 C.F.R. § 35.150, by failing to implement a plan to transition its curbs, sidewalks, and parking lots to ADA compliance.  Rec., Vol. 4, pp. 844, 849.  The District Court dismissed Plaintiffs' claims under that regulation, finding that Plaintiffs had no private cause of action to enforce that regulation.  Rec., Vol. 4, pp. 968-969.  Plaintiffs do not appeal that ruling.  *See, generally*, Initial Brief of Appellants, filed October 3, 2008.

Appellants' Supplemental Brief, and the briefs of Amicus Curiae United States of America and AARP, filed in conjunction with Appellant's Supplemental Brief, focus on whether sidewalks, curb ramps or other municipal facilities are a "service, program or activity" of the City, rather than on Plaintiffs' discrimination claims presented in this case. While the "service, program or activity" issue is one issue presented by Plaintiffs in this case, it was not the starting point under which this suit was initiated against the City. The Fourth Amended Complaint alleged that the City intentionally discriminated against Plaintiffs in violation of Title II of the ADA. Rec., Vol. 4, pp. 801-852.

Title II provides two bases upon which a plaintiff may establish a violation: (1) "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," or (2) "no qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The focus of Plaintiffs' complaint was not that Plaintiffs were denied the benefits of City services, programs or activities; instead, Plaintiffs asserted discrimination based upon allegations of technical deficiencies with certain sidewalk, curb ramp and parking facilities. Rec., Vol. 4, pp. 807-842.

The City's briefing on Plaintiffs' discrimination claims is found in the Brief of Appellee, pp. 8-11, and 40-55. Appellants' Supplemental Brief extends the

actual issues raised in this case beyond what was pleaded in the Fourth Amended Complaint. Plaintiffs incorrectly believe they have stated a claim under the ADA and Rehabilitation Act when a sidewalk, curb ramp or other facility encountered by a disabled person anywhere in Arlington does not meet technical specifications for new ADA compliant structures (no matter when the facility was built) because such facility is a "service, program or activity" under Title II, thereby subjecting cities to liability whether or not the facility provides access to city services. *Compare* Appellants' Supplemental Brief, pp. 5-14, *with* the Fourth Amended Complaint (Rec., Vol. 4, pp. 807-842). As a result, a return to an analysis of the basic ADA statutory and regulatory structure is helpful to keep this case in the context in which it was brought against the City, rather than risk creating some sort of new uniform judicial mandate regarding the reach of the ADA and the Rehabilitation Act.

Plaintiffs are fond of the Ninth Circuit's reasoning in *Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002), *cert. denied,* 539 U.S. 958 (2003), so perhaps a useful framework in which to consider Plaintiffs' allegations of harm in this case can be borrowed from the Ninth Circuit's ADA and Rehabilitation Act jurisprudence applicable to the university context regarding allegations of disability discrimination. To make out a prima facie case under either the ADA or the Rehabilitation Act against a college or university, a plaintiff must show: (1) he

is disabled under the Act; (2) he is "otherwise qualified" to remain a student at the school with or without reasonable accommodation; (3) he was dismissed solely because of his disability; and (4) the school receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *See Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). The focus of the opinion in *Zukle* was to clarify the burdens of production and persuasion in such cases, and to do so, the Ninth Circuit borrowed from employment cases. *Zukle*, 166 F.3d at 1046-47 (citing *Barnett v. U.S. Air, Inc.*, 157 F.3d 744 (9th Cir. 1998)).

In employment cases, the plaintiff bears the ultimate burden of persuasion with regard to whether he is qualified (*i.e.*, in the school context, that he is able to meet the school's essential eligibility requirements with or without the aid of reasonable accommodations). *Barnett*, 157 F.3d at 749 (noting that in the employment context, the plaintiff bears the burden of proving that he can perform the essential functions of the job with or without reasonable accommodation). After meeting the initial burden of showing that a plaintiff is qualified under the ADA and Section 504 of the Rehabilitation Act, the plaintiff then has to show the existence of a reasonable accommodation that would enable the student to meet the school's essential eligibility requirements. *Zukle*, 166 F.3d at 1047. The burden then shifts to the university to allege and prove that the requested accommodation

would require a fundamental or substantial modification of its program or standards. *Id*. The school may also meet its burden by producing evidence that the requested accommodation, regardless of whether it is reasonable, would not enable the student to meet the school's academic standards. *Id*. The plaintiff-student retains the ultimate burden of persuading the court that he is otherwise qualified. *Id. See also Pace v. Bogalusa City School Board,* 403 F.3d 272 (5th Cir. 2005).

Using that analytical framework in the ADA Title II context (and setting aside for the moment the slightly different elements necessary for a plaintiff to establish a claim against a school versus a claim against a city), Plaintiffs here failed to plead a *prima facie* case. The key element is whether Plaintiffs have established that there is a reasonable accommodation (using the university/employment analogy) that the City could provide that would: (1) provide an accessible route to the City's services, programs and activities, or (2) eliminate the complained-of discrimination. When it is remembered that, under the ADA, Congress requires all governmental entities to take reasonable measures to remove architectural and other barriers to program accessibility, **then the analysis by necessity should focus on the identity of the program to which Plaintiffs allege that they have been denied access.** *See* 42 U.S.C. § 12131(2). Title II, however, does ***not*** require cities to employ ***any and all means*** to make services accessible (or, under the university/employment analogy, to identify any and all

means to make the requested accommodation) to persons with disabilities. *See, e.g.,* 28 C.F.R. §§ 35.150 and 35.151.  It is Plaintiffs' position in this case that the City does indeed need to employ any and all means to make all services, programs and activities accessible to the disabled, and to broadly define "services, programs and activities" as including all facilities.  *See, generally,* Appellants' Supplemental Brief.  Such an argument ignores the ADA framework applicable to Plaintiffs' suit against the City.

What is the ADA framework?  The Congressional objective of both the ADA and the Rehabilitation Act is the elimination of discrimination against individuals with disabilities.  *See* 42 U.S.C. § 12101(b)(1).  An important purpose of each statute is mandating physical accessibility and the removal and amelioration of architectural barriers.  *See* 42 U.S.C. § 12101(a)(5) ("The Congress finds that . . . individuals with disabilities continually encounter various forms of discrimination, including . . . the discriminatory effects of architectural . . . barriers, . . . failure to make modifications to existing facilities[,] . . . segregation, and relegation to lesser services, programs [and] activities . . .).  The ADA regulations establish a two-part framework addressing architectural barriers: (1) accessibility for new or altered facilities, found in 28 C.F.R. § 35.151, and (2) accessibility for existing facilities, found in 28 C.F.R. § 35.150.

The district court held that the Plaintiffs' cause of action was based on the underlying regulations of the ADA relating to ***new or altered facilities***. Rec., Vol. 4, pp. 967-68. That was so because Plaintiffs repeatedly pleaded that the City failed to properly install curb ramps where sidewalks exist when resurfacing, repairing and or altering city streets. *See, e.g.*, Fourth Amended Complaint, ¶¶ 6, 9, 58, 64, 65, 66 and 68 (Rec., Vol. 4, pp. 803, 841, 843-844). Plaintiffs did not allege that they were denied access to any particular City program, service or activity, other than their complaints about the City facility itself as a "program." *Id.*

Given the nature of Plaintiffs' allegations against numerous City facilities, and given the lack of specificity in alleging the dates of construction in order to analyze the City's duty under the ADA's regulations pertaining to new or altered facilities, the district court ordered Plaintiffs to file an amended complaint supplying dates of construction or alteration. Rec., Vol. 3, pp. 509-10. Plaintiffs refused, and their amended complaint alleges "that all of the actions taken by Arlington on the complained-of streets and sidewalks occurred anywhere from three to ten years ago." Rec., Vol. 4, p. 967 (district court's Order Granting Third Renewed Motion to Dismiss). That Plaintiffs were given an adequate opportunity to meet their pleading burden is undeniable; the district court had previously observed that public records were available to Plaintiffs well before the

commencement of this case to determine dates and timelines of city construction projects. Rec., Vol. 3, p. 555 (district court's Order Denying Motion for Extension of Time).[3]

The trial court held that the dates of alteration or new construction are necessary to establish the duty, under the ADA regulations applicable to new or altered facilities, to construct the curb ramp or other accessibility feature. Rec., Vol. 4, pp. 964-968. Section 35.151(b), ***by its own language***, does not become operative – and thereby impose legal obligations on the City – unless and until an alteration has taken place. *See* 28 C.F.R. § 35.151(b) ("Each facility or part of a facility altered by, on behalf of, or for the use of a public entity . . . shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities . . . ."). "The subsection's language implies the common sense proposition that an alteration having occurred is a prerequisite to that alteration's being made accessible to the public." *Am. Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1137 (11th Cir. 2010).

Although violations of this regulation create a privately enforceable cause of action, Plaintiffs still had a duty to plead the specifics regarding when the alleged

---

[3] In that order, the district court stated: ". . . Plaintiffs argue that they are in need of 'official municipal documents and public records' to establish their dates and timelines. Plaintiffs, however, fail to explain why they need the discovery process conducted through litigation to gain access to 'public records.' By definition, those records were already available to Plaintiffs, as members of the public, well before the commencement of this case." Rec., Vol. 3, p. 555.

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 16**

discrimination occurred, here, the date the duty was violated by the City. *See Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004); *Deck v. City of Toledo*, 56 F.Supp.2d 886, 890-91 (N.D. Ohio 1999); *Speciner v. NationsBank, N.A.*, 215 F.Supp.2d 622, 634-35 (D. Md. 2002). Plaintiffs' failure to meet their pleading burden entitled the City to an order of dismissal for Plaintiffs' failure to state a claim of harm that occurred within the applicable limitations period. Rec., Vol. 4, p. 969.

Not only did Plaintiffs fail to allege a date of construction or alteration within the limitations period, Plaintiffs also failed to allege specific alterations or new construction sufficient to trigger the City's duty under the ADA. Plaintiffs' factual allegations of new patches of concrete here and there are insufficient as a matter of law to establish that an alteration occurred that was sufficient to trigger the City's obligations under the ADA. *See, e.g.*, Fourth Amended Complaint, ¶ 30(C) ("… a utility pole … surrounded by newly poured concrete"); ¶ 30(D) ("New concrete has been poured where a curb cut was removed…."); ¶ 34 ("…a portion of [Mayfield] has been altered or resurfaced after [  ] 1992…."); ¶ 34 ("Portion of the sidewalk…."); and ¶ 34 ("A curb ramp was redone or poured in this area…."). Rec., Vol. 4, pp. 812, 815-16. If a street is resurfaced from intersection to intersection, then it is an altered facility and the City is required to make the altered parts of the facility compliant under the stringent standards set

forth in § 35.151(b) and (e) of the regulations. *See Kinney v. Yerusalim*, 9 F.3d 1067, 1071 (3d Cir. 1993). Plaintiffs failed to allege any such alteration, and, therefore, failed to state a claim against the City.

Plaintiffs are also asking this Court to find that the City's ADA obligations, when it resurfaced a street, was not only to install ADA-compliant curb cuts and ramps at intersections on the resurfaced street, but also to perform construction or repair work elsewhere in the area to ensure that the entire sidewalk between the intersections and curb ramps is free from cracks, uneven surfaces, or other problems that might impede wheelchair travel. *See, generally*, Appellants' Supplemental Brief. This expansive view of the City's obligations under the ADA should be rejected. "Section 35.104 lists 'roads,' 'walks,' or 'passageways' as separate facilities and limits the definition of 'facility' to mean 'all or any portion of each.'" *Kinney*, 9 F.3d at 1073 ("Subpart(e) [of § 35.151] effectively unites a street and its curbs [but not the sidewalks] for treatment as interdependent facilities."). Other cases recognize the distinction between facilities and programs, either explicitly or implicitly, thereby rebutting Plaintiffs' argument to the contrary. *See Ability Ctr. of Greater Toledo*, 133 F.Supp.2d at 591-92 (distinguishing between existing and altered streets); *Deck*, 76 F.Supp.2d at 822 (discussing the city's violation of ADA standards for construction on "curb ramps since May 6, 1996," well after the ADA requirements for new and altered

construction had gone into effect); *Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 970 F. Supp. 352, 359 (S.D.N.Y. 1997) (treating the push-button boxes as a single "facility," and not any area around the boxes, such as the sidewalk, as part of the facility).

Plaintiffs admitted in their pleadings that many of Arlington's city streets, roads, and sidewalks have not been altered or repaired since the effective date of the ADA. Fourth Amended Complaint, ¶ 59 (Rec., Vol. 4, p. 841). Thus, the ADA regulations applicable to existing facilities would apply to those streets, road, and sidewalks. Likewise, Plaintiffs sought injunctive relief generally regarding "Arlington streets, sidewalks, curbs, public parking, public restrooms and entrances to government buildings in Arlington." Fourth Amended Complaint, pages 45-52 (Rec., Vol. 4, pp. 845-52). Thus, this Court should examine Plaintiffs' allegations regarding such existing facilities in light of the regulations regarding existing facilities.

Pursuant to the requirements of the ADA regarding existing facilities, the City is obligated to ensure that each of its services, programs, or activities, "when viewed in its entirety," was readily accessible to individuals with disabilities. *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001). Title II's emphasis on "program accessibility" rather than "facilities accessibility" was intended to ensure broad access to public services, while, at the same time, providing public entities

with the flexibility to choose how to best make access available. *See Accessibility Under the ADA*, at 53-54; 28 C.F.R. Part 35, App. A § 35.150 (stating that under Title II, "the concept of program access will continue to apply with respect to facilities now in existence, because the cost of retrofitting existing facilities is often prohibitive").

Assuming that these individual Plaintiffs have standing (which the City does not concede; *see* Section F, below; and Brief of Appellee, pp. 33-40), under this "program accessibility" standard, the Court must determine whether the City's services, programs and activities, "when viewed in their entirety," are readily accessible to disabled patrons. *See* 28 C.F.R. § 35.150. In doing so, the Court must "look at the accessibility of the [program] as a whole, not at individual elements." *Brown v. County of Nassau*, 736 F.Supp.2d 602, 612 (E.D.N.Y. 2010); *Ass'n For Disabled Ams. v. City of Orlando*, 153 F.Supp.2d 1310, 1321 (M.D. Fla. 2001); *Pascuiti v. New York Yankees*, 87 F.Supp.2d 221, 223 (S.D.N.Y. 1999).

Existing facilities are held to a much lower standard of accessibility, which standard is met if the programs presented at the facilities are readily accessible to disabled individuals. *Pascuiti*, 87 F.Supp.2d at 226. Failure to meet an Americans with Disability Act Accessibility Guidelines ("ADAAG") standard is relevant, but not determinative; public entities have flexibility to choose how to create program accessibility. *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F.Supp.2d 1357,

1368 (S.D. Fla. 2001) "The requirement under the ADA is to provide access to the program, not to meet ADAAG standards." *Greer v. Richardson Indep. Sch. Dist.*, ___ F.Supp.2d ___, 2010 WL 3025530 at \*5 (N.D. Tex., Aug. 2, 2010). As of today, however, there are no existing technical specifications regarding sidewalks in the public rights-of-way. *See* Appendix A to 28 C.F.R. part 36, § 14 (reserved).

To reiterate, the regulations regarding existing curb ramps allow for flexibility.

> [P]ublic entities may choose to construct curb ramps at every point where a pedestrian walkway intersects a curb. However, public entities are not necessarily required to construct a curb ramp at every such intersection. Alternative routes to government buildings that make use of existing curb cuts may be acceptable under the concept of *program accessibility* in the limited circumstances where individuals with disabilities need only travel a marginally longer route. In addition, the fundamental alteration and undue burdens limitations may limit the number of curb ramps required. *To achieve or maintain program accessibility*, it may be appropriate to establish an ongoing procedure for installing curb ramps *upon request* in areas frequented by individuals with disabilities as residents, employees, or visitors.

Dep't of Justice's Title II Technical Assistance Manual, Section II-5.3000 (italics emphasis added). Consistent with Title II's emphasis on program accessibility, the regulatory scheme set forth by the United States Department of Justice (and contrary to the DOJ's argument, as *amicus curiae* on behalf of Plaintiffs; *see* Section H, below) generally does not require public entities to retrofit their existing facilities. *See Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004) (accessibility of judicial services); *see also* 28 C.F.R. § 35.150(a)(1)(2006).

Thus, the existence of a missing or defective curb ramp does not establish a *prima facie* case of denial of program accessibility. *See, e.g., Greer,* ___ F.Supp.2d ___, 2010 WL 3025530, at **4-5. To promote both efficiency and accessibility, the implementing regulations make clear that public entities **may choose** to construct curb ramps at every point where a pedestrian walkway intersects a curb. Public entities, however, are **not necessarily required** under the regulations to construct a curb ramp at every such intersection, despite Plaintiffs' contentions in this case. In the case of older facilities, for which the regulations recognize that structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services, programs or activities to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing those services. *See* § 35.150(b)(1). In this case, instead of making all of its existing 2,945 lane miles of streets accessible, Arlington provides a paratransit service, which Plaintiffs recognize. *See* Fourth Amended Complaint, ¶ 60 (Rec., Vol. 4, p. 842). Only if all of those measures are ineffective in achieving program accessibility is the public entity required to make reasonable structural changes. *Tennessee,* 541 U.S. at 532.

The next inquiry, then, is whether the Plaintiffs alleged that they were excluded from participation in, or denied the benefits of, the City's services, programs, or activities because of the condition of the complained-of existing

facilities. The Fourth Amended Complaint lists specific streets, sidewalks and other facilities that allegedly cause accessibility barriers in and of themselves and without regard to City services, programs or activities.  Rec., Vol. 4, pp. 807-42. Notwithstanding the desire expressed in Appellants' Supplemental Brief that "all" City streets, sidewalks and other facilities should be accessible, that desire is not supported by the ADA, its regulations, or case law applying Title II of the ADA to governmental entities.

For example, in *Parker v. Universidad de P.R.*, 225 F.3d 1, 8 (1st Cir. 2000), the First Circuit held that the University must act affirmatively to eliminate barriers on the premises that would otherwise serve to deny persons with disabilities access to services, programs, or activities of the University- "here, access to the Monet Garden."  As a defense, the University might have established that there was another path to the Monet Garden that was safe for wheelchair use, properly noted with signs.[4]  The garden was the "program," not the sidewalk.  *Parker*, 225 F.3d at 8.  Thus, "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make

---

[4] The University's defenses were never offered because the trial court never required the University to defend against the plaintiff's claims.  *Parker,* 225 F.3d at 8.

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 23**

access available." *Parker*, 225 F.3d at 6. *See also Greer,* __ F.Supp.2d ___, 2010 WL 3025530, at *4 and n. 32.[5]

This program access test is explained in the preamble to the regulations of Title II: "Although title II may not require removal of barriers in some cases where removal would be required under title III, the program access requirement of title II should enable individuals with disabilities to participate in and benefit from the services, programs, or activities of public entities in all but the most unusual cases." *Preamble to Regulations on Nondiscrimination on the Basis of Disability in State & Local Government Services*, 28 C.F.R. Pt. 35, App. A. Thus, the majority panel opinion correctly held that sidewalks are "facilities" and function as "gateways" to services, programs or activities. *Frame*, 616 F.3d at 488.

Plaintiffs failed to state a *prima facie* case under this "program accessibility" standard applicable to existing facilities because, although they alleged numerous individual facility defects, they did not state how those facility defects related to a denial of access to particular City services, programs, or activities **when viewed in their entirety**. Plaintiffs' allegations certainly did not assert that the "individual elements" that they alleged were not accessible add up to a wholesale exclusion of

---

[5] This standard differs from the standard under Title III of the ADA, which requires removal of architectural barriers whenever to do so would be "readily achievable." *See* 28 C.F.R. § 36.304. Plaintiffs' argument seems to be an improper attempt to mix Title II standards applicable to governmental entities with the accessibility standards applicable to public accommodations under Title III. *See* Appellee's Response to Appellants' Petition for Rehearing En Banc, filed August 6, 2009, pp. 12-14.

disabled individuals from all businesses, restaurants, parks, libraries, hospitals, offices and City buildings across the entire City of Arlington. *See, generally*, Fourth Amended Complaint (Rec., Vol. 4, pp. 801-852).

Although Plaintiffs stated that they were denied access to one recreation center, they failed to allege that any program that was offered at that recreation center was not otherwise offered at an accessible recreation center. Even the Ninth Circuit recognizes the difference between "facilities" and "programs" in this context: "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution." *Pierce v. County of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008). Thus, despite the alleged technical noncompliance, that disabled persons are still allowed effective access to City services, programs, and activities defeats Plaintiffs' claims. *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp.2d at 1368; *Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1124, 1151 (D. Or. 1998).

In order to avoid the straightforward application of the ADA's regulations, Plaintiffs resort to the argument that all City sidewalk, curb ramp, parking lot and other facilities are, in and of themselves, "services, programs and activities" that require total accessibility to be in compliance with the ADA. *See, generally*, Appellants' Supplemental Brief. It bears repeating: Plaintiffs' argument overlooks the regulations applicable to the ADA. Sidewalks in the public rights of way are

not even a "site" to which access must be maintained. A "site" is "[a] parcel of land bounded by a property line or a designated portion of a public right-of-way." ADAAG, Standard 3.5. An "accessible route" is "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility." *Id*. These standards do not support Plaintiffs' argument. ADAAG Standard 4.3.2.(1), n. 14, read with the proper definitions of "accessible route" and "site," requires the provision of a continuous, unobstructed path, within the boundary of a parcel of land, from such places as a public transportation stop, accessible parking, or a public street or sidewalk, to the accessible building entrance. "Site" does not include city streets. *See Alford v. City of Cannon Beach*, 2000 WL 33200554, at *24 (D. Or., Jan. 17, 2000).

Plaintiffs, and *amicus curiae* supporting them, nonetheless argue that all City facilities are rightly read to be included in Title II's "services, programs or facilities" language, and that *Barden's* findings (that anything a public entity does is included in the ADA's services, programs or activities phrase) has been adopted by "every court" that has considered the issue. A review of some of the cases belies that conclusion. *See, e.g., Iverson v. City of Boston,* 452 F.3d 94, 102-03 (1st Cir. 2006) ("The plaintiffs' complaint offered no meaningful explanation as to how – if at all – the conditions of municipal **streets and sidewalks** deprived Iverson (or anyone else) of access to any public **service, program, or activity**. For that

reason alone, the plaintiffs' barrier-removal claim fails as a matter of pleading.") (bold emphasis added); *Greer,* 2010 WL 4607393, at *3 (holding that "no claim is stated by a suit challenging the condition of sidewalks, curbs, and parking lots, unless the condition results in a denial of access to a service, program, or activity."); *New Jersey Protection & Advocacy, Inc. v. Township of Riverside,* No. 04-5914, 2006 WL 2226332, at *3 (D.N.J. Aug. 2, 2006) ("this court deigns to find that sidewalks are, in and of themselves, programs, services, or activities for the purpose of the ADA's implementing regulations."); *Filush v. Town of Weston,* 266 F.Supp.2d 322, 328-29 (D. Conn. 2003) (personnel and equipment used by municipality to provide public education, public transportation or law enforcement services are not themselves services or programs, but are instead conduits used by municipality to provide services, programs or activities); *Zimmerman v. Oregon Dep't. of Justice,* 170 F.3d 1169, 1176 (9th Cir. 1999), *cert. denied,* 531 U.S. 1189 (2001) (employment by a public entity is not a service, program or activity under ADA); *Aswegan v. Bruhl,* 113 F.3d 109, 110 (8th Cir.), *cert. denied,* 522 U.S. 956 (1997) ("Aswegan has no viable claim for relief under section 12132 because the cable television sought by Aswegan is not a public service, program, or activity within the contemplation of the ADA."); *Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996), *reh'g denied,* 91 F.3d 299 (7th Cir. 1996) (per curiam) (incarceration and provision of place to sleep to incarcerated person is not a service, program or

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 27**

activity under the ADA); and *Canfield v. Isaacs,* 523 F.Supp.2d 885, 889 (N.D. Ind. 2007) ("Defining the terms 'services,' 'programs,' or 'activities' to include employment strains the ordinary meaning of those words.").

Examples of services rightly held to be encompassed within the ADA's "services, programs or activities" language are:  judicial services, nursing services, residential facilities for the mentally-ill, parole proceedings, and municipal court wedding ceremonies.  *See Tennessee v. Lane,* 541 U.S. at 531-32 (access to judicial services); *Loye v. County of Dakota,* 647 F.Supp.2d 1081 (D. Minn. 2009), *aff'd.*, 625 F.3d 494 (8th Cir. 2010) (nursing services); *Disability Advocates, Inc. v. Paterson,* 598 F.Supp.2d 289 (E.D.N.Y. 2009) (residential facilities for the mentally ill); *Thompson v. Davis,* 295 F.3d 890 (9th Cir. 2002), *cert. denied,* 538 U.S. 921 (2003) (parole proceedings); and *Soto v. City of Newark,* 72 F.Supp.2d 489 (D.N.J. 1999) (municipal court wedding ceremonies).  The logic supporting those decisions differs significantly from the logic expressed in *Barden* and its progeny.  *Id.*  The panel decision correctly rejected *Barden.  Frame,* 616 F.3d at 485-88.  The *en banc* court should adopt that panel opinion's analysis and find that the City's sidewalk and curb ramp facilities are not "services, programs or facilities" under the ADA.  *Id.*

In sum, Plaintiffs fail to state a claim under the ADA when they complain about any missing, noncontiguous, absent, stopped, or otherwise non-existent

sidewalks. Nothing in the ADA or its accompanying regulations requires the City to build sidewalks in the public rights-of-way. Plaintiffs' attempt to impose a global requirement on the City to construct or remediate all sidewalks, curb ramps and other facilities in Arlington exceeds the scope of the ADA's reach under Title II, the requirements of the ADA's implementing regulations, and the Plaintiffs' own pleadings. The district court's judgment should be affirmed.

D.    Plaintiffs' Alleged Violations of the ADA or Rehabilitation Act Occurred Prior to July 22, 2003, and Were Barred by the Statute of Limitations.

In the district court's Order Denying as Moot Motion to Dismiss and Ordering Amended Pleadings, dated July 31, 2006 (Rec., Vol. 3, pp. 509-511), the court requested Plaintiffs to add more specificity in their time-sensitive allegations:

> Plaintiffs' amended complaint does not adequately allege construction and/or alteration dates or timelines for the locations alleged to be noncompliant with § 35.150 or § 35.151. . . Therefore, the Court DIRECTS Plaintiffs to file a third amended complaint . . . Plaintiffs' third amended complaint may not include new causes of action or factual allegations other than the inclusion of dates or timelines of alteration and/or construction for the sites allegedly in noncompliance with the ADA and the Rehabilitation Act.

Rec., Vol. 3, p. 510 (emphasis in original). In response, Plaintiffs specifically and intentionally avoided any allegation of harm caused by the City's alteration or construction efforts within two (2) years of the filing of Plaintiffs' lawsuit. Instead, all of Plaintiffs' alleged harm as to the City's construction of streets and sidewalks are specifically alleged to have occurred either 3 or more years prior to

when this lawsuit was filed.  *See* Rec., Vol. 4, pp. 815-841 (Plaintiffs' Amended Complaint, at ¶¶ 34, 36, 37, 43, 45, 46, 47, 48, 50, 53, 54, 55, 56).  As a result, the district court correctly found that Plaintiffs failed to state a claim of a violation of harm within the applicable statute of limitations.  Rec., Vol. 4, p. 967.

The key issue in this case vis-à-vis the limitations issue is the determination of when Plaintiffs' cause of action accrued:  either whenever Plaintiffs "encounter" an allegedly defective sidewalk, curb ramp or other City facility (as Plaintiffs assert), or, instead, when the act of discrimination occurred (*i.e.*, when the City's duty arose under the ADA and its regulations concerning either existing facilities or new/altered facilities).  To answer this question, Plaintiffs avoid the correctly applied discriminatory act rationale from this Court's first panel decision (*Frame,* 575 F.3d at 438-41), and instead urge this Court to resort to the view that the City's sidewalks, curb ramps and other facilities are a "service, program or activity" under the *Barden* rationale, in order to trigger liability under Title II without having to specify dates of construction or alteration (in effect, avoiding any limitations period whatsoever).  *See, generally*, Fourth Amended Complaint; and Appellants' Supplemental Brief.  For the City's position on this issue, please see the Brief of Appellee, pp. 12-30, and the Appellee's Response to Appellants' Petition for Rehearing *En Banc*, filed August 6, 2009, pp. 4-12.  There is no dispute that the applicable limitations period is two (2) years.  *See Holmes v. Texas*

*A&M Univ.,* 145 F.3d 681, 683-84 (5th Cir. 1998); Tex. Civ. Prac. & Rem. Code, § 16.003.  The district court's judgment should be affirmed because Plaintiffs asserted no discriminatory act by the City (defective or inaccessible construction) within two (2) years of filing their complaint.

E.      The Affirmative Defense Requirement is Not Applicable.

Plaintiffs asserted in their principal brief that it was the City's burden to establish when Plaintiffs' cause of action accrued, since a plea of limitations is an affirmative defense, so that the district court committed error in granting the City's dismissal motion.  *See* Appellants' Brief, pp. 26-27.  Both of this Court's panel decisions agreed, requiring the City to establish the limitations plea as an affirmative defense (notwithstanding that the City's Rule 12(b)(6) dismissal motion was urged prior to the time required for the City to file an answer that would have included its affirmative defenses; indeed, as a review of the district court's docket confirms, the City has not yet filed an answer in this case, and has not yet asserted any affirmative defenses).  *Frame*, 575 F.3d at 441; 616 F.3d at 490.  Remand of this case on this point is improper, however, for several reasons.

First, Plaintiffs did not make this argument to the district court, either in response to the City's dismissal motion or in their post-judgment motion to alter or amend judgment.  *See* Rec., Vol. 4, p. 873; 989-995.  Plaintiffs simply asserted that the statute of limitations issue is "an issue for summary judgment or trial, if at all,

but it is not a basis upon which to dismiss the claim pursuant to Fed. R. Civ. P. 12.B (sic)." Rec., Vol. 4, p. 873. Second, the cases cited by Plaintiffs all were cases that did not review a dismissal motion under Rule 12, but instead reviewed district court rulings on summary judgment motions. *See U.S. v. Retirement Services Group,* 302 F.3d 425, 430 (5th Cir. 2002); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir. 1988); *Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983). In other words, in each of Plaintiffs' cited cases, the defendants had answered the complaint, discovery had occurred, and motions for summary judgment were asserted, with evidence. *Id.* To reiterate, the City has not answered in this case, nor did it assert any evidence as part of its Rule 12 dismissal motion. Rec., Vol. 3, pp. 679-717.

Third, Plaintiffs' own allegations established that the discriminatory acts they asserted all occurred outside the two year limitations period. *See* Rec., Vol. 4, pp. 803-804; 815-841. There is, therefore, no need to provide contradictory evidence that essentially would merely reaffirm what is already alleged in the Fourth Amended Complaint. Finally, Plaintiffs' argument suggests that a statute of limitations defense is somehow not appropriate in the context of a Rule 12 motion to dismiss; that simply is not the law in this Circuit. *See Jones v. ALCOA, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161 (2004) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the

plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.") (citations omitted). *See also Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir. 1983) (statute of limitations may serve as a proper ground for dismissal under Rule 12(b)(6)). As a result, there should be no requirement for the City to establish an affirmative defense when Plaintiffs fail to state a claim *ab initio*.

The prior panel decisions nonetheless determined that a plea of limitations is an affirmative defense, thereby applying affirmative defense standards to the City's dismissal motion under Fed. R. Civ. P. 12 (b)(6). *See Frame*, 575 F.3d at 441; 616 F.3d at 490. Those portions of the prior panel decisions should be reversed in order to secure and maintain uniformity with this Court's *Jones* and *Watts* decisions. Appellant's Supplemental Brief does not address this issue. The district court's decision should be affirmed in its entirety.

F.    Plaintiffs Lack Legal Standing to Bring This Action.

In this *de novo* appeal, and particularly in this Court's *en banc* review, the City again asserts all bases that it urged in the district court for this Court's affirmance of the dismissal of Plaintiffs' claims, *i.e.,* that Plaintiffs lack standing to bring this action, so that Plaintiffs' allegations fail to state a plausible claim of discrimination.[6] Plaintiffs' initial brief did not substantively address this standing

---

[6] The district court referenced the standing requirement in its order. Rec., Vol. 4, pp. 963-64.

issue and instead only argued statute of limitations issues. *See, generally,* Appellants' Brief. The same is true of Appellants' Supplemental Brief. *See, generally*, Appellants' Supplemental Brief. Plaintiffs, therefore, have abandoned any claim on these issues because they have presented no argument on them to this Court within the meaning of Federal Rule of Appellate Procedure 28(a)(9)(A). *See United States v. Martinez,* 263 F.3d 436, 438 (5th Cir. 2001).

Further, Plaintiffs' lack of briefing on these standing matters means that they have waived any claim for reversal on these issues. *See Webb v. Investacorp., Inc.,* 89 F.3d 252, 257 n. 2 (5th Cir. 1996) (holding that an appellant waives all issues not raised and argued in his initial brief on appeal); *Villanueva v. CNA Ins. Co.,* 868 F.2d 684, 687 n. 5 (5th Cir. 1989) (issues not briefed are waived); *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994) (same). The City's argument concerning Plaintiffs' lack of standing is presented in the City's principal brief. *See* Brief of Appellee, pp. 33-40. For those reasons, the district court's dismissal should be affirmed.

G.    Plaintiffs Failed to Establish Discrimination.

The district court's dismissal should be affirmed because Plaintiffs failed to establish discrimination in their pleadings. Please see the City's principal brief and other briefs on these issues. Brief of Appellee, pp. 40-55; Appellee's Response to Appellants' Petition for Rehearing *En Banc*, filed August 9, 2009, pp. 12-14;

Appellee's Petition for Rehearing *En Banc*, filed July 20, 2009, pp. 3-12; and Appellee's Response to Appellants' Petition for Rehearing *En Banc*, filed September 29, 2010, pp. 3-15. Plaintiffs have not rebutted, or even addressed, the constitutional problems raised by the City in any of their briefing. This Court can avoid the constitutional problems, of course, by rejecting Plaintiffs' arguments that attempt to improperly expand the ADA's application under Title II.

An interpretation that the ADA requires construction, maintenance and retrofilling of all City sidewalks, curb ramps and parking lots is unconstitutional because it would exceed Congress' enforcement power under § 5 of the Fourteenth Amendment to the United States Constitution. *See* Brief of Appellee, pp. 51-53; Appellee's Response to Appellants' Petition for Rehearing *En Banc,* filed September 29, 2010, pp. 12-14. Plaintiffs have not raised any argument approaching a denial of a fundamental right, as in *Tennessee v. Lane,* 541 U.S. 509 (2004). Neither was such a claim made in Plaintiffs' pleadings. Rec., Vol. 4, pp. 801-852. In reviewing the Fourth Amended Complaint, one may reasonably assume that Plaintiffs simply visited the numerous locations listed in the complaint for the purpose of evaluating their accessibility and filing this lawsuit. *Id.* As a result, application of the ADA in the manner sought by Plaintiffs would exceed the enforcement power provided by § 5 of the Fourteenth Amendment. *See Hale v. King,* 624 F.3d 178, 184-85 (5th Cir. 2010) (per curiam) (ADA not a valid

extension of Congress' § 5 power as applied to equal access to prison education and work program claims).

H.    The Arguments by *Amicus Curiae* Are Not Controlling.

1.    Brief by *Amicus Curiae* United States of America.

The DOJ's argument boldly asserts that **all** curb ramps, sidewalks and parking lots are to be brought to current accessibility standards, whether or not they lead to any service, program or activity, in direct contravention of the DOJ's own implementing regulations supporting the ADA. *See, e.g.,* 28 C.F.R. § 35.150 (a)(1) (public entities do not have an obligation to make every facility accessible). The DOJ asserts that the United States Supreme Court has found that a city's sidewalk facilities are a "service, program or activity." Brief for the United States as *Amicus Curiae* Supporting Appellants, filed March 7, 2011 ("DOJ Brief"), p. 4 (referencing *Everson v. Board of Educ.*, 330 U.S. 1, 17-18 (1947)). The DOJ's reliance on *Everson* is without merit.

In *Everson*, the Court was faced with a case challenging the right of a school board to reimburse parents of parochial school students for transportation. *Everson*, 330 U.S. at 3. The issue under review was whether the state statute and school board resolution authorizing the transportation reimbursement to parochial school parents violated the United States Constitution. *Id.*, at 5. The DOJ's quote

from *Everson* (that "general government services" include "sidewalks") is more

appropriately viewed in its context:

> And parents might refuse to risk their children to the serious danger
> of traffic accidents going to and from parochial schools, the
> approaches to which were not protected by policemen.  Similarly,
> parents might be reluctant to permit their children to attend schools
> which the state had cut off from such general government services as
> ordinary police and fire protection, connections for sewage disposal,
> public highways and sidewalks.  Of course, cutting off church schools
> from these services, so separate and so indisputably marked off from
> the religious function, would make it far more difficult for the schools
> to operate.  But such is obviously not the purpose of the First
> Amendment.  That Amendment requires the state to be a neutral in its
> relations with groups of religious believers and non-believers; it does
> not require the state to be their adversary.  State power is no more to
> be used so as to handicap religions, than it is to favor them.

*Everson*, 330 U.S. at 17-18.  The Court's dicta in this 1947 case does not support

an argument that Congress intended all sidewalks to be automatically deemed

"services, programs or facilities" under the ADA.

The DOJ nonetheless argues that this Court should not stray from *Barden,*

and is critical of the previous panel decisions in this case.  DOJ Brief, pp. 8-15.

Just because the Ninth Circuit in *Barden* was incorrect in its decision does not

require this Court to perpetuate the error.  That is particularly true in light a review

of the ADA's legislative history and detailed review of the implementing

regulations, as asserted elsewhere in the City's briefing.  The other Circuit

decisions were not based on such an in depth review, but instead were focused on a

somewhat un-anchored belief of what Title II could be read to mean in order to

expand the term "services, programs or activities" to cover the claims alleged in those cases. *See Barden*, 292 F.3d at 1076; *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) ("the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does."); *Yeskey v. Com. of Pa. Dep't of Corrections*, 118 F.3d 168, 171 (3d Cir. 1997) (the ADA's language "is intended to apply to anything a public entity does."); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997) (the phrase "services, programs, or activities" is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of context").

The *Barden* decision can hardly be said to have sound logic. *Barden* contains just six (6) paragraphs of substantive analysis pertaining to the question of whether sidewalks are "services." The court in *Barden* began its analysis by criticizing the district court (which had found that sidewalks were not "services") for doing exactly what the ADA calls upon courts to do: *i.e.,* "determining whether each function of a city can be characterized as a service, program or activity for purposes of Title II." *Barden,* 292 F.3d at 1076. Instead, the Ninth Circuit prefers a somewhat truncated, categorical approach: "[t]he focus of the inquiry . . . is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is a normal function of a governmental entity." *Id.* In other words, the Ninth Circuit believes

APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 38

that the ADA covers "anything a public entity does." *Id.* The Ninth Circuit did not analyze the issue of whether sidewalks are a "service," but instead concluded that such analysis was not necessary. This fuzzy logic has been rejected by other courts. *See* pages 26-28, above. This Court's logic in the panel's opinion is superior, and not at all fuzzy or truncated. *Frame,* 616 F.3d at 485-88.

Additionally, the DOJ's argument actually conflicts with its own regulations. *See* discussion above, pages 10-26. The substantive regulations actually maintain the distinction between "facilities" and "services," and treat the two in a manner that makes clear that "facilities" are covered under the ADA only to the extent that they preclude or impair reasonable access to the "services, program or activities" of the public entity. As a result, under the regulations, "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs or activities of a public entity. . . ." 28 C.F.R. § 35.149. The illogic of the DOJ's position, and Plaintiffs' position, was summarized by the previous majority panel opinion:

> If some facilities were also "services, programs, or activities," then the regulations, in at least some cases, would actually forbid "inaccessible and unusable" "services, programs, or activities" that exclude individuals with disabilities from "services, programs, or activities." We cannot believe that this interpretation is correct. The only sensible reading is that the categories are mutually exclusive and if sidewalks, curbs and parking lots were intended to be treated as

"services, programs, or activities," they would have been left out of the facilities definition altogether.

*Frame,* 616 F.3d at 487.

The purpose of the regulations is to provide standards for compliance with the ADA, not to give individuals a right to sue if compliance with those standards is not met. *American Ass'n of People with Disabilities v. Harris,* 605 F.3d 1124, 1134-35 (11th Cir. 2010). Absent congressional amendment, this Court should not engage in judicial legislation to achieve the change in the scope of Title II that is argued by the DOJ (outside of its rulemaking authority) and that Plaintiffs seek.

2.      Brief by *Amicus Curiae* AARP.

The Brief *Amicus Curiae* of AARP in Support of Appellants' Supplemental Brief *En Banc* Urging Reversal, filed March 7, 2011 ("AARP Brief"), suffers from the same analytical flaws as the DOJ Brief, discussed above. The ADA's implementing regulations do not give individuals a right to sue, and to assert that all municipal facilities are encompassed within the phrase "services, programs, or activities" simply reiterates the same flawed argument and logic asserted by Plaintiffs and the United States. Indeed, several of the cases relied upon in the AARP Brief have been overruled. *See, e.g.,* AARP Brief, p. 12, citing *Coolbaugh v. Louisiana,* 136 F.3d 430 (5th Cir. 1998), overruled by *Reickenbacker v. Foster,* 274 F.3d 974 (5th Cir. 2001). The AARP Brief, therefore, is not helpful.

The issues raised in the AARP Brief regarding statute of limitations accrual and continuing violations issues have been addressed in the City's principal brief, and were adequately dealt with by the initial panel opinion in this case. *See* Brief of Appellee, pp. 12-32; *Frame,* 575 F.3d at 437-41. *See also Disabled in Action of Penn. v. Southeastern Penn. Transp. Auth.,* 539 F.3d 199, 209 (3rd Cir. 2008) (under ADA, accrual of cause of action occurs upon completion of construction or alteration of facilities). Whether the ADA is a correct application of Congress' powers under the Commerce Clause, as asserted in the AARP Brief, p. 12, is the same kind of argument rejected by the United States Supreme Court when it overturned the Violence Against Women Act in *United States v. Morrison,* 529 U.S. 598 (2000).

The discrimination alleged by Plaintiffs, and asserted in the AARP Brief, resulting from the alleged failure to meet technical standards is not economic activity that affects commerce. *Morrison,* 529 U.S. at 613. The City's alleged failure to spend millions of dollars of taxpayer money to correct alleged accessibility issues is actually a refusal to engage in economic activity. As a growing number of courts are holding, "[i]t would be a radical departure from existing case law to hold Congress can regulate inactivity under the Commerce Clause." *Florida v. United States Dep't of Health & Human Services,* 2011 WL 285683, at *21-22 (S.D. Fla. Jan. 31, 2011). *See also Virginia v. Sebelius,* 728

F.Supp.2d 768, 782 (E.D. Va. 2010) ("Neither the Supreme Court nor any federal circuit court of appeals has extended Commerce Clause powers to compel an individual [or entity] to involuntarily enter the stream of commerce by purchasing a commodity in the private market."). The argument by AARP under the Commerce Clause, therefore, is without merit.

The remainder of the argument by AARP concerns the benefits and usefulness of sidewalks. This is not a case about whether sidewalks are good or useful or helpful, or are even covered by the ADA. The City concedes that some sidewalks, curb ramps or other facilities are covered by the ADA, the Rehabilitation Act, and the implementing regulations (for new or altered facilities, or for existing facilities that provide access to a City program or service). The question in this case is when does a plaintiff state a cause of action under the ADA and Rehabilitation Act. The AARP Brief does not really address that issue.

## VI.

## CONCLUSION

The effect of Plaintiffs' position in this case, were it to be adopted by this Court, would be to impose enormous costs upon the City in a manner not contemplated when the ADA was enacted. On signing the ADA into law in 1990, President George H.W. Bush said:

> I know there may have been concerns that the ADA may be too vague
> or too costly, or may lead endlessly to litigation. But I want to

reassure you right now that my administration and the United States Congress have carefully crafted this Act.  We've all been determined to ensure that it gives flexibility, particularly in terms of the timetable of implementation; and we've been committed to containing the costs that may be incurred . . . .[7]

The remedy sought by Plaintiffs in this case ignores this legislative history, and instead seeks to impose unlimited financial burdens upon municipalities by ignoring the language of the ADA and its implementing regulations concerning technical construction issues as to facilities leading to City services, programs or activities, confusing Title III jurisprudence with Plaintiffs' claims under Title II, here.  Congress did not create a private right of enforcement regarding individual technical violations of the ADA or Rehabilitation Act regulations without the specific allegation of discrimination, or of a denial of access to a program, service or activity.

Plaintiffs assert that all City facilities are *per se* discriminatory and in violation of the ADA when facilities do not comply with the technical standards they allege are set forth in the regulations, either as existing facilities or as newly constructed or altered facilities, and whether or not leading to a municipal service, program or activity, in an attempt to extend ADA Title II coverage broadly and globally.  The ADA provides for an administrative remedy for technical violations with the Justice Department, rather than burdening the federal court system with

---

[7]    http://en.wikipedia.org/wiki/Americans_with_Disabilities_Act_of_1990 (cite last visited March 29, 2011).

litigation over sidewalk slopes or cracks, parking lot stripes, and other specific administrative details related to ADA and Rehabilitation Act standards. Although Plaintiffs alleged some technical problems with some City facilities, Plaintiffs did not allege any specific date of construction that triggered the City's duty under the ADA, or that the City did not comply with that duty when it was triggered.

The Fourth Amended Complaint sought to impose substantially greater burdens and costs upon the City than are required by law in a manner that would be unreasonable and create potentially unlimited liability. For the reasons stated herein, and in the City's other briefing to this Court, the district court's judgment that Plaintiffs failed to state a plausible claim should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee City of Arlington, Texas, prays that this Court affirm the district court's dismissal of Plaintiffs' claims against it, and the City prays for such other and further relief to which it is justly entitled.

Respectfully submitted,

By:   /s/ Edwin P. Voss, Jr.
        Edwin P. Voss, Jr.
        State Bar No. 20620300
        evoss@bhlaw.net

BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

        Denise V. Wilkerson
        Assistant City Attorney
        State Bar No. 20534100
        Denise.Wilkerson@arlingtontx.gov

City of Arlington
P.O. Box 90231
Arlington, Texas 76004-3231
817-459-6878 (Telephone)
817-459-6897 (Telecopier)

ATTORNEYS FOR APPELLEE
CITY OF ARLINGTON, TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I further hereby certify that this document was served by this Court's CM/ECF system upon counsel for Appellants, Mr. Miguel M. de la O, de la O, Marko, Magolnick & Leyton, 3001 S.W. 3rd Avenue, Miami, Florida 33129, who is a registered CM/ECF user, and upon non-parties, through their counsel, who have filed amicus curiae briefs, by certified mail, return receipt requested, as follows: Mr. Scott Houston, Director of Legal Services, Texas Municipal League, 1821 Rutherford Lane, Suite 400, Austin, Texas 78754-5128, Counsel for *Amici Curiae* Texas Municipal League and International Municipal Lawyers Association; and Mr. Dirk C. Phillips, Attorney, U.S. Department of Justice, Civil Rights Division, Appellate Section, Ben Franklin Station, P.O. Box 14403, Washington, D.C. 20044-4403, Counsel for *Amicus Curiae* United States of America. I further certify that twenty (20) paper copies of this brief have been mailed to the Court on April 1, 2011, in accordance with the Court's correspondence, dated January 27, 2011.

By:  /s/ Edwin P. Voss, Jr.

Edwin P. Voss, Jr.

**APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF - Page 46**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,792 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further hereby certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Word 2010 in 14 point font size (12 point font size for footnotes) in Times New Roman type style.

By: __/s/ Edwin P. Voss, Jr._____
      Edwin P. Voss, Jr.

Attorney for Appellee City of Arlington

Dated:  April 1, 2011

## <u>CERTIFICATE REGARDING PRIVACY REDACTIONS</u><br><u>AND VIRUS SCANNING</u>

I hereby certify that, for the foregoing document:  (1) required privacy redactions have been made, in compliance with 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1; and (3) this document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Edwin P. Voss, Jr.
Edwin P. Voss, Jr.
Counsel for Appellee
City of Arlington, Texas

Date:  April 1, 2011